# EXHIBIT A

**General Civil and Domestic Relations Case Filing Information Form**

⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

SUCV2021000137

JAN 15, 2021 01:48 PM

Sabriya Hill, Clerk
Henry County, Georgia

☑ **Superior** or ☐ **State Court of** _Henry_ _____ **County**  PP

| **For Clerk Use Only** | |
|---|---|
| **Date Filed** _01-15-2021_ | **Case Number** _SUCV2021000137_ |
| **MM-DD-YYYY** | |

| **Plaintiff(s)** | | | | | **Defendant(s)** | | | | |
|---|---|---|---|---|---|---|---|---|---|
| KISNA ENTERPRISES LLC | | | | | AUTO-OWNERS  INSURANCE  COMPANY | | | | |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| | | | | | PROPERTY-OWNERS  INSURANCE  COMPANY | | | | |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |
| **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** | **Last** | **First** | **Middle I.** | **Suffix** | **Prefix** |

**Plaintiff's Attorney** _Merlin, Jr., William_ _____  **Bar Number** _510879_ _____  **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☑ **Contract**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**                        **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

_____

Version 1.1.20

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

**SUCV2021000137**
PP

**JAN 15, 2021 01:48 PM**

Sabriya Hill, Clerk
Henry County, Georgia

## IN THE SUPERIOR COURT OF HENRY COUNTY
## STATE OF GEORGIA

**KISNA ENTERPRISES, LLC**
**DBA LA QUINTA INN & SUITES,**

    **Plaintiff,**

**v.**                              **CIVIL ACTION NO.:**

**AUTO-OWNERS INSURANCE**
**COMPANY AND PROPERTY-OWNERS**
**INSURANCE COMPANY,**

    **Defendant.**

_____/

## COMPLAINT FOR BREACH OF CONTRACT AND
## BAD FAITH DAMAGES WITH DEMAND FOR JURY TRIAL

Plaintiff, KISNA ENTERPRISES DBA LA QUINTA INN & SUITES ("Plaintiff"), by and through the undersigned counsel, files this Complaint for Breach of Contract and Bad Faith Damages with Demand for Jury Trial against Defendants, AUTO-OWNERS INSURANCE COMPANY and PROPERTY-OWNERS INSURANCE PROPERTY ("Defendants") and as grounds therefore, states as follows:

### PARTIES

1.    Plaintiff was and is a corporation in good standing, operating and existing under the laws of the State of Georgia with its principal place of business located at 3581 Cameron Parkway, Henry County, Stockbridge, Georgia 30281. Plaintiff submits itself to the jurisdiction of this Court, and the damages exceed $15,000.00.

2.    Defendant Auto-Owners Insurance Company was and is a corporation in the business of insurance, conducting business in Henry County, Georgia and throughout the State of Georgia.

3.     Defendant Property-Owners Insurance Company was and is a corporation in the business of insurance, conducting business in Henry County, Georgia and throughout the State of Georgia.

4.     Defendant Auto-Owners Insurance Company is a foreign corporation with its principal place of business located at 6101 Anacapri Boulevard, Lansing, Michigan 48917 engaged in the business of insurance in the State of Georgia.

5.     Defendant Property-Owners Insurance Company is a foreign corporation with its principal place of business located at 6101 Anacapri Boulevard, Lansing, Michigan 48917 engaged in the business of insurance in the State of Georgia.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action, and the Court has personal jurisdiction over Defendants because Defendants are transacting business and insuring properties in the State of Georgia and have appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

7.     Venue is proper in this Court because the property covered by the insurance policy at issue is located in Henry County pursuant to O.C.G.A. § 33-4-1.

## GENERAL ALLEGATIONS

8.     This is an action for Breach of Contract and Bad Faith Damages against Defendants, Auto-Owners Insurance Company and Property-Owners Insurance Company.

9.     In consideration of the premium paid to them by Plaintiff, Defendants issued a commercial insurance policy, bearing policy number 114618-80881833-18 (the "Policy") to Plaintiff, which was in full force and effect at the time of Plaintiff's loss. (See attached Exhibit "A," a copy of the subject Policy).

10.     The Policy insures against all direct physical loss to the property located at 3581 Cameron Parkway, Henry County, Stockbridge, Georgia 302811 (the "Insured Property"), except as provided in the Policy. The Policy further provides for a $1,000 deductible.

11.     The Policy was in full force and effect from June 30, 2018 to June 30, 2019.

12.     On January 15, 2019, Plaintiff suffered a fire loss to its hotel. During the fire's spread and during the actions to extinguish the fire, the sprinkler system discharged, resulting in extensive water damages to the building and rooms within the hotel. Plaintiff further suffered loss of business income during the period of restoration.

13.     At all times material to the claim, the Policy provided Building, Business Income (and Extra Expense) and Business Personal Property coverage for the insured Property and was in full force and effect at the time of the loss.

14.     Plaintiff promptly submitted the claim to Defendants for the damages caused by the covered loss during the subject policy period, and immediately began mitigating its damages and losses.

15.     Defendants acknowledged the claim and assigned Claim Number 300-0018468-2019 to Plaintiff's loss for damages to the Property.

16.     Despite Plaintiff's well-documented presentation of its damages, to date, Defendants have not issued full payment of this loss.

17.     Defendants have a contractual obligation to investigate all possible bases which might support Plaintiff's claim and cannot deny a claim or part of a claim without thoroughly investigating the foundation for their denial or basis for withholding insurance benefits.

18.     Defendants have not properly investigated or adjusted Plaintiff's claim.

19.     Defendants have not properly paid Plaintiff's claim.

20.     Defendants have a contractual obligation not to look the other way when confronted with facts revealing the possibility of coverage and resisting reasonable interpretations of the Policy.

21.     Defendants have a contractual obligation not to deny or devalue the claim based on standards known to be impermissible or on an interpretation contrary to established law.

22.     Plaintiff has provided Defendants with all requested documents in its possession to assist Defendants in the adjustment of its claim. In addition, Defendants have all the documents they needed to tender insurance benefits for this loss.

23.     Defendants have wrongfully denied and withheld full payment of Plaintiff's claim for damages resulting from this covered loss.

## COUNT I
## (BREACH OF CONTRACT)

24.     Plaintiff re-alleges paragraphs 1 through 23 as if fully set forth herein.

25.     This is an action for damages for breach of contract against Defendants, arising out of a commercial insurance policy, bearing policy number 114618-80881833-18 that was in full force and effect at the time of the loss.

26.     Plaintiff's commercial Property suffered a fire loss on January 15, 2019. The fire traveled up the wall cavity and ignited the roof eaves, soffits, and interior attic space. Fire extinguishment efforts caused substantial damage to the exterior and interior of the building, including, but not limited to, damage to approximately seventy-one (71) hotel rooms, hallways, stairwells, and common areas as well as business personal property.

27.     Plaintiff promptly submitted the claim to Defendants for the damages to the dwelling, business personal property, and loss of business income caused by the fire and ensuing loss.

4

28.     Plaintiff immediately began mitigating its damages and losses and has incurred approximately $356,410.29 for mitigation repairs.

29.     At all times, Plaintiff made the Property available to, and fully cooperated with Defendants and their representatives to inspect and investigate the damage.

30.     Upon being notified of the loss, Defendants assigned a field claim representative, Matt Marden to adjust and investigate Plaintiff's claim.

31.     Defendants further retained Shamrock Salvage to inspect Plaintiff's business personal property located in the hotel at the time of the fire.

32.     During the claim adjustment, Defendants' adjusters and representatives inspected the hotel and damages on multiple occasions.

33.     On February 12, 2019, Defendants issued a payment for elevator repairs in the amount of $18,122.22 and mitigation repairs to the Property in the amount of $356,410.29.

34.     On or about March 8, 2019, Matt Marden prepared an inaccurate and incomplete damage repair estimate.

35.     Based on Mr. Marden's estimate, on April 11, 2019, Defendants issued an inadequate and improper payment for building repairs to Plaintiff in the amount of $634,729.79 actual cash value after application of the recoverable depreciation and deductible.

36.     Plaintiff disputed Defendants' valuation of the loss and through its public adjuster promptly supplement its claim with damage repair estimate, contractors' bids, photographs, replacement invoices for business personal property, documentation relating to loss of business income, and  additional supporting documents evidencing the damage to Plaintiff's Property was in excess of Defendants' estimate.

37.     Most of the dispute between the parties boils down to the discarded room furnishings under business personal property coverage despite Defendants having received a salvage inspection report performed by Shamrock Salvage on behalf of Defendants.

38.     Upon information and belief, Shamrock Salvage discarded Plaintiff's damaged business personal property. Having learned that the items were no longer available for re-inspection, Defendant allege that it could not determine whether Plaintiff was asserting that all of the items of business personal property were completely damaged or whether Plaintiff was claiming these items simply because these items had been discarded. This is an inaccurate position.

39.     Plaintiff, through its public adjuster, communicated with Defendants on numerous occasions regarding the outstanding scope, pricing based on its contractor's bid, business income loss, and business personal property damages, receiving no timely reply. Plaintiff further encouraged Defendants to attend a joint re-inspect with its representatives to assist them in the prompt adjustment of Plaintiff's claim.

40.     Having not heard from Defendants, on September 25, 2019, Plaintiff invoked the policy's appraisal provision and nominated its appraiser. However, Defendants failed to timely respond to Plaintiff's demand for appraisal.

41.     On October 8, 2019, Defendants acknowledged Plaintiff's appraisal demand and stated that it would formally respond.

42.     On October 14, 2019, Plaintiff again provided Defendants with its damage estimate and supporting documents outlining the differences in scope between the parties. Plaintiff's public adjuster further inquired whether Textile Restoration's invoice for services agreed upon months ago had been paid.

43.     On October 29, 2019, Defendants' field claim representative, Matt Marden, responded to Plaintiff's public adjuster, stating in pertinent part:

> After reviewing the prior payments and documents from Textile Restoration, we had not included this invoice in prior payments as we thought… The one area on the estimate I had not accounted for initially was the roof portion due to the damage in the middle section of the building…In reviewing the estimate, you have the entire metal roofing being replaced and not the middle section that was affected…I had also not accounted for the interior doors for each room and locksets that were affected which need to be included.

44.   Plaintiff and Defendants disagreed that the entire roof required full replacement. Defendants maintains that the damaged portion of the roof directly affected by the fire could be repaired. Plaintiff contends that the materials used to construct the roof were unique and could not be recreated. Thus, Plaintiff asserts that the entire roof would need to be replaced. However, Defendant failed to issue undisputed payment regarding the damaged portion of the roof and refused to submit the difference in scope to the appraisal panel.

45.   On November 12, 2019, Plaintiff contacted Matt Marden requesting a status update regarding its September 25, 2019, demand for appraisal.

46.   On November 13, 2019, Defendants improperly informed Plaintiff that it is not in agreement to go to appraisal as no formal written demand has been received by Plaintiff outlining what is being disputed and the reason why.

47.   On December 30, 2019, Plaintiff informed Defendant that communication regarding Plaintiff's loss has been difficult and that the building damages were not fully addressed. Plaintiff further stated that it had also provided damage photographs, a repair damage estimate outlining the areas of dispute, and roof replacement estimate.

48.   At all times material hereto, Plaintiff has satisfied all post-loss obligations accorded in the Policy, including but not limited to: (i) making reasonable and necessary repairs to protect the Property from further damage; (ii) keeping an accurate record of the expenses and providing Defendants with all documents in Plaintiff's possession, custody or control substantiating that

7

covered benefits were due and owing under the Policy; (iii) providing prompt notice of the loss; (iv) showing the damaged property to Defendants' representatives as often as they required; and (v) timely submitting a Sworn Statement in Proof of Loss with supporting documents.

49.     Plaintiff attempted to resolve the disputes with Defendants for nearly two years, Despite Plaintiff's repeated pleas and the ample opportunity Defendants had to fully investigate the loss, to date, Defendants have failed and/or refused to provide Plaintiff with all Policy insurance proceeds and benefits due and owing to repair the Property despite knowing that it sustained covered damages.

50.     Due to Defendant's failure to properly adjust the claim and pay the full amount of the damages cause by the loss sustained by the Plaintiff, Plaintiff had to retain the services of the undersigned counsel and are now obligated to pay a reasonable fee for his services.

51.     On November 14, 2020, Plaintiff sent a demand letter to Defendants, pursuant to O.C.G.A. §33-6-34 and O.C.G.A. § 33-4-6.

52.     On January 8, 2021, Defendants rejected Plaintiff's demand. However, Defendants issued an undisputed payment, nearly two years after the loss, in the amount of $88,854.39 for cleaning of electronics and replacement of business personal property.

53.     This payment only accounts for a fraction of what Plaintiff incurred to replace its contents within the hotel rooms. The replacement cost value Plaintiff is claiming for business personal property is $630,336.58.

54.     By same correspondence, Defendants further issued an undisputed payment in the amount of $44,616.23 under dwelling coverage for recoverable depreciation and costs to repair the damage to the roof area which was directly damaged by fire.

55.     Plaintiff's position is that the roof requires full replacement and disagrees with Defendants' valuation of its loss.

8

56.     Defendants further informed Plaintiff that it rejected its demand for loss of business income because Defendants had issued payment regarding the same for twelve-month period following the date of loss.

57.     Plaintiff has paid high premiums to Defendants to ensure it had adequate coverage for the insured Property. However, Defendants have refused to honor this contract and pay the claim in full.

58.     In response to the submission of Plaintiff's insurance claim, Defendants failed to send a properly trained insurance adjuster and/or representative to inspect, investigate, provide a coverage opinion, and evaluate the extent and nature of the claimed damages, resulting in Defendants' failure to properly evaluate the entire claim. Instead, Defendants looked for ways to lowball and deny the claim.

59.     Plaintiff suffered a substantial loss to the insured Property and continues to suffer the loss.

60.     Defendants have failed and/or refused full payment of insurance proceeds that are due and owing to Plaintiff.

61.     Plaintiff has repeatedly requested that Defendants do a complete evaluation of the claim and pay to return the Property back to its pre-loss condition. Defendants have failed and/or refused to indemnify.

62.     Plaintiff has performed all the requirements under the Policy, or alternatively, is excused from performance of the acts due to the waiver, representations, misrepresentations, omissions, and/or conduct of Defendants.

63.     As a direct result of Defendants' breach of their insurance contract, Plaintiff has lost benefits of the insured Property, and continues to suffer the loss.

9

64.     As a result of its breach of the Policy, Defendants are liable to Plaintiff in an amount to be determined at trial, including applicable interest.

65.     Documentation of the damages has been submitted and resubmitted to Defendants by Plaintiff; however, Defendants have breached the insurance Policy contract by failing to issue full payment to Plaintiff as of the date of this filing.

66.     Plaintiff has shown Defendants' adjusters and representatives the direct physical damage to the Property and the impact of the continued suffered loss.

67.     Defendants have failed and/or refused, and continue to refuse, to pay the full damages, despite knowing they are required to do so.

68.     Defendants have breached the insurance contract by failing to pay the full benefits for Plaintiff's claim due and owing under the Policy.

69.     Defendants have conducted an improper and incomplete claim investigation and have incorrectly alleged that the damages claimed are not subject to payment.

70.     On the contrary, Plaintiff's Policy provides coverage for the damages, and the claimed losses are not excluded under the Policy. The coverage is clear and well-documented by Plaintiff.

71.     Plaintiff has provided Defendants with all requested documents and information needed for Defendants to tender all owed insurance benefits, including detailed information regarding the damages sustained.

72.     Plaintiff has cooperated with all reasonable and relevant requests made by Defendants in their investigation of the loss.

73.     Defendants have failed to properly pay Plaintiff's claim, and this is a wrongful material breach of the Policy.

74. A material breach by one party excuses the other party from further performance under the contract.

75. Defendants' breach is a continuing breach of the Policy. As a direct result of Defendants' breach of the insurance contract, Plaintiff has lost benefits of the insured Property, and continues to suffer the loss.

76. Defendants have breached the insurance contract by, among other things, delaying Plaintiff's claim, failing to provide a proper adjustment and scope of Plaintiff's loss, and failing and refusing to make prompt and proper insurance benefit payments to Plaintiff, issuing a low-ball payment, failing to tender additional indemnity after being presented with the supporting documentation, and failing to pay that which is now past due and owing under the Policy.

77. Defendants are contractually required to timely tender owed insurance benefits. Defendants failed to do so.

78. Defendants have a contractual obligation to conduct a proper claim investigation and not to ignore evidence that would support Plaintiff's claim.

79. An insurance contract is a contract of adhesion and should be construed in a light most favorable to the insured.

80. Plaintiff has satisfied all conditions precedent to recover the full amount of damages caused by the covered cause of loss from Defendants under the subject Policy.

81. Plaintiff has complied with all conditions precedent to bringing all causes of action alleged in this Complaint, or Defendants have waived or is estopped from asserting the same.

82. As a result of the breach of the subject policy, Defendants are liable to Plaintiff in an amount to be determined at trial, including applicable interest.

83. Due to Defendants denial of the full policy benefits, Plaintiff is entitled to recover pre-judgment interest from the date of loss.

11

84.     Plaintiff is entitled to prevailing party costs.

85.     Plaintiff demands a jury trial on all triable issues.

WHEREFORE, Plaintiff, KISNA ENTERPRISES, LLC DBA LA QUINTA INN & SUITES, demands judgement against Defendants AUTO-OWNERS INSURANCE COMPANY and PROPERTY-OWNERS INSURANCE COMPANY as follow:

a.  Judgment against Auto-Owners and Property-Owners, for this Complaint for Breach of Contract of the Policy for all amounts due and owing under the Policy, including pre- and post-judgment interest, for its claims in an amount to be determined at trial;

b.  That Plaintiff be awarded its costs of suit incurred, pursuant to O.C.G.A. §13-6-11;

c.  That judgment be entered against Auto-Owners and Property-Owners for Plaintiff's reasonable attorney's fees and expenses of litigation in this action, pursuant to O.C.G.A. §13-6-11; and

d.  That Plaintiff recover such other and further relief as this Court may deem just and proper.

### COUNT II
### (BAD FAITH DAMAGES AGAINST INSURER PURSUANT TO O.C.G.A. §13-6-11 and §33-4-6)

86.     Plaintiff re-alleges paragraphs 1 through 85 as if fully set forth herein.

87.     Defendants' conduct in refusing to fully indemnify Plaintiff for its loss under Policy No. 114618-80881833-18 constitutes bad faith under Georgia law, specifically O.C.G.A. §13-6-11 and O.C.G.A. §33-4-6. Plaintiff is entitled to extra contractual damages under O.C.G.A. §33-4-6 and Georgia law, including the penalties and fees provided for under Georgia statute, in an amount to be determined at trial.

88.     Defendants have acted in bad faith, have been stubbornly litigious, or have caused the Plaintiff unnecessary trouble and expense by their breach of the insurance contract. Pursuant to O.C.G.A. §13-6-11, Plaintiff is entitled to recover expenses of this litigation.

89.     Defendants have a duty to attempt, in good faith, to settle claims when, under all these circumstances, they could and should have done so, had they acted fairly and honestly towards their insured, and with due regard for the insured's interest.

90.     Defendants have wrongfully failed and/or refused, in good faith, to settle Plaintiff's claim when under all circumstances they could and should have done so had they acted fairly and honestly towards their insured, thereby failing to settle or pay the subject claim when the obligation to settle and pay had become more than reasonably clear. Upon information and belief, Defendants breached this duty in claims handling of Plaintiff's loss, for, *inter alia*, financial gain and profit.

91.     Defendants could have and/or should have timely tendered the full insurance benefits that were due and owing to Plaintiff had they conducted a fair and reasonable claim investigation.

92.     Defendants have a duty not to misrepresent pertinent facts or insurance policy provisions relating to coverages at issue. Defendants breached this duty in the adjustment of Plaintiff's insurance claims for, *inter alia*, financial gain and profit.

93.     Defendants made material misrepresentations to Plaintiff regarding relevant facts and policy terms, conditions, and coverages relating to owed insurance benefits.

94.     Defendants have failed to acknowledge with reasonable promptness pertinent communications with respect to claims arising under the Policy.

95.     Defendants have a duty to adopt and implement standards for the proper investigation and settlement of claims. Upon information and belief, Defendants breached this duty in the adjustment of Plaintiff's insurance claims for, *inter alia*, financial gain and profit.

96.     Following the timeline of this claim as set forth in Count I of this Complaint, Defendants did not conduct a proper investigation and settlement of Plaintiff's claims. The improper claims handling began from the onset when Defendants assigned an improperly trained field claim adjuster to investigate and adjust Plaintiff's loss.

97.     It was only after Plaintiff retained a public adjuster that Defendants responded to Plaintiff's several requests to address the damages to the exterior and interior of the dwelling.

98.     Even though Defendants' representatives and salvage company inspected Plaintiff's damages on numerous occasions, Defendant improperly claimed that there is no coverage for the business personal property Defendant's salvage company discarded.

99.     Defendants continued to mishandle Plaintiff's claim for nearly two years  and it is obvious that Defendants were not sure how to conduct a proper claim investigation for this loss, and this caused delays with Plaintiff's claim.

100.    Defendants have refused to take ownership for their delay of Plaintiff's claim. Plaintiff did not have the ability or training to inspect its own loss, adjust the damages, and pay the amounts needed to return the Property to its pre-loss status. That is why Plaintiff purchased insurance from Defendants.

101.    Defendants have a duty not to deny claims without conducting reasonable investigations based upon available information. Defendants breached this duty in the adjustment of Plaintiff's insurance claims.

102.    Upon information and belief, as a general business practice, Defendants intentionally and/or in such reckless disregard for the rights of the insureds, utilizes unfair claims handling practices for financial gain and profit.

103.    Upon information and belief, Defendants have financially benefitted from their unfair claims handling practices, and as such, Defendants should be made to disgorge all unlawful

14

or illegitimate monies it profited from such bad faith claims handling practices, including but not limited to, any interest or monies Defendants made from such unlawful or illegitimate monies.

104.   Plaintiff is entitled to extra contractual damages under Georgia law, including the penalties and fees provided for under Georgia Statute, in an amount to be determined at trial.

105.   In order to pursue its claim against Defendants, Plaintiff has been required to engage the services of attorneys, for which it shall continue to incur fees and expenses in the pursuit of its claims herein against Defendants.

**WHEREFORE**, Plaintiff, KISNA ENTERPRISES, LLC DBA LA QUINTA INN & SUITES, prays to this Honorable Court:

a. That Plaintiff be awarded extra contractual damages pursuant to O.C.G.A. §33-4-6 upon this Court's determination that the failure and delay of Auto-Owners and Property-Owners to indemnify Plaintiff for its covered losses and damages was in bad faith under Georgia law;

b. That Auto-Owners and Property-Owners be required to disgorge all unlawful or illegitimate monies Defendants profited from their bad faith claims handling practices of unfair insurance claims practices utilized against its insureds including but not limited to, any interest or monies Defendants made from such unlawful or illegitimate monies;

c. That Plaintiff be awarded its costs of suit incurred, pursuant to O.C.G.A. §33-4-6 and §13-6-11;

d. That judgment be entered against Auto-Owners and Property-Owners for Plaintiff's reasonable attorneys' fees and expenses of litigation in this action, pursuant to O.C.G.A. §33-4-6 and §13-6-11; and

e. That Plaintiff have and recover such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff, KISNA ENTERPRISES, LLC DBA LA QUINTA INN & SUITES, requests a

jury trial on the issues as joined by the pleadings.

Respectfully submitted this 14th day of January, 2021.

/s/William F. Merlin, Jr.
WILLIAM F. MERLIN, JR., ESQUIRE
GEORGIA BAR NO. 510879
MERLIN LAW GROUP, P.A.
777 S. Harbour Island Blvd., Ste. 950
Tampa, Florida 33602
Phone: 813-229-1000
Fax: 813-229-3692
Email: cmerlin@merlinlawgroup.com
ssmith@merlinlawgroup.com
ikuhn@merlinlawgroup.com
mwilliams@merlinlawgroup.com
Attorney for Plaintiff

59511 (7-15)

18-0067-00
HUTCHINSON-TRAYLOR INSURANCE AGENCY
PO BOX 1049
LAGRANGE  GA  30241-0019



P.O. BOX 30660·LANSING, MICHIGAN 48909-8160

Property-Owners Insurance Company

02-13-2019

KISNA ENTERPRISES LLC
DBA LA QUINTA INN & SUITES
3581 CAMERON PKWY
STOCKBRIDGE  GA  30281-7817

> **Remember**, you can view your policy, pay your bill or change your paperless options any time online, at **www.auto-owners.com**.  If you have not already enrolled your policy, you may do so using policy number **114618-80881833-18** and Personal ID Code (PID) **68C 6X4 K2N**.

Your agency's phone number is 404-249-9633.

RE:  Policy 114618-80881833-18

Thank you for selecting Auto-Owners Insurance Group to serve your insurance needs!  Feel free to contact your independent Auto-Owners agent with questions you may have.

Auto-Owners and its affiliate companies offer a variety of programs, each of which has its own eligibility requirements, coverages and rates.  In addition, Auto-Owners also offers many billing options.  Please take this opportunity to review your insurance needs with your Auto-Owners agent, and discuss which company, program, and billing option may be most appropriate for you.

Auto-Owners Insurance Company was formed in 1916.  The Auto-Owners Insurance Group is comprised of five property and casualty companies and a life insurance company.  Our A++ (Superior) rating by A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

*~  Serving Our Policyholders and Agents Since 1916  ~*

**EXHIBIT "A"**

# *Property-Owners*

Issued     02-13-2019

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

AGENCY   HUTCHINSON-TRAYLOR INSURANCE AGENCY
18-0067-00          MKT TERR 124          404-249-9633

Change Endorsement Effective     02-06-2019
**POLICY NUMBER          114618-80881833-18**
Company Use                       80-46-GA-1106

INSURED   KISNA ENTERPRISES LLC
DBA LA QUINTA INN & SUITES

ADDRESS   3581 CAMERON PKWY

STOCKBRIDGE  GA  30281-7817

| Company Bill | Policy Term | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | 06-30-2018 to | 06-30-2019 |

---

Description of Change

COMMERCIAL COVERAGE PART-
AMEND MORTGAGEE/LOSS PAYEE AND ADD 55205 FOR THE FOLLOWING:

KEYBANK NATIONAL ASSOCIATION AS SERVICER ON BEHALF OF
SUTHERLAND COMMERCIAL MORTGAGE TRUST 2018-SBC7 AND
SUTHERLAND 2018-SBC7 REO I LLC
11501 OUTLOOK STREET SUITE 300
OVERLAND PARK, KS 66211

Transaction Number:  006

| | |
|---|---|
| Endorsement Premium: | $50.00 |
| PAID IN FULL DISCOUNT APPLIES | ADDITIONAL |
| (THIS IS NOT A BILL) | |
| The Paid in Full Discount does not apply to fixed fees, statutory charges or minimum premiums. | |

Property-Owners Ins. Co.

Issued     02-13-2019

AGENCY  HUTCHINSON-TRAYLOR INSURANCE AGENCY
18-0067-00          MKT TERR 124

Company   **POLICY NUMBER   114618-80881833-18**
Bill                        80-46-GA-1106

INSURED  KISNA ENTERPRISES LLC

Term   06-30-2018   to   06-30-2019

55056 (07-87)

# SUPPLEMENTAL DECLARATIONS

MORTGAGEE/ASSIGNEE/RECEIVER FORM 55174 FOR:

ASCENTIUM CAPITAL LLC ISAOA
PO BOX 979059
MIAMI FL 33197

APPLIES TO LOC 1-1 AT 3581 CAMERON PKWY, STOCKBRIDGE GA 30281

MORTGAGEE/LOSS PAYEE/ ADD'L INS 55205:

KEYBANK NATIONAL ASSOCIATION AS SERVICER ON BEHALF OF
SUTHERLAND COMMERCIAL MORTGAGE TRUST 2018-SBC7 AND
SUTHERLAND 2018-SBC7 REO I LLC
11501 OUTLOOK STREET SUITE 300
OVERLAND PARK, KS 66211
LOAN #10187600

**COMMERCIAL GENERAL LIABILITY**
**55174 (12-04)**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED -
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**
KEYBANK NATIONAL ASSOCIATION, AS SERVICER ON BEHALF OF SUTHERLAND
COMMERCIAL MORTGAGE TRUST 2018-SBC7 AND SUTHERLAND 2018-SBC7 REO I LLC

**Designation of Premises:**
3581 CAMERON PKWY STOCKBRIDGE GA 30281

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.   SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, mainte-nance, or use of the premises by you and shown  in the Schedule.

**B.**   This insurance does not apply to structural altera-tions, new construction and demolition operations performed by or for that person or organization.

**C.**   Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the additional insured are those specified in the written contract or agreement between the insured and the mortgagee, assignee or receiver, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984, 2003.

Agency Code   18-0067-00                                          Policy Number   114618-80881833

COMMERCIAL GENERAL LIABILITY
55205 (12-04)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization (Additional Insured):**
KEYBANK NATIONAL ASSOCIATION AS SERVICER ON BEHALF OF SUTHERLAND
COMMERCIAL MORTGAGE TRUST 2018-SBC7 AND SUTHERLAND 2018-SBC7 REO I LLC

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** Under **SECTION II - WHO IS AN INSURED**, the following is added:

The person or organization shown in the above Schedule is an Additional Insured, but only with respect to liability arising out of "your work" for that insured by or for you.

**B.** Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the Additional Insured are those specified in the written contract or agreement between the insured and the owner, lessee or contractor, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**C.** Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, the following is added:

This insurance is primary for the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that person or organization by or for you.  Other insurance available to the person or organization shown in the Schedule will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement.

59511 (7-15)

18-0067-00
HUTCHINSON-TRAYLOR INSURANCE AGENCY
PO BOX 1049
LAGRANGE  GA  30241-0019



P.O. BOX 30660·LANSING, MICHIGAN 48909-8160

Property-Owners Insurance Company

08-02-2018

KISNA ENTERPRISES LLC
DBA LA QUINTA INN & SUITES
3581 CAMERON PKWY
STOCKBRIDGE  GA  30281-7817

> **Remember**, you can view your policy, pay your bill or change your paperless options any time online, at **www.auto-owners.com**.  If you have not already enrolled your policy, you may do so using policy number **114618-80881833-18** and Personal ID Code (PID) **68C 6X4 K2N**.

Your agency's phone number is 404-249-9633.

RE:  Policy 114618-80881833-18

Thank you for selecting Auto-Owners Insurance Group to serve your insurance needs!  Feel free to contact your independent Auto-Owners agent with questions you may have.

Auto-Owners and its affiliate companies offer a variety of programs, each of which has its own eligibility requirements, coverages and rates.  In addition, Auto-Owners also offers many billing options.  Please take this opportunity to review your insurance needs with your Auto-Owners agent, and discuss which company, program, and billing option may be most appropriate for you.

Auto-Owners Insurance Company was formed in 1916.  The Auto-Owners Insurance Group is comprised of five property and casualty companies and a life insurance company.  Our A++ (Superior) rating by A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

*~  Serving Our Policyholders and Agents Since 1916  ~*

# *Property-Owners*

Page   1

Issued      08-02-2018

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

AGENCY   HUTCHINSON-TRAYLOR INSURANCE AGENCY
18-0067-00            MKT TERR 124         404-249-9633

Change Endorsement Effective      07-10-2018

**POLICY NUMBER        114618-80881833-18**

INSURED   KISNA ENTERPRISES LLC
DBA LA QUINTA INN & SUITES

Company Use                    80-46-GA-1106

ADDRESS   3581 CAMERON PKWY

STOCKBRIDGE  GA  30281-7817

| Company Bill | **Policy Term** | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | to | |
| | 06-30-2018 | 06-30-2019 |

---

Description of Change

AMENDED ADDITIONAL INSURED ON FORM 55174 (MORTGAGEE/ASSIGNEE/RECEIVER)
MORTGAGEE (#001), AND LOSS PAYEE (#002) TO READ AS FOLLOWS:

FROM - BUSINESS PROPERTY LENDING INC, ON BEHALF OF WELLS FARGO INC,
     AS TRUSTEE, 3581 CAMERCON PKWY, STOCKBRIDGE, GA 30281
TO - KEYBANK NATIONAL ASSOCIATION, AS SERVICER FOR SUTHERLAND GRANTOR
     TRUST SERIES V, 11501 OUTLOOK ST, STE 300, OVERLAND PARK, KS
     66211 (LOAN #: 10187600)

Transaction Number:  005

| | |
|---|---|
| Endorsement Premium: | $0.00 |
| PAID IN FULL DISCOUNT APPLIES | NO CHANGE |
| | |
| The Paid in Full Discount does not apply to fixed fees, statutory charges or minimum premiums. | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Name of Person or Organization:**
KEYBANK NATIONAL ASSOCIATION, AS SERVICER FOR SUTHERLAND GRANTOR TRUST
SERIES V

**Designation of Premises:**
11501 OUTLOOK ST, STE 300, OVERLAND PARK, KS 66211

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, mainte- nance, or use of the premises by you and shown in the Schedule.

**B.** This insurance does not apply to structural altera- tions, new construction and demolition operations performed by or for that person or organization.

**C.** Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the additional insured are those specified in the written contract or agreement between the insured and the mortgagee, assignee or receiver, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

59511 (7-15)

18-0067-00
HUTCHINSON-TRAYLOR INSURANCE AGENCY
PO BOX 1049
LAGRANGE  GA  30241-0019



LIFE • HOME • CAR • BUSINESS

P.O. BOX 30660 • LANSING, MICHIGAN 48909-8160

Property-Owners Insurance Company

06-25-2018

KISNA ENTERPRISES LLC
DBA LA QUINTA INN & SUITES
3581 CAMERON PKWY
STOCKBRIDGE  GA  30281-7817

> **Remember**, you can view your policy, pay your bill or change your paperless options any time online, at **www.auto-owners.com**.  If you have not already enrolled your policy, you may do so using policy number **114618-80881833-18** and Personal ID Code (PID) **68C 6X4 K2N**.

Your agency's phone number is 404-249-9633.

RE:  Policy 114618-80881833-18

Thank you for selecting Auto-Owners Insurance Group to serve your insurance needs!  Feel free to contact your independent Auto-Owners agent with questions you may have.

Auto-Owners and its affiliate companies offer a variety of programs, each of which has its own eligibility requirements, coverages and rates.  In addition, Auto-Owners also offers many billing options.  Please take this opportunity to review your insurance needs with your Auto-Owners agent, and discuss which company, program, and billing option may be most appropriate for you.

Auto-Owners Insurance Company was formed in 1916.  The Auto-Owners Insurance Group is comprised of five property and casualty companies and a life insurance company.  Our A++ (Superior) rating by A.M. Best Company signifies that we have the financial strength to provide the insurance protection you need.

*~  Serving Our Policyholders and Agents Since 1916  ~*

59349 (10-03)

# AVAILABILITY OF TERRORISM RISK INSURANCE COVERAGE

Dear Policyholder:

Our records indicate that you previously rejected our offer to provide coverage for certified acts of terrorism.  The enclosed policy does not provide coverage for certified acts of terrorism in accordance with your previous rejection of coverage.

If you would like coverage for certified acts of terrorism, please contact us.

This notice is for informational purposes only.

If you have any questions concerning your policy or this notice, please contact your Auto-Owners agency.

59349 (10-03)                                                                                                                    Page 1 of 1

59392 (1-15)

# NOTIFICATION OF POSSIBLE CHANGES IN COVERAGE FOR TERRORISM

Dear Policyholder:

The Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act) will expire on December 31, 2020 unless the Federal government extends the Act.  What this means to you is the following:

1. This policy does not provide coverage for certified acts of terrorism, since you have previously declined this coverage.

2. A conditional endorsement entitled, Conditional Exclusion Of Terrorism Involving Nuclear, Biological Or Chemical Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) is enclosed.  This conditional endorsement will only apply if the Act is not extended or if the Act is revised to increase statutory deductibles, decrease the federal government's share in potential losses above the statutory deductibles, change the levels, terms or conditions of coverage and we are no longer required to make terrorism coverage available and elect not to do so.  It will not apply if the Act is simply extended.

3. The conditional endorsement will provide coverage for an incident of terrorism pursuant to the terms and conditions of the policy only if the incident does not involve nuclear, biological or chemical material.

4. A premium charge will be made for this coverage after January 1, 2021.  It will be prorated for the period beginning January 1, 2021 and ending on the expiration date of this policy term.  However, it will only be made if the Terrorism Risk Insurance Act (including ensuing Congressional actions pursuant to the Act) is not extended.  Revised Declarations will be mailed to you after January 1, 2021.

5. If the Act is extended without any revision, the enclosed policy will continue to exclude coverage for certified acts of terrorism.  The conditional endorsement will not be activated and the changes in coverage or premium referenced above will not apply.

6. If the Act is extended with revisions or is replaced, and we are required or elect to continue to offer coverage for certified acts of terrorism, we may amend this policy in accordance with the provisions of the revised Act or its replacement.

This notice is for informational purposes only.

If you have any questions concerning your policy or this notice, please contact your Auto-Owners agency.

64261 (9-16)

# NOTICE OF CHANGE IN POLICY TERMS
# BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED

Dear Policyholder,

With this renewal, Business Income (And Extra Expense) Actual Loss Sustained form 64014 (12-10) is being updated to Business Income (And Extra Expense) Actual Loss Sustained form 64014 (2-16).

The limitation which states ordinary payroll expenses will only be paid for 60 days following the date of a direct physical loss or damage has been removed from the Business Income (And Extra Expense) Actual Loss Sustained coverage form 64014 (2-16).

This notice is for informational purposes only.  Your policy contains the specific terms and conditions of coverage.

If you have any questions regarding your policy or this notice, please contact your Auto-Owners agent.

# *Tailored Protection Insurance Policy*

*Property-Owners Insurance Company*

In witness whereof, we, the Property-Owners Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.

Secretary

President

55004 (7-12)

# *Property-Owners*

Page   1

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Issued      06-25-2018

**TAILORED PROTECTION POLICY DECLARATIONS**

AGENCY   HUTCHINSON-TRAYLOR INSURANCE AGENCY
18-0067-00          MKT TERR 124          404-249-9633

Reissue Effective      06-30-2018

**POLICY NUMBER          114618-80881833-18**

INSURED   KISNA ENTERPRISES LLC
DBA LA QUINTA INN & SUITES

Company Use          80-46-GA-1106

ADDRESS   3581 CAMERON PKWY

STOCKBRIDGE  GA  30281-7817

Company Bill

| **Policy Term** | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 06-30-2018 | to | 06-30-2019 |

55039 (11-87)

## COMMON POLICY INFORMATION

**Business Description:**     Hotel

**Entity:**     Limited Liab Corp

**Program:**     Hotel Without Restaurant

**Discount Applies For Affiliation With:**   Henry County Chamber Of Commerce

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S): | PREMIUM |
|---|---|
| COMMERCIAL PROPERTY COVERAGE | $8,489.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | $7,763.00 |
| **TOTAL** | **$16,252.00** |
| **PAID IN FULL DISCOUNT** | **$1,557.00** |
| **TOTAL POLICY PREMIUM IF PAID IN FULL** | **$14,695.00** |

**THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**
The Paid in Full Discount does not apply to fixed fees, statutory charges or minimum premiums.

Premium shown above for commercial general liability coverage is an advanced premium deposit and may be subject to audit.

Forms that apply to all coverage part(s) shown above (except garage liability, dealer's blanket, commercial automobile, if applicable):
IL0017 (11-85)     59495 (08-11)     55004 (07-12)     55056 (07-87)     59392 (01-15)
59349 (10-03)

A 02% Cumulative Multi-Policy Discount applies.  Supporting policies are marked with an (X):
Comm Umb( )  Comm Auto( )  WC( )  Life(X)  Personal( )  Farm( ).

Countersigned By:   COMPANY ISSUED

Property-Owners Ins. Co.                                                                    Issued      06-25-2018

AGENCY   HUTCHINSON-TRAYLOR INSURANCE AGENCY          Company     POLICY NUMBER  114618-80881833-18
         18-0067-00           MKT TERR 124            Bill                       80-46-GA-1106

INSURED   KISNA ENTERPRISES LLC                                   Term   06-30-2018   to   06-30-2019

54104 (07-87)

| COMMERCIAL PROPERTY COVERAGE |
|---|

55198 (12-10)

| STANDARD HOTEL PROPERTY PLUS COVERAGE PACKAGE DECLARATIONS |
|---|

The coverages and limits below apply separately to each location or sublocation that sustains a loss to covered property and is designated in the Commercial Property Coverage Declarations.

**     The deductible (DED) which applies to each coverage indicated below is the same as the deductible which applies to each location and sublocation shown on the Commercial Property Coverage Declarations, unless otherwise indicated:

| COVERAGE | LIMIT | DEDUCTIBLE |
|---|---|---|
| ACCOUNTS RECEIVABLE | $100,000 | ** |
| BAILEES | $5,000 | ** |
|  | $2,500 PER ITEM |  |
| BILLBOARDS OWNED BY THE INSURED | $5,000 | ** |
| BUSINESS INCOME & EXTRA EXPENSE INCLUDING | ACTUAL LOSS SUSTAINED | NONE |
| NEWLY ACQUIRED LOCATIONS |  |  |
| DEBRIS REMOVAL | $25,000 | NONE |
| ELECTRONIC DATA PROCESSING EQUIPMENT | $25,000 | ** |
| EMPLOYEE DISHONESTY | $15,000 | ** |
| EXPANDED BUILDING DEFINITION | INCLUDED | NONE |
| FINE ARTS, COLLECTIBLES AND MEMORABILIA | $10,000 | ** |
|  | $2,500 PER ITEM |  |
| FIRE DEPARTMENT SERVICE CHARGE | $5,000 | NONE |
| FORGERY AND ALTERATION | $10,000 | ** |
| HOUSEHOLD PERSONAL PROPERTY | $5,000 | NONE |
| INNKEEPERS LIABILITY | $5,000 | NONE |
|  | $1,000 PER GUEST |  |
| MONEY AND SECURITIES INSIDE PREMISES | $15,000 | ** |
| MONEY AND SECURITIES OUTSIDE PREMISES | $15,000 | ** |
| NEWLY ACQUIRED BUSINESS PERSONAL PROPERTY | $500,000 FOR 90 DAYS | ** |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY | $1,000,000 FOR 90 DAYS | ** |
| ORDINANCE OR LAW | SEE COMMERCIAL PROPERTY | ** |
|  | DECLARATIONS |  |
| OUTDOOR PROPERTY | $15,000 | ** |
| TREES, SHRUBS OR PLANTS | $1,000 PER ITEM |  |
| RADIO OR TELEVISION ANTENNAS | $10,000 | ** |
| PERSONAL EFFECTS AND PROPERTY OF OTHERS | $15,000 | ** |
| POLLUTANT CLEAN UP AND REMOVAL | $25,000 | ** |
| PROPERTY IN TRANSIT | $25,000 | ** |

Property-Owners Ins. Co.                                                                    Issued        06-25-2018

AGENCY   HUTCHINSON-TRAYLOR INSURANCE AGENCY          Company    **POLICY NUMBER**   114618-80881833-18
18-0067-00            MKT TERR 124                    Bill                            80-46-GA-1106

INSURED   KISNA ENTERPRISES LLC                                         Term   06-30-2018  to  06-30-2019

55198 (12-10)

| STANDARD HOTEL PROPERTY PLUS COVERAGE PACKAGE DECLARATIONS | | |
|---|---|---|
| **COVERAGE** | **LIMIT** | **DEDUCTIBLE** |
| PROPERTY OFF PREMISES | $25,000 | ** |
| REFRIGERATED PRODUCTS | $10,000 | ** |
| SALESPERSON'S SAMPLES | $10,000 | ** |
| UTILITY SERVICES FAILURE | $50,000 | ** |
| VALUABLE PAPERS AND RECORDS ON PREMISES | $50,000 | ** |
| VALUABLE PAPERS AND RECORDS OFF PREMISES | $10,000 | ** |
| WATER BACK-UP FROM SEWERS OR DRAINS | $15,000 | NONE |

Forms that apply to this coverage part:

| | | | |
|---|---|---|---|
| 64014   (02-16) | 54198   (12-10) | 54334   (12-10) | 64020   (12-10) | 54189   (12-10) |
| 54186   (12-10) | 54218   (03-13) | 54217   (03-13) | 54216   (03-13) | 54214   (03-13) |
| 54221   (12-10) | 54220   (06-00) | 54219   (12-10) | 54173   (05-15) | 25006   (05-15) |
| 54338   (03-13) | 54339   (03-13) | 64010   (12-10) | 64000   (12-10) | |

**Coverages Provided**

Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

**LOCATION 0001  -  BUILDING 0001**

**Location:**  3581 Cameron Pkwy, Stockbridge, GA 30281-7817

**Occupied As:**  Hotel

**Secured Interested Parties:**  See Attached Schedule

**Rating Information**

Territory: 170                                           County: Clayton
Program: Hotel Without Restaurant                        Construction: Frame
Protection Class: 01                                     Class Code: 0747
Specific Rate - Building:  0.122                          Specific Rate - Pers Prop:  0.139

| COVERAGE | COINSURANCE | DEDUCTIBLE | LIMIT | RATE | PREMIUM |
|---|---|---|---|---|---|
| BUILDING | | | $4,011,700 | | |
| Causes of Loss | | | | | |
| Basic Group I | 90% | $1,000 | | 0.082 | $3,290.00 |
| Basic Group II | 90% | $1,000 | | 0.050 | $2,006.00 |
| Special | 90% | $1,000 | | 0.021 | $842.00 |
| Theft | 90% | $1,000 | | | Included |

Page   4

Property-Owners Ins. Co.            Issued     06-25-2018

AGENCY  HUTCHINSON-TRAYLOR INSURANCE AGENCY     Company   **POLICY NUMBER**  **114618-80881833-18**
18-0067-00        MKT TERR 124          Bill                         80-46-GA-1106

INSURED   KISNA ENTERPRISES LLC                     Term   06-30-2018  to  06-30-2019

| COVERAGE | COINSURANCE | DEDUCTIBLE | LIMIT | RATE | PREMIUM |
|---|---|---|---|---|---|
| OPTIONAL COVERAGE | | | | | |
| Inflation Guard Factor Building 1.023 | | | | | |
| Replacement Cost | | | | | |
| Equipment Breakdown | | $1,000 | See Form 54843 | | $113.00 |
| Hotel Plus Coverage Package | | $1,000 | See 55198 (12-10) | | $445.00 |
| Tier:   Standard | | | | | |
| ORDINANCE OR LAW | | | | | |
| Coverage A-Undamaged Portion | | $1,000 | Incl in Bldg Limit | | Included |
| Coverage B-Demolition | | $1,000 | $60,000 | | Included |
| Coverage C-Increased Cost | | $1,000 | $60,000 | | Included |
| PERSONAL PROPERTY | | | $1,103,970 | | |
| Causes of Loss | | | | | |
| Basic Group I | 100% | $1,000 | | 0.087 | $960.00 |
| Basic Group II | 100% | $1,000 | | 0.032 | $353.00 |
| Special | 100% | $1,000 | | 0.030 | $331.00 |
| Theft | 100% | $1,000 | | | Included |
| OPTIONAL COVERAGE | | | | | |
| Replacement Cost | | | | | |
| Inflation Guard Factor Personal Property 1.018 | | | | | |
| Equipment Breakdown | | $1,000 | See Form 54843 | | $30.00 |
| Hotel Plus Coverage Package | | $1,000 | See 55198 (12-10) | | $119.00 |
| Tier:  Standard | | | | | |
| ORDINANCE OR LAW | | | | | |
| Coverage D-Tenant's I&B | | $1,000 | $60,000 | | Included |

Forms that apply to this building:

```
IL0003  (07-02)    64021  (12-10)    64085  (10-13)    59352  (01-15)    54833  (07-08)
64062  (05-13)    IL0262  (02-15)    64224  (01-16)    CP0090  (07-88)    54402  (03-12)
64000  (12-10)    64013  (12-10)    64010  (12-10)    54843  (12-10)    64020  (12-10)
54173  (05-15)    25006  (05-15)    64014  (02-16)    64055  (12-10)    59392  (01-15)
```

| COMMERCIAL PROPERTY COVERAGE - LOCATION 0001 SUMMARY | PREMIUM |
|---|---|
| TERRORISM - CERTIFIED ACTS   SEE FORM: 59352 | EXCLUDED |
| TERRORISM COVERAGE | |
| A PREMIUM CHARGE MAY BE MADE EFFECTIVE 01-01-21   SEE FORMS 54833, 59392 | |
| **LOCATION 0001** | **$8,489.00** |

Property-Owners Ins. Co. | | | | | Issued | 06-25-2018

| | | | | |
|---|---|---|---|---|
| AGENCY | HUTCHINSON-TRAYLOR INSURANCE AGENCY<br>18-0067-00          MKT TERR 124 | Company<br>Bill | POLICY NUMBER | 114618-80881833-18<br>80-46-GA-1106 |
| INSURED | KISNA ENTERPRISES LLC | | Term   06-30-2018   to   06-30-2019 | |

**Secured Interested Parties and/or Additional Interested Parties**

Applies to Loc/Bldg(s):

0001/001
BUSINESS PROPERTY LENDING INC,
ON BEHALF OF WELLS FARGO INC,
Po Box 703387
As Trustee
Dallas, TX  75370
Interest:  Mortgagee

Applies to Loc/Bldg(s):

0001/001
BUSINESS PROPERTY LENDING INC,
ON BEHALF OF WELLS FARGO INC,
Po Box 703387
As Trustee
Dallas, TX  75370
Interest:  Loss Payable

Applies to Loc/Bldg(s):

0001/001
ASCENTIMUN CAPITAL LLC ISAOA
Po Box 979059
Miami, FL  33197-9059
Interest:  Lender's Loss Payable

Applies to Loc/Bldg(s):

0001/001
US SMALL BUSINESS ADMINISTRATI
C/O GA CERTIFIED DEVELOPMENT
3405 Piedmont Rd Ste 500
Corp
Atlanta, GA  30305
Interest:  Mortgagee

Applies to Loc/Bldg(s):

0001/001
LA QUINTA FRANCHISING LLC
LQ MANAGEMENT LLC AND
Po Box 140528
La Quinta Holdings Inc
Kansas City, MO  64114
Interest:  Loss Payable

55040 (11-87)

| COMMERCIAL GENERAL LIABILITY COVERAGE |
|---|

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| General Aggregate<br>   (Other Than Products-Completed Operations) | $2,000,000 |

Property-Owners Ins. Co.                                                                    Issued      06-25-2018

| AGENCY | HUTCHINSON-TRAYLOR INSURANCE AGENCY | Company | POLICY NUMBER | 114618-80881833-18 |
|---|---|---|---|---|
|  | 18-0067-00            MKT TERR 124 | Bill |  | 80-46-GA-1106 |

| INSURED | KISNA ENTERPRISES LLC | Term   06-30-2018   to   06-30-2019 |
|---|---|---|

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Products-Completed Operations Aggregate | $2,000,000 |
| Personal Injury and Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Hired Auto & Non-Owned Auto | $1,000,000  Each Occurrence |
| **COMMERCIAL GENERAL LIABILITY PLUS ENDORSEMENT** |  |
| Damage to Premises Rented to You | $300,000  Any One Premises |
| (Fire, Lightning, Explosion, Smoke or Water Damage) |  |
| Medical Payments | $10,000  Any One Person |
| Expanded Coverage Details See Form: |  |
| Extended Watercraft |  |
| Personal Injury Extension |  |
| Broadened Supplementary Payments |  |
| Broadened Knowledge Of Occurrence |  |
| Additional Products-Completed Operations Aggregate |  |
| Blanket Additional Insured - Lessor of Leased Equipment |  |
| Blanket Additional Insured - Managers or Lessors of Premises |  |
| Newly Formed or Acquired Organizations Extension |  |
| Blanket Waiver of Subrogation |  |

Twice the "General Aggregate Limit", shown above, is provided at no additional charge for each 12 month period in accordance with form 55300.

**AUDIT TYPE:**  Annual Audit

Forms that apply to this coverage:

| 59351 | (01-15) | 55405 | (07-08) | 55146 | (06-04) | 55352 | (10-08) | 55165 | (12-04) |
|---|---|---|---|---|---|---|---|---|---|
| 55327 | (12-04) | 55300 | (07-05) | IL0017 | (11-85) | 55028 | (12-04) | 55184 | (11-95) |
| CG2416 | (12-07) | 55282 | (04-05) | 55296 | (09-09) | 55174 | (12-04) | 55181 | (12-04) |
| IL0021 | (07-02) | 55513 | (11-11) | 55163 | (12-04) | 55372 | (01-07) | 55592 | (02-14) |
| 55637 | (09-14) | IL0262 | (02-15) | 55718 | (11-15) | 59392 | (01-15) |  |  |

## LOCATION 0001  -  BUILDING 0001

**Location:**  3581 Cameron Pkwy, Stockbridge, GA 30281-7817

**Territory:**  003                                           **County:**  Clayton

| CLASSIFICATION | CODE | SUBLINE | PREMIUM BASIS | RATE | PREMIUM |
|---|---|---|---|---|---|
| Commercial General Liability Plus Endorsement Included At 7.5% Of The Premises Operation Premium | 00501 | Prem/Op | Prem/Op Prem Included | Included | Included |
| Hired Auto & Non-Owned Liability | 04001 | Auto | Flat Charge |  | $121.00 |
| Hotels - With Pools Or Beaches - Four Stories Or More. | 45191 | Prem/Op | Gross Sales $1,600,000 | Each 1000 4.410 | $7,056.00 |
|  |  | Prod/Comp Op | $1,600,000 | .038 | $61.00 |

Property-Owners Ins. Co.                                                                    Issued        06-25-2018

AGENCY   HUTCHINSON-TRAYLOR INSURANCE AGENCY                    Company   **POLICY NUMBER**   **114618-80881833-18**
18-0067-00                    MKT TERR 124                     Bill                                    80-46-GA-1106

INSURED   KISNA ENTERPRISES LLC                                          Term   06-30-2018   to   06-30-2019

| CLASSIFICATION | CODE | SUBLINE | PREMIUM BASIS | RATE | PREMIUM |
|---|---|---|---|---|---|
| Additional Interests | 49950 | | | | |
| Designated Per/Organization L | | | | | |
|    1. Con-Way Enterprises | | Prem/Op | Flat Charge | | $25.00 |
| | | Prod/Comp Op | Flat Charge | | $25.00 |
| Grantor Of Franchise | | | | | |
|    1. Lq Management Llc | | Prem/Op | Flat Charge | | $35.00 |
| | | Prod/Comp Op | Flat Charge | | $40.00 |
|    2. La Quinta Holdings | | Prem/Op | Flat Charge | | $35.00 |
| | | Prod/Comp Op | Flat Charge | | $40.00 |
|    3. La Quinta Franchisin | | Prem/Op | Flat Charge | | $35.00 |
| | | Prod/Comp Op | Flat Charge | | $40.00 |
| Blnkt Add'L Ins-Excl Prod/Cops | | Prem/Op | Flat Charge | | $250.00 |

| COMMERCIAL GENERAL LIABILITY COVERAGE - LOCATION 0001 SUMMARY | PREMIUM |
|---|---|
| TERRORISM - CERTIFIED ACTS    SEE FORM: 59351 | EXCLUDED |
| TERRORISM COVERAGE | |
| A PREMIUM CHARGE MAY BE MADE EFFECTIVE 01-01-21   SEE FORMS 55405, 59392 | |
| **LOCATION 0001** | **$7,763.00** |

Property-Owners Ins. Co.                                                    Issued        06-25-2018

AGENCY  HUTCHINSON-TRAYLOR INSURANCE AGENCY          Company    **POLICY NUMBER**   **114618-80881833-18**
18-0067-00               MKT TERR 124               Bill                            80-46-GA-1106

INSURED  KISNA ENTERPRISES LLC                                 Term  06-30-2018  to  06-30-2019

55056 (07-87)

# SUPPLEMENTAL DECLARATIONS

```
MORTGAGEE/ASSIGNEE/RECEIVER FORM 55174 FOR:

ASCENTIUM CAPITAL LLC ISAOA
PO BOX 979059
MIAMI FL 33197

APPLIES TO LOC 1-1 AT 3581 CAMERON PKWY, STOCKBRIDGE GA 30281
```

59495 (8-11)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL DESIGNATED PERSON(S) OR ORGANIZATION(S) OTHER THAN THE NAMED INSURED

It is agreed:

This policy is subject to the following condition:

If this policy is canceled or nonrenewed, the designated person(s) or organization(s) shown in the SCHEDULE below shall be notified at least:
1.   10 days prior to the effective date of cancellation if we cancel for nonpayment of premium; or
2.   The number of days shown in the SCHEDULE prior to the effective date if we cancel for any other reason.
If the law of the state in which notice is mailed to requires a longer notice period, we will comply with those requirements.

| SCHEDULE | |
|---|---|
| **Number of Days Notice**   _030_____ | |
| **Name Of Designated Person(s) Or Organization(s)** | **Mailing Address** |
| LA QUINTA FRANCHISING LLC<br>NO 245 C/O CERTFOCUS | PO BOX 140528<br><br>KANSAS CITY        MO 64114-8528 |

**(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)**

All other policy terms and conditions apply.

59495 (8-11)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION OR NONRENEWAL DESIGNATED PERSON(S) OR ORGANIZATION(S) OTHER THAN THE NAMED INSURED

It is agreed:

This policy is subject to the following condition:

If this policy is canceled or nonrenewed, the designated person(s) or organization(s) shown in the SCHEDULE below shall be notified at least:
1.    10 days prior to the effective date of cancellation if we cancel for nonpayment of premium; or
2.    The number of days shown in the SCHEDULE prior to the effective date if we cancel for any other reason.
If the law of the state in which notice is mailed to requires a longer notice period, we will comply with those requirements.

| SCHEDULE | |
|---|---|
| **Number of Days Notice**   030 | |
| **Name Of Designated Person(s) Or Organization(s)** | **Mailing Address** |
| LA QUINTA FRANCHISING LLC<br>NO 245 C/O CERTFOCUS | PO BOX 140528<br><br>KANSAS CITY          MO 64114-8528 |

**(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)**

All other policy terms and conditions apply.

**COMMERCIAL GENERAL LIABILITY**
**55163 (12-04)**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**
LA QUINTA FRANCHISING LLC
LQ MANAGEMENT LLC
LA QUINTA HOLDINGS INC

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

Their financial control of you; or

Premises they own, maintain or control while you lease or occupy these premises.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the additional insured are those specified in the written contract or agreement between the insured and the controlling interest, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984, 2003.

**COMMERCIAL GENERAL LIABILITY**
**55174 (12-04)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**
BUSINESS PROPERTY LENDING INC, ON BEHALF OF WELLS FARGO INC,
AS TRUSTEE

**Designation of Premises:**
3581 CAMERON PKWY, STOCKBRIDGE GA 30281

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.**  **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, mainte-nance, or use of the premises by you and shown  in the Schedule.

**B.**  This insurance does not apply to structural altera-tions, new construction and demolition operations performed by or for that person or organization.

**C.**  Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the additional insured are those specified in the written contract or agreement between the insured and the mortgagee, assignee or receiver, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
55181 (12-04)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| CON-WAY ENTERPRISE SERVICES INC |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in  the Schedule but only with respect to liability for "bodily injury", "property damage", "personal injury" or "advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.**  In the performance of your ongoing operations; or

**2.**  In connection with your premises owned by or rented to you.

**B.**  The following is added to **SECTION III - LIMITS OF INSURANCE**:

The limits of liability for the additional insured are those specified in the written contract or agreement between the insured and the designated person or organization, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984, 2004.

55184 (11-95)
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

**Name of Person or Organization:**
LA QUINTA FRANCHISING LLC
LQ MANAGEMENT LLC


LA QUINTA HOLDINGS INC



(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

2.  The following is added to **LIMITS OF INSURANCE** (Section III):

    8.  The limits of liability for the additional insured are those specified in the written contract or agreement between the Insured and the grantor of franchise, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
55327 (12-04)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION-SPECIFIED THERAPEUTIC OR COSMETIC SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Description of Operations:**

HOTEL/MOTEL

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I - COVERAGES, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY, 2. Exclusions,** the following exclusion is added:

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any service, treatment, advice or instruction relating in any manner to:

1.  the appearance of skin;

2.  hair treatment, removal or replacement;

3.  body piercing of any type;

4.  massage, physiotherapy, chiropody;

5.  hearing aids or devices;

6.  vision aids or devices;

7.  cosmetic preparations or applications; or

8.  aromatics or perfumes.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
55327 (12-04)       Copyright, Insurance Service Office, Inc., 1982, 1988, 1992, 1997, 2000, 2002, 2004.       Page 1 of 1

25006 (5-15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HOTEL PLUS - CRIME COVERAGE ENDORSEMENT
### Tailored Protection Policy

This endorsement adds Crime Coverage for the following:

LIABILITY FOR GUESTS PROPERTY - PREMISES

**A.  COVERAGE**
We will pay those sums that you become legally obligated to pay as damages because of loss or destruction of, or damage to Covered Property.  We have the right and duty to defend any suit brought against you seeking damages that are payable under this insurance.

**1.  Covered Property**
Any property, other than that specified as Property Not Covered, belonging to your "guests" while the property is:
**a.**  Inside the "premises"; or
**b.**  In your possession.

**2.  Property Not Covered**
**a.  Samples, Articles for Sale**
Samples or articles carried or held for sale or for delivery after sale.
**b.  Vehicles**
Any vehicle including:
**(1)**  Its equipment and accessories; and
**(2)**  Any property contained in or on a vehicle.

**3.  Supplementary Payments**
If we defend any suit, we will pay with respect to:
**a.  Expenses**
**(1)**  Reasonable expenses you incur at our request;
**(2)**  Expenses we incur; and
**(3)**  Costs charged against you.
**b.  Interest**
**(1)**  Interest on the full amount of any judgment that accrues:
**(a)**  After entry of the judgment; and
**(b)**  Before we pay, offer to pay or deposit in court that part of the judgment for which we are liable under this insurance.
**(2)**  Prejudgment interest awarded against you on that part of the judgment we pay.  If we make an offer to pay the Limit of Insurance, we will not pay any

prejudgment interest based on that period of time after the offer.
**c.  Loss of Wages or Salary**
Actual loss of wages or salary (but not other income) because of required attendance at hearings or trials connected with the suit.  But, we will not pay more than $100 per day under this part of the Supplementary Payments.
**d.  Premiums for Bonds**
Premiums for the following types of bonds having penalties totaling not more than the Limit of Insurance shown in the Hotel Plus Coverage Declarations.
**(1)**  Appeal bonds required in the suit; and
**(2)**  Bonds to release attachments.  But, we do not have to apply for or furnish those bonds.
Our liability for Supplementary Payments is in addition to the Limit of Insurance shown in the Hotel Plus Coverage Declarations.

**B.  LIMIT OF INSURANCE**
**1.**  The most we will pay in the aggregate for all damages because of loss or destruction of or damage to Covered Property in any one "occurrence" is the per occurrence Limit of Insurance shown in the Hotel Plus Coverage Declarations.
**2.**  Subject to the applicable limit stated in 1. above, the most we will pay for all damages because of loss or destruction of or damage to property of any one "guest" is the per guest Limit of Insurance shown in the Hotel Plus Coverage Declarations.
All loss, destruction or damage involving a single act or series of related acts whether caused by one or more persons is considered one "occurrence".

**C.  EXCLUSIONS, CONDITIONS, DEFINITIONS**
This insurance is subject to the following:
**1.  Exclusions**
We will not pay for damages arising out of, or the defense of any suit connected with, any of the following:

a. **Acts Committed by You or Your Partners**
Loss or destruction of, or damage to property resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

b. **Assumed Liability**
Liability you assume under any written agreement. But this exclusion does not apply to any written agreement entered into with a "guest" before the "occurrence" of any loss, destruction or damage that increases to an amount not exceeding $1,000 any lesser amount for which you may otherwise be liable under any statute.

c. **Fire**
Destruction of, or damage to property resulting from fire.

d. **Food or Liquid**
Destruction of, or damage to property resulting from the spilling, upsetting or leaking of any food or liquid.

e. **Governmental Action**
Loss or destruction of, or damage to property resulting from seizure or destruction of the property by order of governmental authority.

f. **Inherent Vice**
Destruction of, or damage to property resulting from insects, animals, wear and tear, gradual deterioration or inherent vice.

g. **Laundering or Cleaning**
Destruction of, or damage to property while in your care and custody for laundering or cleaning.

h. **Nuclear**
Loss or destruction of, or damage to property resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

i. **Release of Others from Liability**
Your release of any other person or organization from legal liability.

j. **War and Similar Actions**
Loss or destruction of, or damage to property resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

2. **Conditions**
a. **Bankruptcy**
You or your estate's bankruptcy or insolvency will not relieve us of our obligations under this insurance.

b. **Defense, Investigation and Settlement**
(1) We may investigate and settle any claim or suit as we deem expedient.

(2) We will not defend any suit after having paid judgments or settlements equal to the Limit of Insurance shown in the Hotel Plus Coverage Declarations.

c. **Duties in the Event of Loss, Claim, or Suit**
In the event of loss, claim or suit you must:
(1) Notify us promptly of any loss, destruction or damage that may result in a claim;
(2) Give us prompt, written notice of any claim made or suit brought against you and:
   (a) Send us immediately, copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
   (b) Authorize us to obtain records and other information; and
   (c) Cooperate with us in the defense, investigation or settlement of the claim or suit.
You may not voluntarily make a payment, assume any obligation or incur any expense without our consent.
If you have reason to believe that any loss or destruction of, or damage to Covered Property involves a violation of law, you must notify the police.

d. **Joint Insured**
(1) If more than one Insured is named in the DECLARATIONS, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.
(2) If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every insured.
(3) We will not pay more for damages for which more than one Insured is liable than the amount we would pay if one Insured were liable for the damages.

e. **Legal Action Against Us**
No person or organization has a right under this insurance:
(1) To name us as a co-defendant in a suit asking for damages from you; or
(2) To sue us on this insurance unless all of its terms have been fully complied with.
A person or organization may sue us to recover on an agreed settlement or on a final

judgment against you obtained after an actual trial. But, we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

**f. Non-Cumulation of Limit of Insurance**
Limits of Insurance shown in the Hotel Plus Coverage Declarations do not cumulate from year to year or period to period.

**g. Other Insurance**
This insurance does not apply to damages recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the damages, this insurance will apply to that part of the damages not recoverable or recovered under the other insurance.

**h. Policy Period**
(1) The Policy Period is the period shown in the DECLARATIONS.
(2) We will pay only for damages because of loss or destruction of, or damage to Covered Property incurring during the Policy Period.

**i. Territory**
We will pay only for damages because of your legal liability for loss or destruction of, or damage to Covered Property occurring within the United States of America, U.S. Virgin Islands, Puerto Rico, or Canada.

**j. Transfer of Your Rights of Recovery Against Others to Us**
You must transfer to us all your rights of recovery against any person or organization pertaining to the loss for which you were liable and for which we have paid damages or made a settlement. You must do everything necessary to secure these rights and do nothing to impair them.

**3. Definitions**
**a. "Occurrence"** means an:
(1) Act or series of related acts involving one or more persons; or
(2) Act or event, or a series of related acts or events not involving any person.

**b. "Premises"** mean the interior of that portion of any building at a location shown in the DECLARATIONS that you occupy in conducting your business.

**c. "Guest"** means that person who has paid a fee for their overnight lodging to you, during that period to which that fee applies.

All other policy terms and conditions apply.

54173 (5-15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HOTEL PLUS ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A. A. COVERAGE** is amended.
  **1.** Under **1. Covered Property**, **a. (2)** is deleted and replaced by the following.
  **(2)** Fixtures, including outdoor fixtures of:
  **(a)** Outdoor fences, light poles, storage buildings, pools, radio and television antennas (including satellite dishes), awnings and attached signs;
  **(b)** Detached signs on or within 1,000 feet of the premises; and
  **(c)** Billboard signs located anywhere within the coverage territory.
  **2.** Under **2. Property Not Covered**, **q. (2)** is deleted and replaced by the following.
  **(2)** Masts or towers, trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.
  **3. 5. Coverage Extensions** is amended.
  **a. e. Outdoor Property** is deleted and replaced by the following.
  **e. Outdoor Property**
  You may extend the insurance provided by this Coverage Form to apply to your outdoor trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are covered causes of loss:
  **(a)** Fire;
  **(b)** Lightning;
  **(c)** Explosion;
  **(d)** Riot or Civil Commotion; or
  **(e)** Aircraft.
  The most we will pay for loss or damage is $10,000, but not more than $1,000 for any one tree, shrub or plant, unless

higher limits are shown in the Declarations. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.
  **b.** The following is added.
  **Household Personal Property**
  You may extend the insurance that applies to **Your Business Personal Property** to Household Personal Property located in or on the building described in the Commercial Property Coverage Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, usual to the occupancy of the described premises as living quarters, that:
  **(1)** Belongs to you, or at your option:
  **(a)** Your domestic worker; or
  **(b)** A member of your family; or
  **(2)** For which you may be legally liable.
  This includes property purchased under an installment plan. The most we will pay under this extension is the Limit of Insurance shown in the Declarations for HOUSEHOLD PERSONAL PROPERTY per occurrence. You may apply up to $500 of this amount for such property while it is away from the described premises.

**B. C. LIMITS OF INSURANCE** is amended.
  **1.** Paragraph **2.** is deleted.
  **2.** The following is added.
  The most we will pay for loss or damage to billboard signs is the Limit of Insurance shown in the Declarations for BILLBOARDS OWNED BY THE INSURED.

All other policy terms and conditions apply.

54186 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# WATER BACK-UP FROM SEWERS OR DRAINS

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM
BUSINESS INCOME AND EXTRA EXPENSE ACTUAL LOSS SUSTAINED COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1.   Subject to the provisions of paragraph **2.** below, under **B**. **EXCLUSIONS**, **g**. **Water** subparagraph **(3)** is deleted.

2.   Under **C**. **LIMITATIONS** the following limitation is added:

In any one loss, we will not pay more than the Limit of Insurance shown in the Declarations under WATER BACK-UP FROM SEWERS OR DRAINS for loss of or damage to Covered Property caused by water back-up from sewers or drains.  In the event that the amount of loss of or damage to Covered Property does not exceed the Limit of Insurance shown in the Declarations for WATER BACKUP FROM SEWERS OR DRAINS, you may, at your option, apply the remainder of this Limit of Insurance to your actual loss of Business Income or necessary Extra Expense, if any, subject to the terms and conditions of the BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM, or the BUSINESS INCOME AND EXTRA EXPENSE ACTUAL LOSS SUSTAINED COVERAGE FORM.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

54186 (12-10)                                                                                                      Page 1 of 1

54198 (12-10)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEBRIS REMOVAL

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

Under **A. COVERAGE**, **4. Additional Coverages**, **a. Debris Removal**, **(4)** is deleted and replaced by the following:

**(4)** We will pay an additional amount, up to the Limit of Insurance shown in the Declarations for DEBRIS REMOVAL, for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus the Limit of Insurance shown in the Declarations for DEBRIS REMOVAL.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

54198 (12-10)          Copyright, ISO Commercial Risk Services, Inc., 1983, 1990, 2009          Page 1 of 1

54216 (3-13)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SALESPERSON'S SAMPLES

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

**1.** Under the **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:
   **Salesperson's Samples**
   We will pay for direct physical loss of or damage to samples of merchandise described which are:
   **a.** Owned by you while in your care, custody or control;
   **b.** Owned by you and in the care, custody or control of your salesperson and/or agents; or
   **c.** While in transit, except by parcel post, between your premises and the salesperson and/or agent
   caused by or resulting from any Covered Cause of Loss.

   This coverage does not apply to:
   **(1)** Jewelry, furs or articles consisting principally of fur;
   **(2)** Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000
   feet of the described premises;
   **(3)** Property at or on the premises of your salespersons and/or agents; or
   **(4)** Merchandise intended for sale, which may be sold and shipped by you to others, or which has been purchased by
   you from others.

   Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for SALESPER-
   SON'S SAMPLES.  The Additional Condition, Coinsurance, does not apply to this Additional Coverage.

**2.** Under **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM, the following exclusions are added to apply
   only to this Additional Coverage:
   **a.** Misappropriation, secretion, conversion, infidelity or any dishonest act by you or other or the employees or agents
   of either to whom the covered property may be entrusted.  This exclusion does not apply to carriers for hire.
   **b.** Breakage, marring, scratching, tearing or denting, unless caused by: fire or lightning; aircraft; theft and/or at-
   tempted theft; earthquake; flood; explosion; malicious damage or collision, derailment or overturn of a transport-
   ing conveyance.
   **c.** Mysterious or unexplained disappearance or from shortage disclosed by taking inventory.
   **d.** Theft from any vehicle, unless at the time of the theft, there is actually in or upon such vehicle your salesperson,
   representative or a permanent employee, or a person whose sole duty it is to attend the vehicle.  This exclusion
   shall not apply to property in the custody of a common carrier.

**3.** In addition to the conditions of this policy, the following conditions apply only this Additional Coverage:
   **a. PAIR OR SET**
   In case of loss of or damage to any part of a pair or set, we may:
      **(1)** Repair or replace any part of the pair or set to restore it to its value before the loss; or
      **(2)** Pay the difference between the actual cash value of the property before and after the loss.
   **b. PARTS**
   In case of loss or damage to any part of property covered, consisting of several parts when complete, we shall
   pay only for the value of the part lost or damaged.

All other policy terms and conditions apply.

54339 (3-13)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BAILEES COVERAGE

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

1. Under **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:
   **Bailees Coverage**
   a. We will pay for direct physical loss or damage to the property of others that:
      (1) Is in your possession or in the possession of any of your employees; or
      (2) Is being transported by you, any of your employees, a public carrier or mail service.
   b. We will also cover your actual incurred cost for labor and materials.
   c. We do not cover the following properties:
      (1) Property held for storage or for which a storage charge is made.  If you do not have instructions from the owner of the goods to store goods held by you, such goods are not considered stored.
      (2) Property while in the possession of any person, company or corporation other than you, your employees, a public carrier or mail service.
      (3) Any land motor vehicle.
      (4) Watercraft.
      (5) Aircraft including objects falling from aircraft.
      (6) Animals, fish, fowl, reptiles or amphibians.
      (7) Accounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities.  Lottery tickets held for sale are not securities.
      (8) Contraband or property in the course of illegal transportation or trade.
   d. In addition to other policy exclusions, we will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
      (1) Misappropriation, secretion, conversion, infidelity or any dishonest act by you or others or the employees or agents of either

to whom the covered property may be entrusted.  This exclusion does not apply to carriers for hire.
      (2) Delay.
      (3) Vandalism or malicious mischief.
      (4) Burglary of property left in your delivery vehicles overnight unless locked and in your building which you occupy.
   e. We will pay no more than the smallest of either:
      (1) The cost to replace damaged property with new property of similar quality and features reduced by the amount of decrease in value because of age, wear, obsolescence or market value applicable to the damaged property immediately prior to the loss; or
      (2) The Limit of Insurance shown in the Declarations for BAILEES COVERAGE.

   This is an additional amount of insurance.

   Our payment for loss of or damage to property of others will only be for the account of the owner of the property.

   f. No deductible applies to this Additional Coverage.

2. The Additional Condition, Coinsurance does not apply to this Additional Coverage.

All other policy terms and conditions apply.

54402 (3-12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA AMENDATORY

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**COMMERCIAL PROPERTY CONDITIONS** is amended as follows:
1.  **A. CONCEALMENT, MISREPRESENTATION OR FRAUD** is deleted and replaced by the following:
    **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
    Any misrepresentations, omissions, concealment of facts, and incorrect statements made by or on behalf of any insured shall not prevent a recovery under this policy unless:
    **1.** Fraudulent;
    **2.** Material either to the acceptance of the risk or to the hazard assumed by us; or
    **3.** We in good faith would either not have issued the policy or would not have issued this policy in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to us as required by the application for this policy.
2.  **G. OTHER INSURANCE** is deleted and replaced by the following:
    **G. OTHER INSURANCE**
    The following conditions supercede any OTHER INSURANCE condition shown in a Commercial Property Coverage Part.
    **1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
    **2.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

All other policy terms and conditions apply.

54189 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REFRIGERATED PRODUCTS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

**1.** Under the BUILDING AND PERSONAL PROPERTY COVERAGE FORM, CONDOMINIUM ASSOCIATION COVERAGE FORM, and the CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM, **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:

**Refrigerated Products**

Subject to **3. Limits of Insurance** below, we shall pay for loss of or damage to "perishable stock" caused directly by any of the following:
**(1)** Mechanical or electrical breakdown of the refrigeration system; or
**(2)** The interruption of electrical services to the refrigeration system caused by direct physical damage to the electrical generating or transmission equipment of your "local utility service" caused by or resulting from any Covered Cause of Loss.

You must exercise diligence in inspecting and maintaining refrigeration equipment.  If interruption of electrical service or mechanical or electrical breakdown is known, you must use all reasonable means to protect the covered property from further damage.

**2.** Under the BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, and the BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM, **A. COVERAGE**, **5. Additional Coverages**, the following Additional Coverage is added:

**Refrigerated Products**

Subject to **3. Limits of Insurance** below, we shall pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur because of loss or damage to "perishable stock" caused directly by any of the following:
**(1)** Mechanical or electrical breakdown of the refrigeration system; or
**(2)** The interruption of electrical services to the refrigeration system caused by direct physical damage to the electrical generating or transmission equipment of your "local utility service" caused by or resulting from any Covered Cause of Loss.

You must exercise diligence in inspecting and maintaining refrigeration equipment.  If interruption of electrical service or mechanical or electrical breakdown is known, you must use all reasonable means to protect the covered property from further damage.

**3.** **Limits of Insurance**
Under:
**a.** BUILDING AND PERSONAL PROPERTY COVERAGE FORM, CONDOMINIUM ASSOCIATION COVERAGE FORM, and CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM, **C. LIMITS OF INSURANCE**; and
**b.** Under BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, and the BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM, **B. LIMITS OF INSURANCE** the following is added:
**Refrigerated Products**
The most we shall pay for the sum of **1.** and **2.** above in any one loss, is the Limit of Insurance

shown in the Declarations for REFRIGERATED PRODUCTS.

**4.** Under the CAUSE OF LOSS - SPECIAL FORM, **B. EXCLUSIONS**:

**a.** Exclusion **1.e. Utility Services** is deleted and replaced by the following exclusion for this Additional Coverage only:

**e.** **Utility Services**

We shall not pay for loss or damage caused by or resulting from the failure to supply "power supply services" from any regional or national grid.

**b.** Exclusion **2.d.(6)** is deleted and replaced by the following exclusion for this Additional Coverage only:

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting loss or damage caused by elevator collision or mechanical breakdown of refrigeration systems.

**5.** **Definitions**

The following definitions apply only to this Additional Coverage:

**a.** "Local utility service" means your billing entity, repair entity or service entity directly providing "power supply services" to the premises described in the Declarations.

**b.** "Perishable stock" means merchandise held in storage or for sale that is refrigerated for preservation and is susceptible to loss or damage if the refrigeration fails.

**c.** "Power supply services" means the following types of property supplying electricity to the described premises that are not located on a described premises and not rented, leased or owned by an insured:

**(1)** Utility generating plants;

**(2)** Switching stations;

**(3)** Substations;

**(4)** Transformers; and

**(5)** Transmission lines.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

54214 (3-13)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VALUABLE PAPERS AND RECORDS
# (OTHER THAN "ELECTRONIC DATA")

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

With respect to coverage provided under this endorsement only, **A. COVERAGE**, is amended as follows:

1. Under **2. Property Not Covered**, **o.** is deleted and replaced by the following:
   **o.**   "Valuable papers and records" except as provided under the Additional Coverage - Valuable Papers and Records (Other Than "Electronic Data").

2. Under **4. Additional Coverages**, the following Additional Coverage is added:
   **Valuable Papers and Records (Other Than "Electronic Data")**
   We cover "valuable papers and records" that:
   **a.**   You own; or
   **b.**   Are owned by others and are in your care, custody or control.

   If duplicates of "valuable papers and records" do not exist, we will pay the cost to research, and replace or restore the lost information.

   This Additional Coverage does not apply to:
   **a.**   "Valuable papers and records" which exist as "electronic data";
   **b.**   Property held as samples or for delivery after sale;
   **c.**   Property in storage away from the premises shown in the Declarations; or
   **d.**   Errors or omissions in processing or copying "valuable papers and records", unless fire or explosion ensues and then only for direct loss caused by such fire or explosion.
   The most we will pay under this Additional Coverage in any one occurrence are the Limits of Insurance shown in the Declarations for:
   **a.**   VALUABLE PAPERS AND RECORDS ON PREMISES; and

   **b.**   VALUABLE PAPERS AND RECORDS OFF PREMISES.
   The Coinsurance Condition does not apply to this Additional Coverage.

   Under **E. LOSS CONDITIONS**, **7. Valuation** does not apply to this endorsement.  The following applies:

   Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information.  To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

   The following additional definitions apply only to this endorsement.
   **a.**   "Valuable Papers and Records" means inscribed, printed or written:
      **(1)**   Documents;
      **(2)**   Manuscripts; and
      **(3)**   Records
      including abstracts, books, deeds, drawings, films, maps or mortgages.  However, "valuable papers and records" does not mean "money" or "securities".
   **b.**   "Money" means:
      **(1)**   Currency, coins and bank notes in current use and having a face value; and
      **(2)**   Travelers checks, register checks and money orders held for sale to the public.
   **c.**   "Securities" means all negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**(1)** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**(2)** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you

but does not include "money".

**3.** Under **5. Coverage Extensions**, **c. Valuable Papers and Records (Other Than "Electronic Data")** is deleted.

All other policy terms and conditions apply.

54214 (3-13)        Includes copyrighted material of ISO Commercial Services, Inc., with its permission.        Page 2 of 2

54217 (3-13)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ELECTRONIC DATA PROCESSING EQUIPMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

Under **A.  COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:

**Electronic Data Processing Equipment**

1. **Covered Property**
   We will pay for:
   a. Direct physical loss of or damage to electronic equipment, component parts of such equipment, "media" and air conditioning equipment necessary for the operation of the electronic equipment:
      (1) Which you own or which is in your care, custody or control; and
      (2) While located at the premises described in the Declarations; and
      (3) Caused by or resulting from any Covered Cause of Loss.
      We do not cover "laptop computers".
   b. Your costs to research, replace or restore "electronic data" contained on damaged "media" because such "electronic data" has been destroyed or corrupted.

2. **Exclusions**
   Under **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM, the following exclusions are added to apply only to this Additional Coverage:
   a. "Electrical disturbance" unless caused by lightning.
   b. Loss or damage caused by:
      (1) Data processing "media" failure; or
      (2) Breakdown or malfunction of the data processing equipment and component parts while the "media" is being run through the system.  We will cover loss, damage or expense caused directly by ensuing fire or explosion.
   c. Actual work upon, installation or testing of Covered Property.  We will cover loss, caused by ensuing fire or explosion.

   d. "Mechanical breakdown".  We will cover loss, damage or expense caused directly by lightning or by ensuing fire or explosion.
   e. Faulty construction or error in design of the Covered Property.  We will cover loss, damage or expense caused directly by ensuing fire or explosion.
   f. Delay or loss of market.

3. **Limit of Insurance**
   a. Our payment for electronic equipment, component parts of such equipment and air conditioning equipment necessary for the operation of such electronic equipment shall not exceed the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.
   b. Our payment for "media" shall not exceed the smallest of the following:
      (1) The actual cost to repair, replace or reproduce the "media", including your costs to research, replace or restore information;
      (2) If the "media" is not repaired, replaced or reproduced, the value of blank "media"; or
      (3) The Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

   The Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT is the total limit of our liability for loss or damage to all Covered Property in any one occurrence at one location.  With respect to Covered Property you do not own, we will pay no more than the amount for which you are legally liable.

   The Additional Condition, Coinsurance, does not apply to this Additional Coverage.

4. **Coverage Extensions**

The following extensions apply only to this endorsement:

**a. Property At Newly Acquired Or Temporary Locations:**

You may extend the coverage provided under **1. Covered Property**, above to apply to property:

**(1)** At any location you acquire; or

**(2)** At any temporary location, other than fairs or exhibitions, you acquire

within the territorial limits and intended for similar occupancy or warehousing purposes for the business described in the Declarations.

The most we will pay for loss or damage under this extension is the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

This coverage extension will end when any of the following first occurs:

**(1)** 60 days from your acquisition or use of such property;

**(2)** On the date values at such locations are reported to us; or

**(3)** On the expiration date of the policy.

**b. Newly Acquired Property:**

You may extend the coverage provided under **1. Covered Property**, above to apply to property which you newly acquire, of the same type as the property covered at the described premises.

The most we will pay for loss or damage under this extension is the Limit of Insurance shown in the Declarations for ELECTRONIC DATA PROCESSING EQUIPMENT.

This coverage extension will end when any of the following first occurs:

**(1)** 60 days from your acquisition or use of such property;

**(2)** On the date values of such property are reported to us; or

**(3)** On the expiration date of the policy.

Each of these extensions is additional insurance.

**5.** The following **Additional Coverages** apply only to this endorsement:

**a. Transportation**

You may apply up to $10,000, for any one occurrence for loss of or damage to property caused by:

**(1)** Fire; lightning; explosion; smoke; riot and civil commotion; and vandalism and malicious mischief;

**(2)** The overturning, upset, or collision of the vehicle transporting the insured property, with another vehicle or object other than the road bed; or

**(3)** Theft of an entire shipping bale, case or package from a vehicle:

**(a)** While such property is in a fully enclosed and securely locked body or compartment; and

**(b)** Theft results from forcible entry, evidenced by visible marks

which occurs during transportation by motor vehicles you own, lease or operate.

We do not cover under this extension property held as samples, held for rental or sale or that you rent to others while in the care, custody or control of salespersons.

**b. Business Income and Extra Expense**

**(1) Business Income**

**(a)** Subject to the Limit of Insurance provisions of this Additional Coverage, we will pay for the actual loss of Business Income you sustain as a direct result of the necessary "suspension" of your "operations" during the "period of restoration" caused by accidental direct physical loss of or damage to:

**1)** The electronic equipment or "media" covered by this Additional Coverage;

**2)** The building housing the electronic equipment or "media" that prevents access to and use of the electronic equipment or "media"; or

**3)** The air conditioning or electrical systems that are required to operate the electronic equipment, provided such damage or destruction is inside the building or outside within 1,000 feet of the building

caused by the perils insured against and subject to **2. Exclusions.**

**(b)** We will also pay expenses you incur to reduce the covered loss. We will not pay for expenses:

**1)** You incur to extinguish a fire; or

**2)** That exceed the amount by which the covered loss is reduced.

**(c)** Business Income means the:

**1)** Net income (Net Profit or Loss before income taxes) that would

have been earned or incurred; and

**2)** Continuing normal operating expenses incurred, including payroll.

**(2) Extra Expense**

**(a)** Subject to the Limit of Insurance provisions of this Additional Coverage, we will pay necessary Extra Expense, other than loss of Business Income, you incur to continue "normal" operations of your business following accidental direct physical loss of or damage to:

**1)** The electronic equipment or "media" covered by this Additional Coverage;

**2)** The building housing the electronic equipment or "media" that prevents access to and use of the equipment or "media"; or

**3)** The air conditioning or electrical systems that are required to operate the electronic equipment, provided such damage or destruction is inside the building or outside within 1,000 feet of the building

caused by the perils insured against and subject to **2. Exclusions**. You must resume normal operation of your business as soon as practical.

**(b)** We will also cover the cost to repair, replace or restore:

**1)** Books of account, abstracts, drawings;

**2)** Card index systems; or

**3)** Other records or data such as film, tape, disks, drum, cell or other magnetic storage or recording "media" for electronic data processing

that have been damaged or destroyed by perils we insure against, if such cost:

**1)** Exceeds the normal cost for such repair, replacement or restoration; and

**2)** Was incurred to reduce loss under this endorsement.

**(c)** Extra Expense means expense incurred:

**1)** To avoid or minimize the "suspension" of business and continue "operations":

**a)** At the described premises; or

**b)** At replacement premises or at temporary locations, including:

**i.** Relocation expenses; and

**ii.** Costs to equip and operate the replacement or temporary locations.

**2)** To minimize the suspension of business if you cannot continue "operations".

**3) a)** To repair or replace any Covered Property; or

**b)** To research, replace or restore the lost information on damaged valuable papers and records

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

**(3) Coverage Extension - Civil Authority**

In this Coverage Extension - Civil Authority, the described premises are premises to which this endorsement applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, you may extend your Business Income and Extra Expense Coverages to apply to the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income and Extra Expense will begin

immediately following the time of the first action of civil authority that prohibits access to the described premises  and will apply for a period of up to four consecutive weeks from the date on which coverage began.

**(4) Exclusions**

The following exclusions apply to Business Income and Extra Expense provided by this Additional Coverage only, in addition to those contained in **2. Exclusions** above.

**(a)** We will not be liable for any increase in loss of Business Income or Extra Expense caused by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

**1)** Enforcement of any ordinance or law regulating construction, repair or demolition of buildings or structures;

**2)** Interference at the described premises by strikers or other persons with:

**a)** Rebuilding, repairing or replacing the property; or

**b)** Resumption or continuation of business; or

**3)** The suspension, lapse, or cancellation of any lease, license, contract or order beyond the "period of restoration".

**(b)** We will not cover loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

**1)** Theft of any property, which is not an integral part of a building or structure at the time of loss. We will cover direct loss that ensues from a peril not excluded in this policy.  We will cover direct loss by pillage and looting which occurs during and at the immediate place of riot or civil commotion.

**2)** Any other consequential or remote loss.

**(5) Limit of Insurance**

**(a)** Business Income

Subject to **(c)** below, we will pay only for loss of your Business

Income that occurs during the "period of restoration", but not exceeding 12 consecutive months after the date of accidental direct physical loss of or damage to Covered Property, resulting from a Covered Cause of Loss.

**(b)** Extra Expense

Subject to **(c)** below, we will pay for necessary Extra Expense during the "period of restoration" starting with the date of damage or destruction. Payments under this coverage shall not be limited by the expiration of the policy.

**(c)** Our total payment for both Business Income and Extra Expense for any one occurrence shall not exceed $100,000.

**(6) Loss Determination**

**(a)** The amount of Business Income loss will be determined based on:

**1)** The Net Income of the business before the direct physical loss or damage occurred;

**2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**4)** Other relevant sources of information, including:

**a)** Your financial records and accounting procedures;

**b)** Bills, invoices and other vouchers; and

**c)** Deeds, liens or contracts.

**(b)** The amount of Extra Expense will be determined based on:

**1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct phys-

ical loss or damage had occurred. We will deduct from the total of such expenses:

  **a)** The salvage value that remains of any property bought for temporary use during the "period of restoration" once "operations" are resumed; and

  **b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

  **2)** All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**(c)** Resumption Of Operations

  **1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

  **2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(d)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(7) Loss Payment - Business Income and Extra Expense**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

**(a)** You have complied with all of the terms of this endorsement; and

**(b) 1)** We have reached agreement with you on the amount of loss; or

  **2)** An appraisal award has been made.

**6. Definitions**

The following definitions apply only to this Additional Coverage:

**a.** "Electrical Disturbance" means electrical or magnetic damage, disturbance or erasure of electronic recordings.

**b.** "Laptop Computer" means portable data collectors, notebook (laptop) computers, subnote book computers, palmtop computers, handheld computers and portable or any similar computer. Laptop computer does not mean cellular phone, wireless phone or pager.

**c.** "Mechanical Breakdown" means component failure or mechanical malfunction, breakdown or failure.

**d.** "Media" means materials on which information is recorded such as film, magnetic tape, paper tape, disks, drums, and cards. Media includes computer software.

**e.** "Normal" means the condition that would have existed had no loss occurred.

**f.** "Operations" means your business activities occurring at the described premises.

**g.** "Period of Restoration" means the period of time that:

  **(1)** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

  **(2)** Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of Restoration" does not include any increased period required due to the enforcement of any law that:

  **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

  **(2)** Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

The expiration date of this policy will not shorten or cause the "period of restoration" to terminate.

**h.** "Suspension" means:

  **(1)** The slowdown or cessation of your business activities; or

  **(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

All other policy terms and conditions apply.

54218 (3-13)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACCOUNTS RECEIVABLE

This endorsement modifies insurance under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

1. Under **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:
   **Accounts Receivable**
   We will pay:
   **a.** All amounts your customers owe you that you cannot collect;
   **b.** Interest charges on loans you secure to offset impaired receipts until we pay these amounts;
   **c.** Collection costs in excess of normal; and
   **d.** Other expenses you reasonably incur to re-establish your records
   which result from direct physical loss of or damage to your records of accounts receivable:
   **i.** caused by or resulting from any Covered Causes Of Loss; and
   **ii.** which occurs on the premises described in the Declarations.

   Our payment for any one loss shall not exceed the Limit of Insurance shown in the Declarations for ACCOUNTS RECEIVABLE.

2. Under **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM, the following exclusions are added to apply only to this Additional Coverage.
   **a.** Bookkeeping, accounting or billing errors or omissions.
   **b.** Falsification, alteration, concealment or destruction of records done to conceal the wrongful giving, taking or withholding of money, securities or other property.  This exclusion applies only to the extent of the wrongful giving, taking or withholding.
   **c.** Electrical or magnetic injury, disturbance or erasure of electronic recordings.  But we do cover direct loss caused by lightning.
   **d.** We will not pay for any loss that relies solely upon an audit of records on an inventory computation to prove its factual existence.

3. In addition to the conditions of this policy, the following conditions apply only to this Additional Coverage:
   **a.** **Protection of Records of Accounts Receivable**
   For coverage to apply under this Additional Coverage, you must keep all records of accounts receivable in a locked safe or vault when:
   **(1)** You are not open for business; or
   **(2)** You are not using such records; or
   **(3)** Such records are not removed from premises as permitted under the Additional Coverage, **Preservation of Property**.
   **b.** The following is added to the Loss Payment Condition:
   **(1)** If you cannot accurately establish the accounts receivable outstanding as of the time of loss or damage, the following method will be used:
   **(a)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(b)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(2)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(a)** The amount of the accounts for which there is no loss or damage;

**(b)** The amount of the accounts that you are able to re-establish or collect;

**(c)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(d)** All unearned interest and service charges.

All other policy terms and conditions apply.

54219 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MONEY AND SECURITIES

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**A.  A. COVERAGE** is amended as follows:

1. Under **2. Property Not Covered**, **a.** is deleted and replaced by the following for this endorsement only:
   a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities.  Lottery tickets held for sale are not securities.
   However, "money" and "securities" are covered as provided by this endorsement.

2. Under **4. Additional Coverages**, the following Additional Coverage is added:
   **Money And Securities**
   **a. Inside The Premises**
   (1) We will pay for loss of "money" and "securities" inside the "premises" or a "banking premises" resulting directly from:
       (a) "Theft"; or
       (b) Disappearance or destruction.
   (2) We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities" if you are the owner of the "premises" or are liable for damage to it.
   (3) We will pay for loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the "premises" resulting directly from an actual or attempted:
       (a) "Theft" of; or
       (b) Unlawful entry into
       those containers.
   **b. Outside The Premises**
   (1) We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company. The loss must result from:
       (a) "Theft"; or

(b) Disappearance or destruction.
(2) Any covered "money" and "securities" loss from an armored motor vehicle company, we will pay only for the amount of loss you cannot recover:
    (a) Under your contract with the armored motor vehicle company; and
    (b) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**B.  EXCLUSIONS**

1. The Covered Causes Of Loss Form shown in the Declarations as applicable to Property, does not apply to this coverage.

2. We will not pay for loss caused by any of the following:
   a. **Accounting Or Arithmetical Errors Or Omissions:**  Loss resulting from accounting or arithmetical errors or omissions.
   b. **Acts Committed By You, Your Partners Or Your Members:**  Loss resulting from any dishonest or criminal act committed by you or any of your partners or members whether acting alone or in collusion with other persons.
   c. **Acts Of Employees, Managers, Directors, Trustees Or Representatives:**  Loss resulting from any dishonest or criminal act committed by any of your "employees", managers, directors, trustees or authorized representatives:
      (1) Acting alone or in collusion with other persons; or
      (2) While performing services for you or otherwise.
   d. **Exchanges Or Purchases:**  Loss resulting from the giving or surrendering of property in any exchange or purchase.
   e. **Fire:**  Loss from damage to the "premises" resulting from fire, however caused.

**f. Governmental Action:** Loss resulting from seizure or destruction of property by order of governmental authority.

**g. Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, "money" or "securities".

**(2)** Payment of damages of any type for which you are legally liable. However, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**h. Legal Expenses:** Expenses related to any legal action.

**i. Nuclear:** Loss resulting  from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**j. War And Military Action:**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**k. Money Operated Devices:** Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**l. Transfer Or Surrender Of Property:**

**(1)** Loss of property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions; or

**(b)** As a result of a threat to do:

**1)** Bodily harm to any person; or

**2)** Damage to any property.

**(2)** However, this exclusion does not apply under **A.2.b.** above to loss of covered

"money" and "securities" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**m. Vandalism:** Loss from damage to the "premises" or its exterior or to containers of covered "money" and "securities" by vandalism or malicious mischief.

**n. Voluntary Parting Of Title To Or Possession Of Property:** Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**C. LIMIT OF INSURANCE**

The most we will pay for loss of "money" and "securities" inside the "premises", and outside the "premises" are the Limits of Insurance shown in the Declarations for MONEY AND SECURITIES.

**D. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations for MONEY AND SECURITIES. We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance.

**E. GENERAL CONDITIONS**

The following Conditions apply in addition to the Common Policy Conditions:

**1. Consolidation - Merger:**  If through consolidation or merger with, or purchase of assets of, some other entity:

**a.** Any additional persons become "employees"; or

**b.** You acquire the use and control of any additional "premises"

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

**a.** Give us written notice within 30 days thereafter; and

**b.** Pay us an additional premium.

**2. Discovery Period For Loss:** We will pay only for covered loss discovered no later than one year from the end of the policy period.

**3. Duties In The Event Of Loss**

**a.** After you discover a loss or a situation that may result in loss of, or loss from damage to, covered "money" or "securities" you must:

**(1)** Notify us as soon as possible.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Give us a detailed, sworn proof of loss within 120 days.

**(4)** Cooperate with us in the investigation and settlement of any claim.

**b.** If you have reason to believe that any loss of or loss from damage to, covered "money" or "securities" involves a violation of law, you must notify the police.

**4. Joint Insured**

**a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

**b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**c.** An "employee" of any Insured is considered to be an " employee" of every Insured.

**d.** If this insurance or any of its coverages are canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**e.** We will not pay more for loss sustained by more than one Insured than the amount we should pay if all the loss had been sustained by one Insured.

**5. Legal Action Against Us:** You may not bring any legal action against us involving loss:

**a.** Unless you have complied with all the terms of this insurance;

**b.** Until 90 days after you have filed proof of loss with us; and

**c.** Unless brought within 2 years from the date you discover the loss.

**6. Loss Covered Under More Than One Coverage Of This Insurance:** If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

**a.** The actual amount of loss; or

**b.** The sum of the limits of insurance applicable to those coverages.

**7. Loss Sustained During Prior Insurance**

**a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that

insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

**(1)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

**b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance and is limited to the lesser of the amount recoverable under:

**(1)** This insurance as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**8. Loss Covered Under This Insurance And Prior Insurance Issued By Us Or Any Affiliate:** If any loss is covered:

**a.** Partly by this insurance; and

**b.** Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

**9. Non-Cumulation Of Limit Of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**10. Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity, but not or more than the Limit of Insurance.

**11. Ownership Of Property; Interests Covered:** The property covered under this insurance is limited to property:

**a.** That you own or hold; or

**b.** For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

**12. Policy Period**

**a.** The Policy Period is shown in the Declarations.

**b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987, 1989

that you sustain through acts committed or events occurring during the Policy Period.

**13. Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

**14. Recoveries**

a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

(2) Then to us, until we are reimbursed for the settlement made; and

(3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

**15. Territory:** This insurance covers only acts committed or events occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**16. Transfer Of Your Rights Of Recovery Against Others To Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**17. Valuation - Settlement**

a. Subject to the Limit of Insurance provision we will pay for:

(1) Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

(a) At face value in the "money" issued by that country; or

(b) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

(2) Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(a) Pay the value of such "securities" or

replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

1) Value of the "securities" at the close of the business on the day the loss was discovered; or

2) Limit of Insurance.

(3) Loss of, or loss from damage to "property other than money and securities" or loss from damage to the "premises" for not more than the:

(a) Actual cash value of the property on the day the loss was discovered;

(b) Cost of repairing the property or "premises"; or

(c) Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

b. We may, at our option, pay for loss of, or loss from damage to, property other than "money":

(1) In the "money" of the country in which the loss occurred; or

(2) In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

c. Any property that we pay for or replace becomes our property.

**F. DEFINITIONS**

**1.** "Banking Premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Employee" means:

a. Any natural person:

(1) While in your service (and for 30 days after termination of service);

(2) Whom you compensate directly by salary, wages or commissions; and

**(3)** Whom you have the right to direct and control while performing services for you; or

**b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding however, any such person while having care and custody of property outside the "premises". However, "employee" does not mean any:

**(1)** Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

**3.** "Messenger" means you, any of your partners or any "employee" while having care and custody of the property outside the "premises".

**4.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**5.** "Occurrence" means an:

**a.** Act or series of related acts involving one or more persons; or

**b.** Act or event, or a series of related acts or events not involving any person.

**6.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**7.** "Property Other Than Money And Securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Coverage Form as Property Not Covered.

**8.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you

but does not include "money".

**9.** "Theft" means any act of stealing.

**10.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

54220 (6-00)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FORGERY OR ALTERATION

This endorsement adds Crime Coverage to the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

### A.  COVERAGE

We will pay for loss involving Covered Instruments resulting directly from the Covered Causes of Loss.

1. **Covered Instruments:**  Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   **a.**  Made or drawn by or drawn upon you;

   **b.**  Made or drawn by one acting as your agent; or

   that are purported to have been so made or drawn.

2. **Covered Cause of Loss:**  Forgery or alteration of, on or in any Covered Instrument.

3. **Coverage Extension**

   **Legal Expenses:**  If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend the suit, we will pay for any reasonably legal expenses that you incur and pay in that defense.  The amount we will pay under this extension is in addition to the Limit of Insurance applicable to this insurance.

### B.  EXCLUSIONS

We will not pay for loss as specified below:

1. **Acts Committed by You or Your Partners:**  Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

2. **Acts of Employees, Directors, or Trustees:**  We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, or trustees:

   **a.**  Whether acting alone or in collusion with other persons; or

   **b.**  Whether while performing services for you or otherwise.

3. **Governmental Action:**  Loss resulting from seizure or destruction or property by order of governmental authority.

4. **Indirect Loss:**  Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

    a.  Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Instruments.

    b.  Payment of damages of any type for which you are legally liable.  But, we will pay compensatory damages arising directly from a loss covered under this insurance.

    c.  Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

5. **Legal Expenses:**  Expenses related to any legal action.

6. **Nuclear:**  Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

7. **War and Similar Actions:**  Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

## C.  LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the Limit of Insurance shown in the Declarations for FORGERY AND ALTERATION.

## D.  DEDUCTIBLE

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations for FORGERY AND ALTERATION.  We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance.  This provision does not apply to legal expenses paid under the Coverage Extension.

## E.  GENERAL CONDITIONS

1. **Consolidation - Merger:**  If through consolidation or merger with, or purchase of assets of, some other entity:

    a.  Any additional persons become "employees"; or

    b.  You acquire the use and control of any additional "premises";

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

    a.  Give us written notice within 30 days thereafter; and

    b.  Pay us an additional premium.

2. **Discovery Period for Loss:**  We will pay only for covered loss discovered no later than one year from the end of the policy period.

3. **Duties in the Event of Loss:**  After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Instruments you must:

    a.  Notify us as soon as possible.

    **b.** Submit to examination under oath at our request and give us a signed statement of your answers.

    **c.** Give us a detailed, sworn proof of loss within 120 days.

    **d.** Cooperate with us in the investigation and settlement of any claim.

**4. Joint Insured**

    **a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

    **b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

    **c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

    **d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

    **e.** We will not pay more for loss sustained by more than one Insured than the amount we should pay if all the loss had been sustained by one Insured.

**5. Legal Action Against Us:** You may not bring any legal action against us involving loss:

    **a.** Unless you have complied with all the terms of this insurance;

    **b.** Until 90 days after you have filed proof of loss with us; and

    **c.** Unless brought within 2 years from the date you discover the loss.

**6. Loss Covered Under More Than One Coverage of This Insurance:** If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

    **a.** The actual amount of loss; or

    **b.** The sum of the limits of insurance applicable to those coverages.

**7. Loss Sustained During Prior Insurance**

    **a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

        **(1)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

        **(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

    **b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance and is limited to the lesser of the amount recoverable under:

        **(1)** This insurance as of its effective date; or

(2)  The prior insurance had it remained in effect.

**8.  Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate:**  If any loss is covered:

   **a.**  Partly by this insurance; and

   **b.**  Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

**9.  Non-Cumulation of Limit of Insurance:**  Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**10. Other Insurance:**  This insurance does not apply to loss recoverable or recovered under other insurance or indemnity.  However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity, but not or more than the Limit of Insurance.

**11. Ownership of Property; Interests Covered:**  The property covered under this insurance is limited to property:

   **a.**  That you own or hold; or

   **b.**  For which you are legally liable.

However, this insurance is for your benefit only.  It provides no rights or benefits to any other person or organization.

**12. Policy Period**

   **a.**  The Policy Period is shown in the Declarations.

   **b.**  Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**13. Records:**  You must keep records of all Covered Instruments so we can verify the amount of any loss.

**14. Recoveries**

   **a.**  Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

   **(1)**  To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any:

   **(2)**  Then to us, until we are reimbursed for the settlement made;

   **(3)**  Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

   **b.**  Recoveries do not include any recovery:

   **(1)**  From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

      **(2)** Of original "securities" after duplicates of them have been issued.

**15. Territory:**  This insurance covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico, Canal Zone or Canada.

**16. Transfer of Your Rights of Recovery Against Others to Us:**  You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled.  You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**17. Valuation - Settlement**

    **a.**  Subject to the Limit of Insurance provision we will pay for:

      **(1)** Loss of "money" but only up to and including its face value.  We may, at our option, pay for loss of "money" issued by any country other than the United States of America;

        **(a)** At face value in the "money" issued by that country; or

        **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

      **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered.  We may, at our option:

        **(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

        **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities".  However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

          **i.** Value of the "securities" at the close of the business on the day the loss was discovered; or

          **ii.** Limit of Insurance.

      **(3)** Loss of, or loss from damage to "property other than money and securities" or loss from damage to the "premises" for not more than the:

        **(a)** Actual cash value of the property on the day the loss was discovered;

        **(b)** Cost of repairing the property or "premises"; or

        **(c)** Cost of replacing the property with property of like kind and quality.

      We may, at our option, pay the actual cash value of the property or repair or replace it.

      If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

    **b.**  We may, at our option, pay for loss of, or loss from damage to, property other than "money:"

      **(1)** In the "money" of the country in which the loss occurred; or

      **(2)** In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984, 1987

    **c.** Any property that we pay for or replace becomes our property.

**18. Facsimile Signatures:** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**19. Proof of Loss:** You must include with your proof of loss any instrument involved in that loss, or if that is not possible, an affidavit setting forth the amount and cause of loss.

## F.   DEFINITIONS

**1.** **"Employee"** means:

    **a.** Any natural person:

        **(1)** While in your service (and for 30 days after termination of service);

        **(2)** Whom you compensate directly by salary, wages or commissions; and

        **(3)** Whom you have the right to direct and control while performing services for you; or

    **b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding however, any such person while having care and custody of property outside the "premises".

    But "employee" does not mean any:

        **(1)** Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

        **(2)** Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

**2.** **"Money"** means:

    **a.** Currency, coins and bank notes in current use and having a face value; and

    **b.** Travelers checks, register checks and money orders held for sale to the public.

**3.** **"Occurrence"** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

**4.** **"Property Other Than Money and Securities"** means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Coverage Form and Property Not Covered.

**5.** **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

54220 (6-00)                    Copyright, ISO Commercial Risk Services, Inc., 1984, 1987                    Page 6 of 6

Agency Code    18-0067-00                                    Policy Number    114618-80881833

54221 (12-10)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE DISHONESTY

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**A.** **A. COVERAGE** is amended as follows:
We will pay for loss involving Covered Property resulting directly from the Covered Cause of Loss.

1. **Covered Property** for this endorsement means "money", "securities", and "property other than money and securities".

2. **Covered Cause of Loss** means "Employee Dishonesty".

3. **Coverage Extension**
**Employee Temporarily Outside Coverage Territory:**   We will pay for loss caused by any "employee" while temporarily outside the territory specified in **E. GENERAL CONDITIONS, 15. Territory** for a period not more than 90 days.  The amount we pay under this Extension is part of, not in addition to, the Limit of Insurance shown in the Declarations for EMPLOYEE DISHONESTY.

4. "Money" and "securities" as defined in this endorsement are withdrawn from **2. Property Not Covered**.

**B.** **EXCLUSIONS**

1. The Covered Causes Of Loss Form shown in the Declarations as applicable to Property, does not apply to this Coverage.

2. We will not pay for loss caused by any of the following:

   a. **Acts Committed By You, Your Partners Or Your Members:**  Loss resulting from any dishonest or criminal act committed by you, any of your partners or members whether acting alone or in collusion with other persons.

   b. **Governmental Action:**  Loss resulting from seizure or destruction of property by order of governmental authority.

   c. **Indirect Loss:**  Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

   (1) Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

   (2) Payment of damages of any type for which you are legally liable.  However, we will pay compensatory damages arising directly from a loss covered under this insurance.

   (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

   d. **Legal Expenses:**  Expenses related to any legal action.

   e. **Nuclear:**  Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

   f. **War And Military Action:**
   Loss or damage resulting from:

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

   g. **Employee Canceled Under Prior Insurance:**  Loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation.

   h. **Inventory Shortages:**  Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

Case 1:21-cv-00707-JPB   Document 1-1   Filed 02/18/21   Page 80 of 239

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

## C. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the Limit of Insurance shown in the Declarations for EMPLOYEE DISHONESTY.

## D. DEDUCTIBLE

**1.** We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations for EMPLOYEE DISHONESTY. We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance. This provision does not apply to legal expenses paid under the Coverage Extension.

**2.** You must:

**a.** Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount.

**b.** Upon our request, give us a statement describing the loss.

## E. GENERAL CONDITIONS

**1. Consolidation - Merger:**  If through consolidation or merger with, or purchase of assets of, some other entity:

**a.** Any additional persons become "employees"; or

**b.** You acquire the use and control of any additional "premises"

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

**a.** Give us written notice within 30 days thereafter; and

**b.** Pay us an additional premium.

**2. Discovery Period For Loss:**  We will pay only for covered loss discovered no later than one year from the end of the policy period.

**3. Duties In The Event Of Loss:**  After you discover a loss or a situation that may result in loss of, or loss from damage to Covered Property, you must:

**a.** Notify us as soon as possible.

**b.** Submit to examination under oath at our request and give us a signed statement of your answers.

**c.** Give us a detailed, sworn proof of loss within 120 days.

**d.** Cooperate with us in the investigation and settlement of any claim.

**4. Joint Insured**

**a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named

Insured ceases to be covered, then the next named Insured will become the first named Insured.

**b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

**d.** If this insurance or any of its coverages are canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**5. Legal Action Against Us:**  You may not bring any legal action against us involving loss:

**a.** Unless you have complied with all the terms of this insurance;

**b.** Until 90 days after you have filed proof of loss with us; and

**c.** Unless brought within 2 years from the date you discover the loss.

**6. Loss Covered Under More Than One Coverage Of This Insurance:**  If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

**a.** The actual amount of loss; or

**b.** The sum of the limits of insurance applicable to those coverages.

**7. Loss Sustained During Prior Insurance**

**a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

**(1)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

**b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance and is limited to the lesser of the amount recoverable under:

**(1)** This insurance as of its effective date; or

**(2)** The prior insurance had it remained in effect.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

**8. Loss Covered Under This Insurance And Prior Insurance Issued By Us Or Any Affiliate:** If any loss is covered:
   **a.** Partly by this insurance; and
   **b.** Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

**9. Non-Cumulation Of Limit Of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**10. Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity, but not for more than the Limit of Insurance.

**11. Ownership Of Property; Interests Covered:** The property covered under this insurance is limited to property:
   **a.** That you own or hold; or
   **b.** For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

**12. Policy Period**
   **a.** The Policy Period is shown in the Declarations.
   **b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**13. Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

**14. Recoveries**
   **a.** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:
      **(1)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;
      **(2)** Then to us, until we are reimbursed for the settlement made; and

      **(3)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.
   **b.** Recoveries do not include any recovery:
      **(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or
      **(2)** Of original "securities" after duplicates of them have been issued.

**15. Territory:** This insurance covers only acts committed or events occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**16. Transfer Of Your Rights Of Recovery Against Others To Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**17. Valuation - Settlement**
   **a.** Subject to the Limit of Insurance provision we will pay for:
      **(1)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:
         **(a)** At face value in the "money" issued by that country; or
         **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.
      **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:
         **(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or
         **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:
            **1)** Value of the "securities" at the close of the business on the day

the loss was discovered; or

    **2)**  Limit of Insurance.

**(3)**  Loss of, or loss from damage to "property other than money and securities" or loss from damage to the "premises" for not more than the:

**(a)**  Actual cash value of the property on the day the loss was discovered;

**(b)**  Cost of repairing the property or "premises"; or

**(c)**  Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

**b.**  We may, at our option, pay for loss of, or loss from damage to, property other than "money":

**(1)**  In the "money" of the country in which the loss occurred; or

**(2)**  In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

**c.**  Any property that we pay for or replace becomes our property.

**18. Cancellation As To Any Employee:**  This insurance is canceled as to any "Employee":

**a.**  Immediately upon discovery by:

**(1)**  You; or

**(2)**  Any of your partners, officers or directors not in collusion with the "employee"

of any dishonest act committed by that "employee" whether before or after becoming employed by you.

**b.**  On the date specified in a notice mailed to you.  That date will be at least 30 days after the date of mailing.  The notice will be mailed to you at your last mailing address known to us.

**F.  DEFINITIONS**

**1.**  "Employee"  means:

**a.**  Any natural person:

**(1)**  While in your service (and for 30 days after termination of service);

**(2)**  Whom you compensate directly by salary, wages or commissions; and

**(3)**  Whom you have the right to direct and control while performing services for you; or

**b.**  Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding however, any such person while having care and custody of property outside the "premises". However, "employee" does not mean any:

**(1)**  Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)**  Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

**2.**  "Employee Dishonesty" in paragraph **A.2.** means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

**a.**  Cause you to sustain loss; and also

**b.**  Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

**(1)**  The "employee"; or

**(2)**  Any person or organization intended by the "employee" to receive that benefit.

**3.**  "Money"  means:

**a.**  Currency, coins and bank notes in current use and having a face value; and

**b.**  Travelers checks, register checks and money orders held for sale to the public.

**4.**  "Occurrence" means all loss caused by, or involving one or more "employees", whether the result of a single act or series of acts.

**5.**  "Property Other Than Money And Securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Coverage Form as Property Not Covered.

**6.**  "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.**  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.**  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you

but does not include "money".

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

54334 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTILITY SERVICES FAILURE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

**A. A. COVERAGE** is amended as follows:

1. Under BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, CONDOMINIUM ASSOCIATION COVERAGE FORM AND CON-DOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM, **4. Additional Coverages**, the following is added:

   **Utility Services Failure**

   We shall pay for loss or damage to Covered Property due to the interruption of utility service(s) to the premises described in the Declarations. The interruption must result from direct physical damage by a Covered Cause of Loss to the property of your "local utility service".

2. Under BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM and BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM, **5. Additional Coverages**, the following is added:

   **Utility Services Failure**

   We shall pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to the interruption of utility service(s) to the premises described in the Declarations. The interruption must result from direct physical damage by a Covered Cause of Loss to the property of your "local utility service".

**B. Limits of Insurance**

The most we shall pay for the sum of **A.1.** and **2.** above, in any one loss, is the Limit of Insurance shown in the Declarations for UTILITY SERVICES FAILURE.

**C. Exclusions**

The following exclusions apply only to this endorsement:

1. **Perishable Stock**

   We will not pay for loss or damage to "perishable stock".

2. **Power or Other Utility Grid Failure**

   Under CAUSES OF LOSS - SPECIAL FORM, B. EXCLUSIONS, exclusion **1.e. Utility Services** is deleted and replaced by the following:

   e. **Utility Services**

   We shall not pay for loss or damage caused by or resulting from the failure to supply "communication supply services", "power supply services" or "water supply services" from any regional or national grid.

**D. Definitions**

1. Under BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, **F. DEFINITIONS**, and BUSINESS INCOME (AND EXTRA EXPENSE) ACTUAL LOSS SUSTAINED COVERAGE FORM, **D. DEFINITIONS, 4.** "Period of restoration" is deleted and replaced by the following with respect to the coverage provided by this endorsement only:

   4. "Period of restoration" means period of time that:

      a. Begins immediately following the time of the interruption of utility service(s) to premises described in the Declarations caused by or resulting from direct physical loss or damage by a Covered Cause of Loss to the property of your "local utility service"; and

      b. Ends on the date when the interruption of utility service to the premises described in the Declarations is restored.

      "Period of restoration" does not mean any increased period required due to the enforcement of any ordinance or law that:

      a. Regulates the construction, use or repair, or requires the tearing down of any property; or

      b. Regulates the prevention, control, re-

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.

pair, clean-up or restoration of environmental damage.

The expiration date of this policy will not shorten or cause the "period of restoration" to terminate.

2. The following definitions apply only to this Additional Coverage:

a. "Communication Supply Services" meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, that are not located on a described premises and not rented, leased or owned by any insured, such as:

   (1) Communication transmission lines, in-, cluding optic fiber transmission lines;
   (2) Coaxial cables; and
   (3) Microwave radio relays, except satellites.

b. "Local Utility Service" means your billing entity, repair entity or service entity directly supplying your "communication supply services", "power supply services" or "water supply services" to the premises described in the Declarations.

c. "Perishable Stock" means merchandise held in storage or for sale that is refrigerated for preservation and is susceptible to loss or damage if the refrigeration fails.

d. "Power Supply Services" meaning the following types of property supplying electricity, steam or gas to the described premises, that are not located on a described premises and not rented, leased or owned by any insured:

   (1) Utility generating plants;
   (2) Switching stations;
   (3) Substations;
   (4) Transformers; and
   (5) Transmission lines.

e. "Water Supply Services" mean the following types of property supplying water to the described premises, that are not located on a described premises and not rented, leased or owned by any insured:

   (1) Pumping stations; and
   (2) Water mains.

All other policy terms and conditions apply.

Includes copyrighted material of ISO Commercial Services, Inc., with its permission.
Copyright, ISO Commercial Risk Office, Inc., 1983, 1990, 2007

54338 (3-13)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FINE ARTS, COLLECTIBLES AND MEMORABILIA

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

**A.** Under **A. COVERAGE**, **4. Additional Coverages**, the following Additional Coverage is added:
**Fine Arts, Collectibles and Memorabilia**
  **1. Coverage**
  We will pay for direct physical loss or damage to "fine arts", "collectibles" and "memorabilia" that are:
    **a.** Located at the premises described in the Declarations;
    **b.** Not held for sale; and
    **c.** Owned by:
      **(1)** You; or
      **(2)** If you are:
        **(a)** An individual, your spouse.
        **(b)** A partnership or a joint venture, your members, your partners and their spouses.
        **(c)** A limited liability company, your members.
        **(d)** An organization other than a partnership, joint venture or limited liability company, your "executive officers".
        **(e)** A trust, your trustees.
  **2. Exclusions**
  Under **B. EXCLUSIONS** of the CAUSES OF LOSS - SPECIAL FORM, the following exclusions are added to apply only to this Additional Coverage.
    **a.** An action committed by you or at your direction with the intent to cause loss or damage.
    **b.** Damage caused by any repairing, restoration or retouching process.
    **c.** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains and similar fragile articles unless caused by:
      **(1)** Fire or lightning;
      **(2)** Aircraft;

      **(3)** Theft or attempted theft;
      **(4)** Earthquake;
      **(5)** Flood or storm surge;
      **(6)** Malicious damage; or
      **(7)** Collision, derailment or overturn of conveyance
      except as we may state otherwise.
    **d.** Mysterious disappearance unless the loss is a direct result of forcible entry of which there is visible evidence.
    **e.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.
  **3. Limit Of Insurance**
  We will pay no more than the smallest of either:
    **a.** The cost to replace damaged property with new property of similar quality and features reduced by the amount of decrease in value because of age, wear, obsolescence or market value applicable to the damaged property immediately prior to the loss; or
    **b.** The limits shown in the Declarations for FINE ARTS, COLLECTIBLES AND MEMORABILIA.
  In no event shall our payment for all items in any one loss exceed the limits shown in the Declarations for FINE ARTS, COLLECTIBLES AND MEMORABILIA.
  Our payment for loss of or damage to "fine arts", "collectibles", and "memorabilia" will only be for the account of the owner of the property.
  This is an additional amount of insurance.
  **4. Deductible**
  No deductible applies to this Additional Coverage.
  **5. Conditions**
    **a.** In case of loss of or damage to any part of a pair or set, we may:

**(1)** Repair or replace any part of the pair or set to restore it to its value before the loss; or

**(2)** Pay the difference between the actual cash value of the property before and after the loss.

**b.** In case of loss or damage to any part of property covered, consisting of several parts when complete, we shall pay only for the value of the part lost or damaged.

**c.** In the event of loss or damage to property covered, claim payment is subject to the insurable interest of the covered insured.

**B.** Under **F. ADDITIONAL CONDITIONS**, **Coinsurance**, does not apply to this coverage.

**C.** Under **C. LIMITATIONS** of CAUSES OF LOSS - SPECIAL FORM, paragraph **2.b.** does not apply to this Additional Coverage.

**D.** The following **Definitions** apply to this Additional Coverage only:

**1.** "Fine arts" mean paintings, etchings, pictures, tapestries, art glass windows and other bona fide works of art of rarity, historical value or artistic merit.

**2.** "Collectibles" mean objects collected as a hobby, for display or as an investment whose value may appreciate.

**3.** "Memorabilia" means objects valued for their connection to historical events, culture, entertainment or experiences worthy of remembrance.

**4.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

All other policy terms and conditions apply.

54843 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS - BASIC FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - SPECIAL FORM

1. The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is amended as follows:

   a. Under **A. COVERAGE**, the following is added: We will pay for "Equipment Breakdown" in any one occurrence at any one location where "Equipment Breakdown" is shown in the Declarations. The most we will pay for "Equipment Breakdown" is shown in the Declarations and is subject to the Limits of Insurance Section of this endorsement.

   b. Under **A. COVERAGE**, **4. Additional Coverages** is amended as follows:
      (1) **d. Pollutant Clean-up And Removal** is deleted and replaced by the following as it applies to this endorsement only:

         **d. Pollutant Clean-up And Removal**

         We will pay for the pollutant clean-up, removal, repair or replacement of damaged Covered Property resulting from an "Equipment Breakdown". The amount we pay is subject to the Limits of Insurance Section.

         This coverage does not include contamination of perishable stock by a refrigerant.

      (2) **e. Electronic Data** is deleted and replaced by the following for this endorsement only:
         **e. Electronic Data Restoration**
         (1) We will pay for your reasonable and necessary cost to research, replace or restore "electronic data" which has been destroyed or corrupted as a result of "Equipment Breakdown". To the extent that "electronic data"

   is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.
         (2) The term "electronic data" has the meaning set forth in the DEFINITIONS Section of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.
         (3) The amount we pay is subject to the Limits of Insurance Section.
      (3) The following **Additional Coverages** are added:
         (a) **Expediting Expenses**

            We will pay for the expediting expense loss resulting from an "Equipment Breakdown" with respect to your damaged Covered Property. We will pay the "reasonable extra cost" to:
            1) Make temporary repairs;
            2) Expedite permanent repairs; or
            3) Expedite permanent replacement.

            "Reasonable extra cost" shall mean "the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation". The amount we pay is subject to the Limits of Insurance Section.

         (b) **Refrigerant Contamination**

            We will pay for loss to your Covered Property that is damaged by contami-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 1988, 1990

nation by a refrigerant used in the refrigerating, cooling or humidity control equipment at the described premises as a result of an "Equipment Breakdown". The amount we pay is subject to the Limits of Insurance Section.

**(c) Spoilage Coverage**

We will pay for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an "Equipment Breakdown" to types of property covered by this policy, that are:

1) Located on or within 1,000 feet of your described premises; and

2) Owned by you, the building owner (if you are a tenant), or owned by a public utility, or other supplier with whom you have a contract to supply you with any of the following services:  electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission.

However, we will not pay for any physical loss or damage caused by or resulting from any of the causes of loss listed below, unless loss or damage not otherwise excluded results, then we will pay for such resulting damage:

1) Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement; or

2) Flood, unless an "Equipment Breakdown" ensues.

Our payment will be based upon the actual replacement cost of the perishable goods at the time of loss.  The amount we pay is subject to the Limits of Insurance Section.

**(d) CFC Refrigerants**

We will pay for the "additional costs" to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances.

"Additional costs" mean those in excess of what would have been required to repair or replace Covered Property, had no CFC refrigerant been involved. We will also pay for additional loss as described under Spoilage Coverage or loss of Business Income Coverage provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

We will pay no more than the least of the following:

1) The cost to repair the damaged property and replace any lost CFC refrigerant;

2) The cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerant; or

3) The cost to replace the system with one using a non-CFC refrigerant.

The amount we pay is subject to the Limits of Insurance Section.

**(e) Computer Equipment**

We will pay for direct physical loss or damage to your computers as a result of an "Equipment Breakdown".  The amount we pay is subject to the Limits of Insurance Section.

**(f) Business Interruption, Extra Expense and Service Interruption**

Any insurance provided for Business Income or Extra Expense is extended to apply to your loss, damage or expense caused by an "Equipment Breakdown" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services:  electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet ac-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Agency Code   18-0067-00                                                    Policy Number   114618-80881833

cess, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "Equipment Breakdown" except that it is not Covered Property.

We will pay:

**1)** Your actual loss sustained from a total or partial interruption of business; and

**2)** The reasonable extra expense you sustain to run your business during the interruption, caused solely by an "Equipment Breakdown", including an "Equipment Breakdown" to any transformer, electrical apparatus, or any covered equipment that is:

**a)** Located on or within 1,000 feet of your described premises;

**b)** Owned by you, the building owner (if you are a tenant), or owned by a public utility company; and

**c)** Used to supply electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission.

The amount we pay is subject to the Limits of Insurance Section.

**(4)** The following is added to **5. Coverage Extensions**:

**Replacement Cost Coverage**

We will pay you the amount you actually spend to repair or replace your damaged property with new property of like kind, capacity, size and quality, whichever is less except for the following:

If any damaged property is not repaired or replaced, then we will pay only the actual cash value at the time of the "Equipment Breakdown".

**c.** The following provision is added to **B. EXCLUSIONS AND LIMITATIONS** as it applies to this endorsement only:

Under Business Interruption, Extra Expense and Service Interruption, we will not pay for:

**(1)** The interruption of business that would not or could not have been carried on if the "Equipment Breakdown" had not occurred;

**(2)** Your failure to use due diligence and dispatch and all reasonable means to resume business at the location(s) shown on the Declarations page; or

**(3)** The part of any loss or expense that is due solely to the suspension, lapse or cancellation of a contract following an "Equipment Breakdown" extending beyond the time business would have resumed if the contract had not lapsed, been suspended or canceled.

**d.** **C. LIMITS OF INSURANCE** is deleted and replaced by the following for this endorsement only:

**C.   LIMITS OF INSURANCE**

**(1)** The most we will pay for "Equipment Breakdown" for one or more coverages in any one occurrence at any one location is the amount equal to the "total insured value" at each location where "Equipment Breakdown" is shown in the Declarations. This provision does not apply to paragraph **(4)** below.

**(2)** The limit of insurance for **Pollutant Clean-up And Removal**, **Electronic Data Restoration**, **Refrigerant Contamination** and **Spoilage Coverage** are not additional Limits of Insurance, but are included in the "total insured value". We will pay the lesser of "total insured value" or:

**(a)** For Pollutant Clean-up And Removal, the greater of $25,000 or the limit shown in the Declarations for Pollutant Clean-up And Removal or the limit shown in an endorsement that is attached to the property form;

**(b)** For Electronic Data Restoration, up to $25,000 for loss, damage or expense including actual loss of Business Income you sustain and necessary Extra Expense you incur;

**(c)** For Refrigerant Contamination, up to $750,000 for loss or damage; and

**(d)** For Spoilage Coverage, up to $750,000 for loss or damage.

**(3)** In no event will we pay more than the "total insured value" for each location where "Equipment Breakdown" is shown in the Declarations.

**(4)** As regards Business Interruption, Extra Expense and Service Interruption, our limit of liability for any one "Equipment Breakdown" is equal to twelve (12) consecutive months of actual loss sustained for a total or partial interruption of your business. The twelve (12) consecutive months begin on the date of the "Equipment Breakdown".

**e.** The following conditions are added to **F. ADDITIONAL CONDITIONS**, as they apply to this endorsement only:

**(1) Suspension**

Whenever Covered Property is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss to that Covered Property for the perils covered by this endorsement. Coverage can be suspended and possibly reinstated by delivering or mailing a written notice of suspension or coverage reinstatement to:

**(a)** Your last known address; or

**(b)** The address where the property is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**(2) Jurisdictional Inspections**

If any Covered Property under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**(3) Environmental, Safety and Efficiency Improvements**

If Covered Property requires replacement due to an "Equipment Breakdown", we will pay your additional cost to replace with equipment that is better for the environment,

safer, or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not apply to any property to which Actual Cash Value applies.

**(4) Green Environmental and Efficiency Improvements**

If Covered Property requires repair or replacement due to an "Equipment Breakdown", we will pay:

**a.** The lesser of the reasonable and necessary additional cost incurred by you to repair or replace physically damaged Covered Property with equipment of like kind and quality which qualifies as "Green". Like kind and quality includes similar size and capacity.

**b.** The additional reasonable and necessary fees incurred by you for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged Covered Property as "Green".

**c.** The additional reasonable and necessary cost incurred by you for certification or recertification of the repaired or replaced Covered Property as "Green".

**d.** The additional reasonable and necessary cost incurred by you for "Green" in the removal, disposal or recycling of damaged Covered Property.

**e.** The business interruption (if covered within the policy to which this Equipment Breakdown Endorsement is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "Green", in the coverage above.

We will not pay more than 125%, up to a maximum limit of $100,000, of what the cost would have been to repair or replace with equipment of like kind and quality inclusive of fees, costs and any business interruption loss incurred as stated above.

**Green Environmental and Efficiency Improvements** does not cover any of the following:

a. Covered Property does not include stock, raw materials, finished goods, "production machinery", merchandise, electronic data processing equipment not used in the functional support of the real property, process water, molds and dies, property in the open, property of others for which you are legally liable, or personal property of others.

b. Any loss adjusted on any valuation basis other than a repair or replacement cost basis as per E. LOSS CONDITIONS, **4. Loss Payment**.

c. Any loss covered under any other Section of this policy.

d. Any cost incurred due to any law or ordinance with which you were legally obligated to comply with prior to the time of the "Equipment Breakdown".

**(5) Other Insurance Issued By Us**

If this policy provides coverage for Data Processing Equipment Coverages, Electronic Data Processing Equipment, Refrigerated Products or Mechanical Breakdown where two or more of this policy's coverages apply to the same loss or damage, the Coverage of this endorsement shall supercede any coverages provided outside of this Equipment Breakdown Endorsement for the loss or damage that arises out of an "Equipment Breakdown" loss.

This Condition supercedes any similar Condition when provided by us in this policy.

**2. B. EXCLUSIONS** of the **CAUSES OF LOSS FORMS** are amended as follows:

a. Under **CAUSES OF LOSS - BASIC FORM** and **CAUSES OF LOSS - BROAD FORM**, the following exclusions are deleted as they apply to this endorsement only:

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for the loss or damage caused by that fire.

Mechanical breakdown, including rupture or bursting caused by centrifugal force.  However, if mechanical breakdown results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.

b. Under **CAUSES OF LOSS - SPECIAL FORM**, the following exclusions are deleted as they apply to this endorsement only:

a. Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for the loss or damage caused by that fire.

Mechanical breakdown, including rupture or bursting caused by centrifugal force.  However, if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.  However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.  We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**c.** Under **CAUSES OF LOSS - SPECIAL FORM, C.  LIMITATIONS**, the following limitations are deleted as they apply to this endorsement only:

**(1)** Steam boilers, steam pipes, steam engines, or steam turbines caused by or resulting from any condition or event inside such equipment.  However, we will pay for loss or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than any explosion.

**3.** **DEFINITIONS** are amended as follows as they apply to this endorsement only:

**a.** The **CAUSES OF LOSS - SPECIAL FORM**, "Specified Causes of Loss" is amended to include "Equipment Breakdown".

**b.** Under **CAUSES OF LOSS - SPECIAL FORM, CAUSES OF LOSS - BASIC FORM** and **CAUSES OF LOSS - BROAD FORM**, the following definitions are added:

"Equipment Breakdown" means:
**(1)** Physical loss or damage both originating within:
**(a)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:
1) waste disposal piping;
2) any piping forming part of a fire protective system;
3) furnaces; and

4) any water piping other than:
a) boiler feed water piping between the feed pump and the boiler;
b) boiler condensate return piping; or
c) water piping forming part of a refrigerating or air conditioning system.
**(b)** All mechanical, electrical, electronic or fiber optic equipment; and
**(2)** Caused by, resulting from, or consisting of:
**(a)** Mechanical breakdown;
**(b)** Electrical or electronic breakdown; or
**(c)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "Equipment Breakdown" does not mean:

Physical loss or damage caused by or resulting from any of the following; however, if loss or damage not otherwise excluded results, then we will pay for such resulting damage:
**(a)** Wear and tear;
**(b)** Rust or other corrosion, decay, deterioration, hidden or latent defect, "fungi", wet rot, dry rot, virus, bacteria or any other quality in property that causes it to damage or destroy itself;
**(c)** Smog;
**(d)** Settling, cracking, shrinking or expansion;
**(e)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;
**(f)** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software;
**(g)** Scratching or marring; and
**(h)** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:
1) Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2)**  Flood, unless an "Equipment Break-
down" ensues.

"Total insured value" means:

The sum of the limits for the following coverages
if shown at the location where "Equipment
Breakdown" is shown in the Declarations:
**(1)**  Building;
**(2)**  Business Personal Property;
**(3)**  Stock;
**(4)**  Personal Property of Others;
**(5)**  Tenants Improvements and Betterments;
**(6)**  Improvements and Alterations;
**(7)**  Furniture;
**(8)**  Fixtures;
**(9)**  Machinery and Equipment;
**(10)**  Personal Property in the Open;
**(11)**  Legal Liability Real Property;
**(12)**  Business Income and Extra Expense
(when Business Income and Extra Ex-
pense - Actual Loss Sustained is shown in
the Declarations, Business Income and
Extra Expense applies at 25% of the sum
of the building and business personal
property limits at that location);

**(13)**  Business Income (Without Extra Expense);
**(14)**  Extra Expense; and
**(15)**  Any other property described.

"Green" means products, materials, methods
and processes certified by a "Green Authority"
that conserve natural resources, reduce energy
or water consumption, avoid toxic or other pol-
luting emissions or otherwise minimize environ-
mental impact.

"Green Authority" means an authority on
"Green" buildings, products, materials, methods
or processes certified and accepted by Leader-
ship in Energy and Environmental Design
(LEED®), "Green" Building Initiative Green
Globes®, Energy Star Rating System or any
other recognized "Green" rating system.

"Production machinery" means any machine
which processes, forms, shapes or transports
raw  materials, materials in process, waste
materials or finished products.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright ISO Properties, Inc., 1988, 1990

64013 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION - SPECIALTY GLASS

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS - SPECIAL FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - BASIC FORM

**A.** Under **LIMITATIONS** in Causes of Loss - Special Form and **LIMITATION** in Causes of Loss - Broad Form and Basic Form, the following limitation is added:
We will not pay more than $500 in any one occurrence for direct physical loss of or damage to "specialty glass" at the premises described in the Declarations regardless of the number of panes, plates or similar units of glass.  Subject to this aggregate, we will not pay more than $100 for any one pane, plate, multiple plate insulating unit, jalousie, louver or shutter.

This limitation does not apply to loss or damage by the "specified causes of loss", except vandalism.

**B.** Under **DEFINITIONS**, the following definition is added:
"Specialty glass" means art glass, etched glass, half tone screens, memorial windows, mosaic art, rotogravure screens, stained glass or stained glass in leaded sections.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994, 2007

64013 (12-10)

Page 1 of 1

64021 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The following exclusion and related provisions are added to Paragraph **B.2. EXCLUSIONS** in the Causes Of Loss Forms and to any Coverage Form or policy to which a Causes Of Loss Form is not attached:

**1.** We will not pay for loss or damage arising out of any act committed:

**a.** By or at the direction of any insured; and

**b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

**a.** Is otherwise covered under this Coverage Part; and

**b.** Arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

**3.** If we pay a claim pursuant to Paragraph **A.2.**, our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property.  In no event will we pay more than the Limit of Insurance.

**B.** The following explanation is added with respect to application of the Exclusion of "Fungi", Wet Rot Or Dry Rot and the Limited Coverage of the same title:

With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungi", wet rot or dry rot, this Exclusion and Limited Coverage will not serve to limit the amount of recovery for such repair or re-placement.

However, the Exclusion and Limited Coverage shall continue to apply to:

**1.** The cost to treat, contain, remove or dispose of "fungi", wet rot or dry rot beyond that which is required to repair or replace Covered Property;

**2.** The cost of testing as described in the Limited Coverage; and

**3.** Any increase in loss under Business Income and/or Extra Expense Forms resulting from **1.** or **2.** above.

Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased.  The maximum recoverable, for the total of the cost to repair or re-place Covered Property and any additional covered cost to treat, contain, remove, dispose of or test for "fungi", wet rot or dry rot, is the applicable Limit of Insurance on the affected Covered Property.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2003

64062 (5-13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - DIMINUTION IN VALUE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
BUILDERS' RISK COVERAGE FORM

It is agreed:

Under **E. LOSS CONDITIONS**, **4. Loss Payment**, **a.** is deleted and replaced by the following:

**a.** In the event of loss or damage covered by this Coverage Form, at our option we will either:

**(1)** Repair, rebuild or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding or replacement, as limited by paragraph **b.** of this Loss Payment Condition and any other applicable policy provisions such as the Limit of Insurance provision, the Valuation Condition or any provision which amends or supersedes the Valuation Condition; or

**(2)** Take all or any part of the property at an agreed or appraised value.

With respect to Paragraph **a.(1)**, this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this policy does not pay any compensation for, an actual or perceived reduction in the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses market value, then that endorsement will apply to such property in accordance with its terms.

All other policy terms and conditions apply.

64062 (5-13)      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 1 of 1

64085 (10-13)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - APPRAISAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

The Appraisal Condition content wherever found in a Commercial Property Coverage Part is deleted and replaced by the following:
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If

they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will not be binding. Each party will:
**a.** Pay its chosen appraiser; and
**b.** Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.

All other policy terms and conditions apply.

64085 (10-13)       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 1 of 1

64224 (1-16)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES - TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**COMMERCIAL PROPERTY CONDITIONS, I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** is amended.  The following condition is added.
If the claim paid is less than the agreed loss because of any deductible or other limiting terms, the recovery is

prorated between you and us based on the interest of each in the loss.  This condition only applies if we pay for a loss and then payment is made by those responsible for the loss.

All other policy terms and conditions apply

64224 (1-16)       Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 1 of 1

Case 1:21-cv-00707-JPB    Document 1-1    Filed 02/18/21    Page 98 of 239

64000 (12-10)

# BUILDING AND PERSONAL PROPERTY
# COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** DEFINITIONS.

The descriptions in the headings of this Coverage Form and all applicable endorsements are solely for convenience and form no part of the terms and conditions of coverage.

**A.  COVERAGE**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

  **1.  Covered Property**
Covered Property, as used in this Coverage Part, means the type of property described in Section **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

    **a.  Building**, meaning the building or structure described in the Declarations, including:
      **(1)** Completed additions;
      **(2)** Fixtures, including outdoor fixtures;
      **(3)** Permanently installed:
        **(a)** Machinery; and
        **(b)** Equipment;
      **(4)** Building glass, meaning glass that is part of the building or structure;
      **(5)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
        **(a)** Fire-extinguishing equipment;
        **(b)** Outdoor furniture;
        **(c)** Floor coverings; and
        **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and
      **(6)** If not covered by other insurance:
        **(a)** Additions under construction, alterations and repairs to the building or structure; and
        **(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described prem-

ises, used for making additions, alterations or repairs to the building or structure.

    **b.  Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation Of Coverage endorsement:
      **(1)** Furniture and fixtures;
      **(2)** Machinery and equipment;
      **(3)** "Stock";
      **(4)** All other personal property owned by you and used in your business;
      **(5)** Labor, materials or services furnished or arranged by you on personal property of others;
      **(6)** Your use interest as tenant in improvements and betterments.  Improvements and betterments are fixtures, alterations, installations or additions:
        **(a)** Made a part of the building or structure you occupy but do not own; and
        **(b)** You acquired or made at your expense but cannot legally remove; and
      **(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

    **c.  Personal Property Of Others** that is:
      **(1)** In your care, custody or control; and

Agency Code   18-0067-00                                    Policy Number   114618-80881833

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities.  Lottery tickets held for sale are not securities.

**b.** Animals, unless owned by others and in your care, custody or control, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:
  **(1)** The lowest basement floor; or
  **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** "Electronic data", except as provided under the Additional Coverage - Electronic Data. This Paragraph **n.** does not apply to your "stock" of prepackaged software;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as "electronic data".  Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valu-

able Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as "electronic data";

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:
  **(1)** Are licensed for use on public roads; or
  **(2)** Are operated principally away from the described premises.

  This paragraph does not apply to:
  **(a)** Vehicles or self-propelled machines or automobiles you manufacture, process or warehouse;
  **(b)** Vehicles or self-propelled machines, other than automobiles, you hold for sale;
  **(c)** Rowboats or canoes out of water at the described premises; or
  **(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:
  **(1)** Grain, hay, straw or other crops; or
  **(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss Form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

  **(1)** Subject to Paragraphs **(3)** and **(4)** below, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

  **(2)** Debris Removal does not apply to costs to:
  **(a)** Extract "pollutants" from land or water; or
  **(b)** Remove, restore or replace polluted land or water.

  **(3)** Subject to the exceptions in Paragraph **(4)** below, the following provisions apply:
  **(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit

of Insurance applicable to the Covered Property that has sustained loss or damage.

    **(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

    **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

    **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

**(5) Examples**

In the following examples, the figures used are for illustrative purposes only and do not reflect your actual insurance.

The following examples assume that there is no Coinsurance penalty.

**EXAMPLE #1**

| | |
|---|---|
| Limit of Insurance: | $90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $50,000 |
| Amount of Loss Payable: | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense: | $10,000 |
| Debris Removal Expense Payable: | $10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible.  The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance.  Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**EXAMPLE #2**

| | |
|---|---|
| Limit of Insurance: | $90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $80,000 |
| Amount of Loss Payable: | $79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense: | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $10,500 |
| Additional Amount: | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows:  $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500.  The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000).  The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**.  Thus, the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

    **b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

    **(1)** While it is being moved or while temporarily stored at another location; and

    **(2)** Only if the loss or damage occurs within 45 days, unless a higher number of days are shown in the Declarations, after the property is first moved.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**c.  Fire Department Service Charge**
When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 per occurrence, unless a higher limit is shown in the Declarations, for your liability for fire department service charges:
   **(1)**  Assumed by contract or agreement prior to loss; or
   **(2)**  Required by local ordinance.

**d.  Pollutant Clean-up And Removal**
We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period.  The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants".  However, we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000, unless a higher limit is shown in the Declarations, for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e.  Electronic Data**
   **(1)**  Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.
   **(2)**  The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:
      **(a)**  If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Electronic

Data, is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.
      **(b)**  If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.
      **(c)**  If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to coverage provided under this Additional Coverage, Electronic Data.
      **(d)**  The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.  However, there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.
   **(3)**  Limit of Insurance
      **(a)**  Annual Aggregate Limit – The most we will pay under this Additional Coverage, Electronic Data, for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved is $10,000, unless a higher limit is shown in the Declarations.
      **(b)**  Per Occurrence Limit -  Subject to **(a)** above, we will pay up to the following amounts in any one occurrence of loss or damage:
         **1)**  $10,000 if the computer system(s) are equipped with active virus scanning or anti-virus software at the time of loss; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**2)** $2,500 if the computer system(s) are not equipped with active virus scanning or anti-virus software at the time of loss.

If loss payment for the first occurrence does not exhaust the annual aggregate limit shown in **(a)** above, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**f. Fire Extinguisher Systems Recharge Expense**
  **(1)** We will pay:
     **(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and
     **(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.
  **(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.
  **(3)** The most we will pay under this Additional Coverage is $10,000, unless a higher limit is shown in the Declarations, in any one occurrence.

**g. Arson Reward**
  **(1)** We will pay for information which leads to a conviction for arson in connection with a fire loss to Covered Property insured by this policy.
  **(2)** The most we will pay per occurrence is $7,500, unless a higher limit is shown in the Declarations, regardless of the number of persons who provide information.

**h. Theft Reward**
  **(1)** We will pay for information which leads to a conviction for theft of Covered Property insured by this policy.

**(2)** The most we will pay per occurrence is 25% of the amount of covered loss or $7,500, whichever is less, unless a higher limit is shown in Declarations, regardless of the number of persons who provide information.

**i. Rekeying of Locks**
  **(1)** If the keys to locks on doors of the building described in the Declarations are a part of a theft loss covered by this policy, we will pay reasonable necessary expenses you incur to rekey locks on doors of the building described in the Declarations.
  **(2)** The most we will pay per occurrence is $1,000, unless a higher limit is shown in the Declarations.

**5. Coverage Extensions**
Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

If a coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**
  **(1) Buildings**
      If this policy covers Building, you may extend that insurance to apply to:
      **(a)** Your new buildings while being built on the described premises; and
      **(b)** Buildings you acquire at locations, other than the described premises, intended for:
          **1)** Similar use as the building described in the Declarations; or
          **2)** Use as a warehouse.
      The most we will pay for loss or damage under this Extension is $500,000, unless a higher limit is shown in the Declarations, at each building.

  **(2) Your Business Personal Property**
      **(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:
          **1)** Business personal property (other than "stock"), including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**2)** Business personal property (other than "stock"), including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**3)** Business personal property (other than "stock") that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $250,000, unless a higher limit is shown in the Declarations, at each building.

**(b)** This Extension does not apply to:

**1)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**2)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 60 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property, unless a higher number of days are shown in the Declarations; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher limit is shown in the Declarations, at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers and Records (Other Than "Electronic Data")**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. However, this Extension does not apply to valuable papers and records which exist as "electronic data".

**(2)** If the Causes Of Loss - Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay in any one occurrence to replace or restore the lost information is:

**(a)** $10,000 at each described premises; and

**(b)** $10,000 while valuable papers and records are away from a described premises

unless higher limit(s) are shown in the Declarations. Such amounts are additional insurance.

**(5)** We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property, including "stock",

while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to Covered Property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000, unless a higher limit is shown in the Declarations.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor:

**(1)** Fences, trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or Civil Commotion; or

**(e)** Aircraft.

The most we will pay for loss or damage is $10,000, but not more than $1,000 for any one tree, shrub or plant, unless higher limits are shown in the Declarations. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**(2)** Radio and television antennas (including satellite dishes), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(a)** Fire;

**(b)** Lightning;

**(c)** Windstorm or Hail;

**(d)** Ice, snow or sleet;

**(e)** Explosion;

**(f)** Riot or Civil Commotion; or

**(g)** Aircraft.

The most we will pay for loss or damage is $2,000, unless a higher limit is shown in the Declarations. This limit applies to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. EXCLUSIONS AND LIMITATIONS**

See applicable Causes Of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**2.** The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $5,000, unless a higher limit is shown in the Declarations, per sign in any one occurrence.

**3.** The amounts of insurance stated in the following Additional Coverages apply in accordance with

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

64000 (12-10)    Copyright, ISO Properties, Inc., 2007    Page 7 of 14

the terms of such coverages and are in addition to the Limit(s) of Insurance shown in the Declarations for any other coverage, unless otherwise indicated:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Electronic Data;

**d.** Fire Extinguisher Systems Recharge Expense;

**e.** Arson Reward;

**f.** Theft Reward; and

**g.** Rekeying of Locks.

**4.** Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**5. Your Business Personal Property Limit - Seasonal Increase**

**a.** Subject to Paragraph **5.b.** below, the Limit of Insurance for Your Business Personal Property is automatically increased by:

**(1)** The percentage shown in the Declarations for Your Business Personal Property - Seasonal Increase; or

**(2)** 25%, if no percentage is shown in the Declarations for Your Business Personal Property - Seasonal Increase

to provide for seasonal variances.

**b.** The increase described above in Paragraph **5.a.**, will apply only if the Limit of Insurance shown for Your Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

## D. DEDUCTIBLE

The applicable Deductible shown in the Declarations will apply unless otherwise stated by endorsement.

In any one occurrence of loss or damage (hereinafter referred to as loss), the Deductible will apply as follows:

**1.** We will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage.

**a.** If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss.

**b.** If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and

will pay the resulting amount or the Limit of Insurance, whichever is less.

**2.** If Paragraph **1.**, above does not apply:

**a.** If the amount of loss is less than or equal to the Deductible, we will not pay for that loss.

**b.** If the amount of loss exceeds the Deductible, we will then subtract the Deductible from the loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. However, the Deductible will be applied only once per occurrence.

**3.** No Deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Fire Extinguisher Systems Recharge Expense;

**c.** Arson Reward;

**d.** Theft Reward; and

**e.** Rekeying of Locks.

In the following examples, the figures used are for illustrative purposes only and do not reflect your actual insurance.

The following examples assume there is no Coinsurance penalty.

**EXAMPLE #1**

| | |
|---|---|
| Deductible: | $   250 |
| Limit of Insurance - Building #1: | $60,000 |
| Limit of Insurance - Building #2: | $80,000 |
| Loss to Building #1: | $60,100 |
| Loss to Building #2: | $90,000 |

The amount of loss to Building #1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building #1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building #1:

$60,100
-      250
$59,850 Loss Payable - Building #1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building #2. Loss payable for Building #2 is the Limit of Insurance of $80,000.

Copyright, ISO Properties, Inc., 2007

Total amount of loss payable:
$59,850 + $80,000 = $139,850

**EXAMPLE #2**
The Deductible and Limits of Insurance are the same as those in Example #1.

| | |
|---|---|
| Loss to Building #1: | $70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building #2: | $90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building #1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable - Building #2: | $80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $140,000 |

**E.  LOSS CONDITIONS**
The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.  Abandonment**
There can be no abandonment of any property to us.

**2.  Appraisal**
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

**a.**  Pay its chosen appraiser; and

**b.**  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3.  Duties In The Event Of Loss Or Damage**
**a.**  You must see that the following are done in the event of loss or damage to Covered Property:

**(1)**  Notify the police if a law may have been broken.

**(2)**  Give us prompt notice of the loss or damage.  Include a description of the property involved.

**(3)**  As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)**  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)**  At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

**(6)**  As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)**  Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.
We will supply you with the necessary forms.

**(8)**  Cooperate with us in the investigation or settlement of the claim.

**b.**  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records.  In the event of an examination, an insured's answers must be signed.

**4.  Loss Payment**
**a.**  In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)**  Pay the value of lost or damaged property;

**(2)**  Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)**  Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice.

If you recover the property, at your option, you may retain the property. You must then return to us the amount we paid to you for the property less any expenses to repair the Covered Property and expenses incurred to recover the property. You may give us the recovered property in which case we will pay recovery expenses, subject to the Limit of Insurance.

If we recover the property, at your option, we may return the property to you. We will pay any recovery expenses, subject to the Limit of Insurance. We will also pay any expenses to repair the Covered Property, subject to the Limit of Insurance. However, before we return the Covered Property or pay for the repair of the Covered Property, you must first return to us the amount we paid to you for the property.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**2)** Used by the building owner to conduct customary operations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

64000 (12-10)                           Copyright, ISO Properties, Inc., 2007                           Page 10 of 14

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b.**, **c.**, **d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in the procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

64000 (12-10)  Copyright, ISO Properties, Inc., 2007  Page 11 of 14

In the following examples, the figures used are for illustrative purposes only and do not reflect your actual insurance.

**EXAMPLE #1 (UNDERINSURANCE)**

When:    The value of the property is:    $250,000
         The Coinsurance
         percentage for it is:    80%
         The Limit of Insurance for it is:    $100,000
         The Deductible is:    $    250
         The amount of loss is:    $ 40,000

Step **(1)**:    $250,000 x 80% = $200,000
                 (the minimum amount of
                 insurance to meet your Co-
                 insurance requirements)
Step **(2)**:    $100,000 ÷ $200,000 = .50
Step **(3)**:    $ 40,000 x .50 = $20,000
Step **(4)**:    $20,000 - $250 = $19,750
We will pay no more than $19,750.  The remaining $20,250 is not covered.

**EXAMPLE #2 (ADEQUATE INSURANCE)**

When:    The value of the property is:    $250,000
         The Coinsurance percentage
         for it is:    80%
         The Limit of Insurance for it is:    $200,000
         The Deductible is:    $    250
         The amount of loss is:    $ 40,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%).  Therefore, the Limit of Insurance in this example is adequate and no penalty applies.  We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

   **b.**   If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**EXAMPLE #3**

When:    The value of the property is:
         Building at Location #1:    $ 75,000
         Building at Location #2:    $100,000
         Personal Property at Location #2:    $ 75,000
                                              $250,000

         The Coinsurance percentage for it is:    90%
         The Limit of Insurance for Buildings
         and Personal Property at Locations
         #1 and #2 is:    $180,000
         The Deductible is:    $   1,000
         The amount of loss is:

         Building at Location #2:    $ 30,000
         Personal Property at
         Location #2:    $ 20,000
                         $ 50,000
Step **(1)**:    $250,000 x 90% = $225,000
                 (the minimum amount of
                 insurance to meet your Co-
                 insurance requirements and
                 to avoid the penalty shown below)
Step **(2)**:    $180,000 ÷ $225,000 = .80
Step **(3)**:    $ 50,000 x .80 = $40,000
Step **(4)**:    $ 40,000 - $1,000 = $39,000
We will pay no more than $39,000.  The remaining $11,000 is not covered.

   **2.   Mortgageholders**

   **a.**   The term mortgageholder includes trustee.

   **b.**   We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   **c.**   The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

   **d.**   If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

      **(1)**   Pays any premium due under this Coverage Part at our request if you have failed to do so;

      **(2)**   Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)**   Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this Coverage Part will then apply directly to the mortgageholder.

   **e.**   If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

      **(1)**   The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

      **(2)**   The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage

plus any accrued interest.  In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies.  We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for  property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

In the following example, the figures used are for illustrative purposes only and do not reflect your actual insurance.

**EXAMPLE**

If:   The applicable Limit of
      Insurance is:                                      $100,000
      The annual percentage increase is:        8%
      The number of days since the
      beginning of the policy year
      (or last policy change) is:                        146
      The amount of increase is:
      $100,000 x .08 x 146 ÷ 365   =          $3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

    **(a)** Of comparable material and quality; and

    **(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4.** **Extension Of Replacement Cost To  Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Optional Coverage may also be shown as applicable.  If the Declarations show this Optional Coverage as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H.  DEFINITIONS**

**1.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.  The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials  to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

64010 (12-10)

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS in the Commercial Property Coverage Part.

## A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.**, Exclusions; or
**2.** Limited in Section **C.**, Limitations

that follow.

## B. EXCLUSIONS

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or
**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or
**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, earth rising or earth shifting related to such event;
**(2)** Landslide, including any earth sinking, earth rising or earth shifting related to such event;
**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;
**(4)** Earth sinking (other than sinkhole collapse), earth rising or earth shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

However, if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion.  However, if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;
**(b)** Ash, dust or particulate matter; or
**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

However, we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we

will pay for the loss or damage caused by that fire.

**e.  Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply. Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

However, if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss. Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f.  War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.  Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the  ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **g.(1)** through **(5)** is caused by an act of nature or is otherwise caused.

However, if any of the above in Paragraphs **g.(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h.  "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot. However, if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**1.** When "fungi", wet rot or dry rot results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungi", Wet Rot Or Dry Rot with respect to loss or damage by a cause of loss other than fire or lightning.

**i.  Virus Or Bacteria**

We will not pay for loss or damage caused by or resulting from virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

With respect to any loss or damage subject to this exclusion, such exclusion supersedes any exclusion relating to "pollutants".

Exclusions **B.1.a.** through **B.1.i.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. (1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting  caused by centrifugal force.  However, if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision; or

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

However, if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.  However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.  We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or with-

in the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated  seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not  occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

However, if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage - Collapse; or

**(b)** To collapse caused by one or more of the following:
  **1)** The "specified causes of loss";
  **2)** Breakage of building glass;
  **3)** Weight of rain that collects on a roof; or
  **4)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". However, if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".
This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** However, if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:
  **(1)** Planning, zoning, development, surveying, siting;
  **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
  **(3)** Materials used in repair, construction, renovation or remodeling; or
  **(4)** Maintenance
  of part or all of any property on or off the described premises.

**4.** **Special Exclusions**
The following provisions apply only to the specified Coverage Forms.

  **a.** **Business Income (And Extra Expense) Coverage Form, Business Income (And Extra Expense) Actual Loss Sustained**

**Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**
We will not pay for:

**(1)** Any loss caused by or resulting from:
  **(a)** Damage or destruction of "finished stock"; or
  **(b)** The time required to reproduce "finished stock".
  This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:
  **(a)** Delay in rebuilding, repairing or replacing the  property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or
  **(b)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any Extra Expense caused by or resulting from any delay in rebuilding, repairing or replacing the property or resuming "operations" due to an insufficiency of or failure to maintain adequate Limits of Insurance for Building or Business Personal Property.

**(6)** Any other consequential loss.

**b.** **Leasehold Interest Coverage Form**
  **(1)** Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.
  **(2)** We will not pay for any loss caused by:

**(a)** Your canceling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.**, Ordinance Or Law;

**(b)** Paragraph **B.1.c.**, Governmental Action;

**(c)** Paragraph **B.1.d.**, Nuclear Hazard;

**(d)** Paragraph **B.1.e.**, Utility Services; and

**(e)** Paragraph **B.1.f.**, War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.  However, this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**1)** Your assumption of liability was executed prior to the accident; and

**2)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction  or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property.

**LOSS OR DAMAGE TO PRODUCTS**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair.  This ex-
clusion applies to any effect that compromises the form, substance or quality of the product.  However, if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. LIMITATIONS**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.** We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment.  However, we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property. However, this limitation does not apply:

**(1)** If the property is located on or within 1,000 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $500 for stamps, tickets, including lottery tickets held for sale, and letters of credit. These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. However, we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing. However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. ADDITIONAL COVERAGE - COLLAPSE**
The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.**;

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage - Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging,

---

bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:
   a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;
   b. Awnings, gutters and downspouts;
   c. Yard fixtures;
   d. Outdoor swimming pools;
   e. Fences;
   f. Piers, wharves and docks;
   g. Beach or diving platforms or appurtenances;
   h. Retaining walls; and
   i. Walks, roadways and other paved surfaces

   if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:
   (1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and
   (2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:
   a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;
   b. The personal property which collapses is inside a building; and
   c. The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in **D.1.** through **D.7.**

E. **ADDITIONAL COVERAGE - LIMITED COVERAGE FOR "FUNGI", WET ROT OR DRY ROT**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy term and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

2. We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:
   a. Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;
   b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and
   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to 10% of the building or personal property limit of insurance, whichever is greater, subject to a maximum of $100,000 and a minimum of $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy term). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than this limit even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy term.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property. If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5.  The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage - Collapse.

6.  The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form.

    a.  If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under Business Income and/or Extra Expense is limited to the amount of loss or expense sustained in a period of not more than 45 days. The days need not be consecutive.

    b.  If a covered "suspension" of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), however, such coverage is limited to 45 days. The days need not be consecutive.

**F.  ADDITIONAL COVERAGE EXTENSIONS**

1.  **Property In Transit**

    This Extension applies only to your personal property to which this form applies.

    a.  You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 1,000 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

    b.  Loss or damage must be caused by or result from one of the following causes of loss:

        (1)  Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

        (2)  Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

        (3)  Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    c.  The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

    This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2.  **Water Damage, Other Liquids, Powder Or Molten Material Damage**

    If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3.  **Glass**

    a.  We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    b.  We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

    This Coverage Extension, **F.3.**, does not increase the Limit of Insurance.

**G.  DEFINITIONS**

1.  "Fungi" means any type or form of fungus, including, but not limited to, any mold, mildew, mycotoxins, spores, scents or by-products produced or released by any type or form of fungus.

2.  "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    a.  Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        (1)  The cost of filling sinkholes; or

        (2)  Sinking or collapse of land into man-made underground cavities.

    b.  Falling objects does not include loss or damage to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

Case 1:21-cv-00707-JPB   Document 1-1   Filed 02/18/21   Page 120 of 239

**(1)** Personal property in the open; or

**(2)** The interior of a  building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

64014 (2-16)

# BUSINESS INCOME (AND EXTRA EXPENSE)
# ACTUAL LOSS SUSTAINED
# COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **C.**, DEFINITIONS.

The descriptions in the headings of this Coverage Form and all applicable endorsements are solely for convenience and form no part of the terms and conditions of coverage.

## A. COVERAGE

### 1. Business Income

**a.** Business Income means the:

**(1)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**(2)** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

**b.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which ACTUAL LOSS SUSTAINED is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(1)** The portion of the building which you rent, lease or occupy; and

**(2)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**c.** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage.

### 3. Covered Causes Of Loss, Exclusions And Limitations

See applicable Causes Of Loss Form as shown in the Declarations.

### 4. Additional Limitation - Interruption Of Computer Operations

a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under the Additional Coverage - Interruption Of Computer Operations.

b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under the Additional Coverage - Interruption Of Computer Operations.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage - Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin immediately following the time of the first action of civil authority that prohibits access to the described premises; however, if a waiting period is shown in the Declarations, then after such period following the time of the first action of civil authority that prohibits access to the described premises.

Civil Authority Coverage for Business Income will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends

whichever is later.

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur, subject to **A.1.** and **2.** above, due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(2)** Ends on the earlier of:

**(a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(b)** 30 consecutive days after the date determined in **(1)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage - Interruption Of Computer Operations includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage - Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for an interruption related to manipulation of a computer system (including

"electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - Interruption Of Computer Operations, for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved is $10,000, unless a higher limit is shown in the Declarations, subject to the following:

**(a)** If at the time of interruption, the computer system is equipped with active virus scanning or anti-virus software, this entire amount is available.

**(b)** If at the time of interruption, the computer system is not equipped with active virus scanning or anti-virus software, payment will be limited to $2,500 for that occurrence.

If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**6. Coverage Extension**

You may extend the insurance provided by this Coverage Part as follows:

**NEWLY ACQUIRED LOCATIONS**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than

fairs or exhibitions, if the location you acquire is intended for:

**(1)** Similar use as the location described in the Declarations; or

**(2)** Use as a warehouse.

**b.** The most we will pay under this extension for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 60 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

## B. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of

service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**C. DEFINITIONS**

**1.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**2.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**3.** "Operations" means your business activities occurring at the described premises.

**4.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** Immediately following the time of direct physical loss or damage; however, if a waiting period is shown in the Declarations, then after such period following the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately following the time of direct physical loss or damage for Extra Expense Coverage

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not mean any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not shorten or cause the "period of restoration" to terminate.

5. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

Agency Code    18-0067-00                                Policy Number    114618-80881833

64020 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - BASIC FORM

**A.** Each Coverage - Coverage **A**, Coverage **B**, Coverage **C** and Coverage **D** - of Section **E. Coverages** below, is provided under this endorsement only if a Limit of Insurance for that Coverage(s) is shown in the Declarations and then only with respect to the building identified for that Coverage(s) in the Declarations.

**B.** The following provisions do not apply to the extent that they conflict with the coverage provided by this endorsement only:

   **1.** BUILDING AND PERSONAL PROPERTY COVERAGE FORM:

     **a.** **E. LOSS CONDITIONS**:

       **(1)** **4. Loss Payment**, **b.**; and

       **(2)** **7. Valuation**, **b.**, second paragraph; and

     **b.** **G. OPTIONAL COVERAGES**, **3. Replacement Cost**, **f.**

   **2.** CONDOMINIUM ASSOCIATION COVERAGE FORM:

     **a.** **E. LOSS CONDITIONS**:

       **(1)** **4. Loss Payment**, **b.**; and

       **(2)** **8. Valuation**, **b.**, second paragraph; and

     **b.** **G. OPTIONAL COVERAGES**, **3. Replacement Cost**, **f.**

   **3.** Section **B. EXCLUSIONS**, **1.a.** of CAUSES OF LOSS - SPECIAL, BROAD and BASIC FORMS.

**C.** **Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **C.1.** and **C.2.** are satisfied and are then subject to the qualifications set forth in **C.3.**

   **1.** The ordinance or law:

     **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

     **b.** Is in force at the time of loss.

However, coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law.  Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

   **2.** **a.** The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

     **b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

     **c.** However, if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

   **3.** In the situation described in **C.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B**, **C** and/or **D** of this endorsement.  Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.  However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B**, **C** and/or **D** of this endorsement.

**D.** We will not pay under Coverage **A**, **B**, **C** or **D** of this endorsement for:

Includes copyrighted material of Insurance Service Office, Inc., with its permission.

64020 (12-10)                Copyright, ISO Properties, Inc., 2001                Page 1 of 3

1. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

2. The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

## E. Coverages

1. **Coverage A - Coverage For Loss To The Undamaged Portion Of The Building**

   With respect to a covered building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

   Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

   The Coinsurance Additional Condition does not apply to the undamaged portion of the building when the Limit of Insurance shown in the Declarations for Coverage **A** is less than the applicable building Limit of Insurance shown in the Declarations.

2. **Coverage B - Demolition Cost Coverage**

   With respect to a covered building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires Demolition of such undamaged property.

   The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

3. **Coverage C - Increased Cost Of Construction Coverage**

   a. With respect to a covered building that has sustained covered direct physical damage, we will pay the increased cost to:

      (1) Repair or reconstruct damaged portions of that building; and/or

      (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required

      when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

   (1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

   (2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

   The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

   b. When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

      (1) The cost of excavations, grading, backfilling and filling;

      (2) Foundation of the building;

      (3) Pilings; and

      (4) Underground pipes, flues and drains.

      The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, **3.b.**

4. **Coverage D - Tenant's Improvements and Betterments**

   With respect to your use interest as tenant in improvements and betterments that have sustained covered direct physical damage, we will pay the increased cost to repair or reconstruct damaged portions of those improvements and betterments when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

   The Coinsurance Additional Condition does not apply to Tenant's Improvements and Betterments.

## F. Loss Payment

1. All following loss payment Provisions, **F.2.** through **F.5.**, are subject to the apportionment procedures set forth in Section **C.3.** of this endorsement.

2. When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

Includes copyrighted material of Insurance Service Office, Inc., with its permission.

**(1)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit of Insurance for Coverage **A** shown in the Declarations as applicable to the covered building.

**b.** If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

**(1)** The actual cash value of the building at the time of loss; or

**(2)** The Limit of Insurance for Coverage **A** shown in the Declarations as applicable to the covered building.

**3.** Loss payment under Coverage **B** - Demolition Cost Coverage will be determined as follows: We will not pay more than the lesser of the following:

**a.** The amount you actually spend to demolish and clear the site of the described premises; or

**b.** The applicable Limit of Insurance shown for Coverage **B** in the Declarations.

**4.** Loss payment under Coverage **C** - Increased Cost of Construction Coverage will be determined as follows:

**a.** We will not pay under Coverage **C**:

**(1)** Until the property is actually repaired or replaced, at the same or another premises; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

**(1)** The increased cost of construction at the same premises; or

**(2)** The applicable Limit of Insurance shown for Coverage **C** in the Declarations.

**c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

**(1)** The increased cost of construction at the new premises; or

**(2)** The applicable Limit of Insurance shown for Coverage **C** in the Declarations.

**5.** Loss payment under Coverage **D** - Tenant's Improvements and Betterments will be determined as follows:

**a.** We will not pay under Coverage **D**:

**(1)** Until the property is actually repaired or replaced, at the same or another premises; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**b.** If the improvements and betterments are repaired or replaced at the same premises, or if you elect to rebuild the improvements and betterments at another premises, the most we will pay under Coverage **D** is the lesser of:

**(1)** The increased cost of construction at the same premises; or

**(2)** The applicable Limit of Insurance shown for Coverage **D** in the Declarations.

**c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **D** is the lesser of:

**(1)** The increased cost of construction at the new premises; or

**(2)** The applicable Limit of Insurance shown for Coverage **D** in the Declarations.

**G.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**H.** Under this endorsement we will not pay for loss due to any ordinance or law that:

**1.** You were required to comply with before the loss, even if the building was undamaged; and

**2.** You failed to comply with.

**I.** The following definition is added:

"Fungi" means any type or form of fungus, including but not limited to, mold, mildew, mycotoxins, spores, scents or by-products produced or released by any type or form of fungus.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Service Office, Inc., with its permission.

64020 (12-10)              Copyright, ISO Properties, Inc., 2001                    Page 3 of 3

64055 (12-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
COMMERCIAL PROPERTY CONDITIONS

**SCHEDULE**

| Premises Number: | | Building Number: | | Applicable Clause (Enter A., B., C., or D.): | |
|---|---|---|---|---|---|
| **Description Of Property:** <br><br> **Loss Payee Name:** <br><br> **Loss Payee Address:** | | | | | |
| Premises Number: | | Building Number: | | Applicable Clause (Enter A., B., C., or D.): | |
| **Description Of Property:** <br><br> **Loss Payee Name:** <br><br> **Loss Payee Address:** | | | | | |
| Premises Number: | | Building Number: | | Applicable Clause (Enter A., B., C., or D.): | |
| **Description Of Property:** <br><br> **Loss Payee Name:** <br><br> **Loss Payee Address:** | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Schedule or in the Declarations:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.
2. For Covered Property in which both you and a Loss Payee have an insurable interest:
   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.
   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.
   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:
      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.
   All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and
   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.
   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.
2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:
   a. Adjust losses with you; and
   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.
3. The following is added to the **OTHER INSURANCE** Condition:
   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.
2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.
3. We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

64055 (12-10)                    Copyright, ISO Commercial Risk Services, Inc., 1990, 2007                    Page 2 of 2

CP 00 90 07 88

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part.  If you do, we will pay our share of the covered loss or damage.  Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.  But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything neces-sary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your covered Property or Covered Income only if, at time of loss, that party is one of the following:

**a.** Someone insured by this insurance;

**b.** A business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.

**COMMERCIAL GENERAL LIABILITY**
**55165 (12-04)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - USERS OF GOLFMOBILES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**A.**  **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person(s) using or legally responsible for the use of golfmobiles loaned or rented to others by you or any of your concessionaires but only for their liability arising out of the use of golfmobiles.

**B.**  Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the additional insured are those specified in the written contract or agreement between the insured and the user of golfmobiles, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
55165 (12-04)                    Copyright, Insurance Services Office, Inc., 1984, 2003.                    Page 1 of 1

55296 (9-09)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following exclusion is added to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**:

**Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**2.** The following exclusion is added to **SECTION I - COVERAGES, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY, 2. Exclusions**:

**Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

55296 (9-09)                    © Insurance Services Office, Inc., 2008                    Page 1 of 1

COMMERCIAL GENERAL LIABILITY
55372 (1-07)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED
# EXCLUSION - PRODUCTS-COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM.

**A.** Under **SECTION I - COVERAGES**, **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. Exclusions**, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to:

Any Additional Insured, as defined in paragraph **B.** immediately below, for liability arising from the "products-completed operations hazard".

**B.** Under **SECTION II - WHO IS AN INSURED**, the following is added:

A person or organization is an Additional Insured, only with respect to liability arising out of "your work" for that Additional Insured by or for you:

**1.** If required in a written contract or agreement; or

**2.** If required by an oral contract or agreement only if a Certificate of Insurance was issued prior to the loss indicating that the person or organization was an Additional Insured.

**C.** Under **SECTION III - LIMITS OF INSURANCE**, the following is added:

The limits of liability for the Additional Insured are those specified in the written contract or agreement between the insured and the owner, lessee or contractor or those specified in the Certificate of Insurance, if an oral contract or agreement, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**D.** **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, is amended as follows.

**1.** The following provision is added to **4. Other Insurance**:

This insurance is primary for the Additional Insured, but only with respect to liability arising out of "your work" for that Additional Insured by or for you.  Other insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement.

**2.** The following provision is added:

**Other Additional Insured Coverage Issued By Us**

If this policy provides coverage for the same loss to any Additional Insured specifically shown as an Additional Insured in another endorsement to this policy, our maximum limit of insurance under this endorsement and any other endorsement shall not exceed the limit of insurance in the written contract or agreement between the insured and the owner, lessee or contractor, or the limits provided in this policy, whichever is less.  Our maximum limit of insurance arising out of an "occurrence", shall not exceed the limit of insurance shown in the Declarations, regardless of the number of insureds or Additional Insureds.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusion Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above. However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions of Section I - Coverage B - Personal Injury And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal injury" and "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

All other policy terms and conditions apply.

55637 (9-14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS-COMPLETED OPERATIONS HAZARD AMENDATORY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under **SECTION V- DEFINITIONS**, **17.** "Products-completed operations hazard" is deleted and replaced by the following:

**17.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

All other policy terms and conditions apply.

COMMERCIAL GENERAL LIABILITY
55028 (12-04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The coverage for "bodily injury" and "property damage" liability provided under **SECTION I COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is extended as follows:

**A. COVERAGE**

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto":

**1.** You do not own;

**2.** Which is not registered in your name; or

**3.** Which is not leased or rented to you for more than ninety consecutive days

and which is used in your business.

**B. EXCLUSIONS**

With respect to only the coverage extended by this endorsement, the exclusions which apply to **SECTION I COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, other than the Nuclear Energy Liability Exclusion, are replaced by the following:

This coverage does not apply to:

**1.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2.** Any obligations of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**3. a.** "Bodily injury" or "property damage" arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    **(1)** that are, or are contained in any property that is:

        **(a)** being transported or towed by, handled or prepared for placement into or upon, or taken from the "auto";

        **(b)** otherwise in the course of transit by you or on your behalf; or

        **(c)** being disposed of, stored, treated or processed into or upon the "auto";

    **(2)** before such pollutants or property containing pollutants are moved from the place they are accepted by you or anyone acting on your behalf for placement into or onto the "auto"; or

    **(3)** after such "pollutants" or property containing "pollutants" are removed from the "auto" to where they are delivered, disposed of or abandoned by you or anyone acting in your behalf.

**3.c.(1)** above does not apply to "pollutants" that are needed or result from the normal mechanical, electrical or hydraulic functioning of the "auto" or its parts, if the discharge, release, escape, seepage, migration or dispersal of such "pollutants" is directly from a part of the "auto"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1982, 1988, 2002, 2004.

Case 1:21-cv-00707-JPB    Document 1-1    Filed 02/18/21    Page 140 of 239

designed to hold, store, receive or dispose of such "pollutants" by the 'auto" manufacturer.

**3.a.(2)** and **3.a.(3)** above do not apply, if as a direct result of maintenance or use of the "auto", "pollutants" or property containing "pollutants" which are not in or upon the 'auto", are upset, overturned or damaged at any premises not owned by or leased by you. The discharge, release, escape, seepage, migration or dispersal of the "pollutants" must be directly caused by such upset, overturn or damage.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

**4.** "Bodily injury" or "property damage" however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**5.** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does

not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**b.** That the insured would have in the absence of the contract or agreement.

**6.** "Property damage" to:

**a.** Property owned or being transported by, or rented or loaned to any insured; or

**b.** Property in the care, custody or control of any insured

other than property damage to a residence or a private garage by a private passenger "auto" covered by this coverage.

**7.** "Bodily injury" to:

**a.** An "employee" of the insured arising out of and in the course of employment by the insured; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to:

**a.** Liability assumed by the insured under an "insured contract".

**b.** "Bodily injury" to any "employee" of the insured arising out of and in the course of his or her domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

**C. WHO IS AN INSURED**

With respect to only the coverage extended by this endorsement, **SECTION II - WHO IS AN INSURED** is deleted and replaced by the following:

Each of the following is an insured with respect to this coverage:

**1.** You.

**2.** Your partners if you are designated in the Declarations as a partnership or a joint venture.

**3.** Your members if you are designated in the Declarations as a limited liability company.

**4.** Your executive officers if you are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company.

**5.** Any person using the "auto" and any person or organization legally responsible for the use of an "auto" not owned by such person or oganization, provided the actual use is with your permission.

None of the following is an insured:

**1.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment.

**2.** Any person using the "auto" and any person other than you, legally responsible for its use with respect to an "auto" owned or registered in the name of:

    **a.** Such person; or

    **b.** Any partner or executive officer of yours or a member of his or her household; or

    **c.** Any employee or agent of yours who is granted an operating allowance of any sort for the use of such "auto".

**3.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate.

**4.** The owner or lessee (of whom you are a sub-lessee) of a hired "auto" or the owner of an "auto" you do not own or which is not registered in your name which is used in your business or any agent or employee of any such owner or lessee.

**5.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**D. LIMITS OF INSURANCE**

With respect to only the coverage extended by this endorsement, **SECTION III - LIMITS OF INSURANCE** is deleted and replaced by the following:

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**2.** We will pay damages for "bodily injury" or "property damage" up to the limits of liability shown in the Declarations for this coverage. Such damages shall be paid as follows:

    **a.** When Hired Auto and Non-Owned Auto Each Occurrence Limit is shown in the Declarations, such limit is the total amount of coverage and the most we will pay for all damages because of or arising out of all "bodily injury" and "property damage" in any one "occurrence".

    **b.** When Bodily Injury Hired Auto and Non-Owned Auto Each Occurrence Limit and Property Damage Hired Auto and Non-Owned Auto Each Occurrence Limit are shown in the Declarations:

        **(1)** The limit shown for Bodily Injury Hired Auto and Non-Owned Auto Each Occurrence is the total amount of coverage and the most we will pay for all damages because of or arising out of all "bodily injury" in any one "occurrence".

        **(2)** The limit shown for Property Damage Hired Auto and Non-Owned Auto Each Occurrence is the total amount of coverage and the most we will pay for all damages because of or arising out of all "property damage" in any one "occurrence".

**E.  ADDITIONAL DEFINITION**

The following definition applies only to the coverage extended by this endorsement:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1982, 1988, 2002, 2004.

55028 (12-04)                                                                                    Page 4 of 4

**COMMERCIAL GENERAL LIABILITY**
**55146 (6-04)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UPSET AND OVERSPRAY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed the coverage for "property damage" liability with respect to your operations is extended as follows:

**1.    COVERAGE**

We will pay those sums which you become legally obligated to pay for "property damage" caused directly by immediate, abrupt and accidental:

**a.**    Upset, overturn or collision of your "mobile equipment" while transporting; or

**b.**    "Overspray" during your application or dispersal of

"pollutants" which are intended for and normally used in your operations.  The operations must be in compliance with local, state, and federal ordinances and laws.

This is not an additional amount of insurance and does not increase the Limits of Insurance stated in the Declarations.

**2.    EXCLUSIONS**

**a.**    With regard only to the coverage provided by this endorsement, Exclusion **f.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**  is deleted and replaced by the following:

**f.    Pollution**

Any loss, cost or expense arising out of any:

**(1)**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(2)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

**b.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

This coverage does not apply to "overspray" resulting from aerial application or dispersal of "pollutants".

## 3. DEDUCTIBLE

Any deductible provision of the policy which is applicable to Property Damage Liability coverage applies to this coverage extension.

## 4. DEFINITIONS

The following definition applies in addition to those in the policy.

"Overspray" means spray, from a device specifically designed for spray application or dispersal, that goes beyond the entire area of intended application or dispersal.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2000

**COMMERCIAL GENERAL LIABILITY**
**55282 (4-05)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA LIMITED FUNGI OR BACTERIA COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Fungi and Bacteria Property Damage Aggregate Limit | $ | 50,000 |
|---|---|---|

**A.** The following additional exclusion is added to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions**:

"Bodily injury" arising out of:

**a.** A "fungi or bacteria incident"; or

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to **SECTION I - COVERAGES, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY 2. Exclusions**:

"Personal injury" and "advertising injury" arising out of:

**a.** A "fungi or bacteria incident"; or

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** Coverage provided by this insurance for "property damage", arising out of a "fungi or bacteria incident", is subject to the Fungi and Bacteria Property Damage Aggregate Limit as described in Paragraph **D.** of this endorsement.

**D.** The following are added to **SECTION III - LIMITS OF INSURANCE**:

**1.** Subject to Paragraphs **2.** and **3.** of Section III - Limits of Insurance, as applicable, the Fungi and Bacteria Property Damage Aggregate Limit shown in the Schedule of this endorsement is the most we will pay under Coverage A for all "property damage" arising out of one or more "fungi or bacteria incident".

**2.** Subject to the paragraph immediately above, paragraph **5.**, the Each Occurrence Limit and Paragraph **6.**, the Damage To Premises Rented To You Limit, of Section III - Limits of Insurance continue to apply to "property damage" arising out of a "fungi or bacteria incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

55282 (4-05)                        Copyright, ISO Properties, Inc., 2003                        Page 1 of 2

**E.** The following additional definitions are added to **SECTION V - DEFINITIONS**:

"Fungi" means any type or form of fungus, including but not limited to mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.

"Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such damage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, ISO Properties, Inc., 2003

55300 (7-05)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)** That the insured would have in the absence of the contract or agreement.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation And Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of employment by the insured; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, occupy or use, including any cost or expense incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

**(2)** Property that any of your:

**(a)** "Employees";

**(b)** "Volunteer workers";

**(c)** Partners or members (if you are a partnership or joint venture); or

**(d)** Members (if you are a limited liability company)

own, rent, occupy or use.  However, this exclusion **j.(2)**, shall not apply to your liability for damage to such property;

**(3)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(4)** Property loaned to you;

**(5)** Personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;

**(6)** That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(7)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(2)**, **(4)** and **(5)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(3)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(4)**, **(5)**, **(6)** and **(7)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(7)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product ";

**(2)** "Your work"; or

**(3)** "Impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal Injury And Advertising Injury**

"Bodily injury" arising out of "personal injury" or "advertising injury".

**p.  Employment-Related Practices**

"Bodily injury" to:

**(1)**  A person arising out of any:

**(a)**  Refusal to employ a person;

**(b)**  Termination of a person's employment;

**(c)**  Employment-related practice, policy, act or omission, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a person; or

**(d)**  Criminal or civil action brought against a person by or at the direction of the insured directly or indirectly related to any offense described in **(a)**, **(b)**, or **(c)** above; or

**(2)**  Anyone as a consequence of "bodily injury" to a person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, **(c)**, or **(d)** above is directed.

This exclusion applies:

**(1)**  Whether the insured may be liable as an employer or in any other capacity;

**(2)**  Whether the offense is alleged to arise out of the employment during the course or scope of employment, outside the course or scope of employment or after termination of employment;

**(3)**  Whether directly or indirectly related to a person's prospective, current or past employment; and

**(4)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**q.  Asbestos**

Any claim, "suit", action or proceeding against any insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos-related particles, dust, irritants, contaminants, "pollutants", toxic elements or materials.

**r.  Communicable Disease**

"Bodily Injury" arising out of or resulting from the transmission of any communicable disease by any insured.

**s.  Silica Or Silica-Related Dust**

Any claim, "suit", action or proceeding against any insured arising out of the discharge, dispersal, release, escape or inhalation of any "silica" or "silica-related dust".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

**COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result.  But:

**(1)**  The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)**  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**  This insurance applies to "personal injury" and "advertising injury" only if:

**(1)** The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

**(2)** The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to "personal injury" or "advertising injury":

### a. Knowing Violation Of Rights Of Another Or Expected Or Intended Injury

**(1)** Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

**(2)** Expected or intended by any insured.  This exclusion **a.(2)**, does not apply to "personal injury".

### b. Material Published With Knowledge Of Falsity

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

Arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured.

### e. Contractual Liability

For which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach of Contract

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

### g. Quality Or Performance Of Goods - Failure To Conform To Statements Or Representations

Arising out of the failure of goods, products or services to conform with any statement or representation of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

Arising out of the wrong description of the price of goods, products or services.

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

Arising out of the infringement of copyright, patent, "trademark", trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement" of copyright, "trade dress" or slogan.

### j. Insureds In Media And Internet Type Businesses

Committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **15. a.**, **b.** and **c.** of "personal injury" under Section **V** - Definitions.

For the purposes of **j.(1)** of this exclusion, the placing of frames, borders, links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

**k. Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control for any purpose.

**l. Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

**(1)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** For any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**n. Employment-Related Practices**

**(1)** Arising out of any:

**(a)** Refusal to employ a person;

**(b)** Termination of a person's employment;

**(c)** Employment-related practice, policy, act or omission, including but not limited to coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a person; or

**(d)** Criminal or civil action brought against a person by or at the direction of the insured directly or indirectly related to any offense described in **(a)**, **(b)**, or **(c)** above; or

**(2)** To anyone as a consequence of "personal injury" or "advertising injury" to a person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, **(c)**, or **(d)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity;

**(2)** Whether the offense is alleged to arise out of the employment during the course or scope of employment, outside the course or scope of employment or after termination of employment;

**(3)** Whether directly or indirectly related to a person's prospective, current or past employment; and

**(4)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**o. Asbestos**

For any claim, "suit", action or proceeding against any insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos-related particles, dust, irritants, contaminants, "pollutants", toxic elements or materials.

**p. Communicable Disease**

Arising out of or resulting from the transmission of any communicable disease by any insured.

**q. War**

However, caused, arising directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**r.  Silica Or Silica-Related Dust**

Any claim, "suit", action or proceeding against any insured arising out of the discharge, dispersal, release, escape or inhalation of any "silica" or "silica-related dust".

## COVERAGE C. MEDICAL PAYMENTS

**1.  Insuring Agreement**

**a.**  We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.**  We will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.  We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2.  Exclusions**

We will not pay expenses for "bodily injury":

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefit law or a similar law.

**e.  Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletics contests.

**f.  Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.  Coverage A Exclusions**

Excluded under Coverage **A**.

**h.  Asbestos**

For any claim, "suit", action or proceeding against any insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contaminant, pollutant, toxic element or material.

**i.  Communicable Disease**

Arising out of or resulting from the transmission of any communicable disease by any insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

If Coverage **A** or **B** apply, we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $2000 for premiums on bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We have no obligation to apply for or furnish these bonds.

**3.** Premiums on appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We have no obligation to apply for or furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request including actual loss of earnings up to $250 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit".

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your

managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business, or your "volunteer workers" only while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "bodily injury", "personal injury" or "advertising injury":

**(1)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(2)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)** above;

**(3)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)** or **(2)** above; or

**(4)** Arising out of his or her providing or failing to provide professional health care services.

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.  Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.  However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal Injury and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** The Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises,

while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

**8.** Beginning with the effective date of this policy, we will provide twice the General Aggregate Limit (other than Products-Completed Operations), shown in the Declarations.

If this policy is written for more than one 12 month period, the General Aggregate Limit for each 12 month period shall never exceed twice the General Aggregate Limit shown in the Declarations.  The General Aggregate Limit applies separately to each 12 month period starting with the beginning of the policy period shown in the Declarations.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If any claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of any claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against

an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when **b**. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c**. below.

**b.    Excess Insurance**

This insurance is excess over:

**(1)**  Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)**  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)**  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)**  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)**  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g**. of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(2)**  Any other primary insurance available to an insured, other than an additional insured, covering liability for damages arising out of the premises or operations, or the products

and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applcable limits of insurance of all insurers.

**5.    Premium Audit**

**a.**    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.**    Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period and send

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

55300 (7-05)                  Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.                  Page 13 of 18

notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Motor Vehicle Laws**

We will provide coverage:

**a.** Up to the minimum required limits; and

**b.** Subject to all the terms and conditions of the policy

to comply with any motor vehicle insurance law to the extent such law applies to the "mobile equipment" covered by this Coverage Part.

However, this coverage only applies in the absence of any other applicable insurance.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

**2.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

**b.** Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

**c.** The use of another's advertising idea in your "advertisement"; or

**d.** Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

**3.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

5. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal injury" or "advertising injury" offenses that take place through the Internet or similar electronic means of comunication

      provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings,

opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**11.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**12.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**13.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.**, or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers; or

**f.** Vehicles not described in **a.**, **b.**, **c.**, or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Personal injury" means other than "bodily injury" arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

16. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.

18. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

19. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

20. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Trademark" means any registered or unregistered word, name, symbol, sign, device or any combination thereof used to identify or distinguish a person's or organization's goods, products or services from those of others and to indicate or identify the origin or source of such goods, products or services, even if the origin or source is unknown. "Trademark" includes registered "trade dress" and "trade dress" which is used with or incorporates any "trademark".

**24.** "Trade dress" means the unregistered and non-functional distinctive packaging, appearance, image, design, color scheme or shape or combination thereof used to identify or distinguish a person's or organization's goods, products or services from those of others and to indicate or identify the origin or source of such goods, products or services, even if the source is unknown. "Trade dress" does not include:

   **a.** Registered "trade dress";

   **b.** "Trademark"; or

   **c.** "Trade dress" which is used with or incorporates any "trademark".

**25.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**26.** "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**27.** "Your work":

   **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1988, 1997, 2000, 2002, 2003.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY PLUS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**1.   EXTENDED WATERCRAFT LIABILITY**

Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.**, exclusion **(2)** is deleted and is replaced by the following:

**(2)**   A watercraft you do not own that is:

**(a)**   Less than 50 feet long; and
**(b)**   Not being used to carry persons or property for a charge;

**2.   BROADENED SUPPLEMENTARY PAYMENTS**

Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY** and **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**:

Paragraph **4.**, the amount we will pay for the actual loss of earnings is increased from $250 per day to $400 per day.

**3.   ADDITIONAL PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT**

If the endorsement, EXCLUSION - PRODUCTS COMPLETED OPERATIONS HAZARD, CG 21 04, is not attached to this policy, then the following is added to **SECTION III - LIMITS OF INSURANCE**:

Commencing with the effective date of this policy, we will provide one additional Products-Completed

Operations Aggregate Limit, for each annual period, equal to the amount of the Products-Completed Operations Aggregate Limit shown in the Declarations.  The maximum Products-Completed Operations Aggregate Limit for any annual period will be no more than two times the original Products-Completed Operations Aggregate Limit.

**4.   PERSONAL INJURY EXTENSION**

**a.**   If the endorsement EXCLUSION - PERSONAL INJURY AND ADVERTISING INJURY, 55350, is attached to this policy, then this provision, **4.** PERSONAL INJURY EXTENSION, does not apply.

**b.**   If the endorsement EXCLUSION -- PERSONAL INJURY AND ADVERTISING INJURY, 55350, is not attached to this policy, then under **SECTION V - DEFINITIONS, 15.** "Personal injury" is deleted and replaced by the following:

**15.**   "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

**a.**   False arrest, detention or imprisonment;

**b.**   Malicious prosecution;

**c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy; or

**f.** Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

## 5. BROADENED KNOWLEDGE OF OCCURRENCE

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**, the following paragraph is added:

Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

**a.** If the notice of a new claim is given to your "employee"; and

**b.** That "employee" fails to provide us with notice as soon as practicable.

This exception shall not apply:

**a.** To you; or

**b.** To any officer, director, partner, risk manager or insurance manager of yours.

## 6. DAMAGE TO PREMISES RENTED TO YOU

Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, the last paragraph is deleted and replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, lightning, explosion, smoke or water damage to premises rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in **6. DAMAGE TO PREMISES RENTED TO YOU, a.** Limits of Insurance.

The following additional exclusions apply to "property damage" arising out of Water Damage to premises rented to you or temporarily occupied by you with permission of the owner:

**(1)** "Property damage" to:

**(a)** The interior of the premises caused by or resulting from rain or snow, whether driven by wind or not; or

**(b)** Heating, air conditioning, plumbing or fire protection systems, or other equipment or appliances.

**(2)** "Property damage" caused by or resulting from any of the following:

**(a)** Mechanical breakdown, including bursting or rupture caused by centrifugal force;

**(b)** Cracking, settling, expansion or shrinking;

**(c)** Smoke or smog;

**(d)** Birds, insects, rodents or other animals;

**(e)** Wear and tear;

**(f)** Corrosion, rust, decay, fungus, deterioration, hidden or latent defect or any quality in property that causes such property to destroy or damage itself; or

**(g)** Water that flows or leaks from any heating, air conditioning, plumbing or fire protection system caused by or resulting from freezing, unless:

**1)** You make a reasonable effort to maintain heat in the building or structure; or

**2)** You drain the equipment and shut off the water supply if the heat is not maintained.

**(3)** "Property damage" caused directly or indirectly by any of the following:

**(a)** Water that backs up from a drain or sewer;

Agency Code   18-0067-00                                                    Policy Number   114618-80881833

**(b)** Mud flow or mudslide;

**(c)** Volcanic eruption, explosion or effusion;

**(d)** Any earth movement, such as earth-quake, landslide, mine subsidence, earth sinking, earth rising or earth shifting;

**(e)** Regardless of the cause, flood, surface water, waves, tides, tidal waves, storm surge, overflow of any body of water, or their spray, all whether wind driven or not;

**(f)** Water under the ground surface pressing on, or seeping or flowing through:

**1)** Walls, foundations, floors or paved surfaces;
**2)** Basements, whether paved or not; or
**3)** Doors, windows or other openings.

**(4)** "Property damage" for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of this contract or agreement.

**a.** **Limits of Insurance**

With respect to this coverage only, under **SECTION III - LIMITS OF INSURANCE**, paragraph **6.** is deleted and replaced by the following:

**6.** The most we will pay under Coverage **A** for damages because of "property damage" to premises rented to you or temporarily occupied by you with permission of the owner arising out of or caused by fire, lightning, explosion, smoke and water damage is the amount shown in the Declarations under Damage to Premises Rented to You.

**b.** Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, paragraph **b.**, the word fire is amended to include fire, lightning, explosion, smoke or water damage.

**7.** **BLANKET ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT**

**a.** **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization with whom you have agreed:

**(1)** In a written contract or agreement, executed prior to loss, to name as an additional insured, or

**(2)** In an oral contract or agreement, executed prior to loss, to name as an additional insured only if a Certificate of Insurance was issued prior to loss indicating that the person or organization was an additional insured

but only with respect to liability for:

**(1)** "Bodily injury";
**(2)** "Property damage";
**(3)** "Personal injury"; or
**(4)** "Advertising injury"

caused in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

**b.** With respect to the insurance afforded to an additional insured, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**c.** The following in added to **SECTION III - LIMITS OF INSURANCE:**

The Limits of Insurance for the additional insured are those specified in the written contract or agreement between the insured and the lessor, not to exceed the limits provided in this policy.  These limits are inclusive of and not in addition to the Limits of Insurance shown in the Declarations.

**8.** **BLANKET ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES**

**a.** **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization with whom you have agreed:

**(1)** In a written contract or agreement, executed prior to loss, to name as an additional insured; or

**(2)** In an oral contract or agreement, executed prior to loss, to name as an additional insured only if a Certificate of Insurance was issued prior to loss indicating that the person or organization was an additional insured

but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you.

**b.** The provision is subject to the following additional exclusions, applicable to this provision only:

**(1)** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**(2)** Structural alterations, new construction or demolition operations performed by or on behalf of the additional insured.

**c.** The following is added to **SECTION III - LIMITS OF INSURANCE**

The Limits of Insurance for the additional insured are those specified in the written contract or agreement between the insured and the manager or lessor of the premises, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the Limits of Insurance shown in the Declarations.

**9. NEWLY FORMED OR ACQUIRED ORGANIZATIONS**

Under **SECTION II - WHO IS AN INSURED**, Paragraph **4.** is deleted and replaced by the following.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited

liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**10. BLANKET WAIVER OF SUBROGATION**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 8. Transfer Of Rights Of Recovery Against Others To Us**.

When you have agreed to waive your right of subrogation in a written contract, executed prior to loss, with any person or organization, we waive any right of recovery we may have against such person or organization because of payments we make for injury or damage arising out of your on-going operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1982, 1988, 2002, 2004.

55405 (7-08)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A. Applicability Of This Endorsement**

1. **The provisions of this endorsement will apply if and when one of the following situations occurs:**

   a. **The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act), terminates; or**

   b. **The Program is renewed, extended or otherwise continued in effect:**

      (1) **With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and**

      (2) **We are not required by the Program to make terrorism coverage available to you and elect not to do so.**

2. **When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b., above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".**

3. **If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect.  However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.**

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

**c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

**a.** The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

**b.** It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.** The following exclusion is added:

**Exclusion Of "Terrorism"**
We will not pay for "bodily injury", "property damage", "personal injury" or "advertising injury" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". All "bodily injury", "property damage", "personal injury" or "advertising injury" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Agency Code   18-0067-00                                    Policy Number   114618-80881833

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# EMPLOYER'S LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1. SECTION I - COVERAGES** is amended as follows. Under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. EXCLUSIONS**, exclusion **e. Employer's Liability** is deleted and replaced by the following exclusion.

  **e. Employer's Liability**
    "Bodily injury" to:
    **(1)** An "employee" of any insured arising out of and in the course of employment by any insured; or
    **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
    This exclusion applies:
    **(1)** Whether any insured may be liable as an employer or in any other capacity; and
    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.
    This exclusion does not apply to liability assumed by any insured under an "insured contract".

**2. SECTION II - WHO IS AN INSURED** is amended as follows.
Paragraph **1.** is deleted and replaced by the following.
  **1.** If you are designated in the Declarations as:
    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
    **b.** A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
    **c.** A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.
    **e.** A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.
  However, with respect to paragraphs **1.a.** through **1.e.** above, no person is an insured for "bodily injury", "personal injury" or "advertising injury":
  **a.** To:
    **(1)** You and your spouse if the Named Insured is an individual;
    **(2)** Your members, your partners and their spouses if the Named Insured is a partnership or joint venture;
    **(3)** Your members if the Named Insured is a Limited Liability Company;
    **(4)** Your "executive officers" and directors if the Named Insured is other than a partnership, joint venture or limited liability company; or
    **(5)** Your trustees if the Named Insured is a trust.
  **b.** To an "employee" of any insured while in the course of his or her employment or performing duties related to the conduct of any insured's business.
  **c.** To any insured's "volunteer workers" while performing duties related to the conduct of any insured's business;
  **d.** To the spouse, child, parent, brother or sister of any "employee" or "volunteer worker" as a consequence of Paragraphs **b.** or **c.** immediately above.

**e.** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **a.**, **b.** and **c.** immediately above.

**f.** Arising out of his or her providing or failing to provide professional health care services.

All other policy terms and conditions apply.

55513 (11-11)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 2 of 2

55718 (11-15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft**, **Auto Or Watercraft** under **SECTION I - COVERAGES**, **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following.

   **2.  Exclusions**

     This insurance does not apply to:

     **g.  Aircraft, Auto Or Watercraft**

       **(1)  Unmanned Aircraft**

         "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".  Use includes operation and "loading or unloading".

         This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

       **(2)  Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

         "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

         This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

         This Paragraph **g.(2)** does not apply to:

         **(a)** A watercraft while ashore on premises you own or rent;

         **(b)** A watercraft you do not own that is:

           **(i)** Less than 26 feet long; and

           **(ii)** Not being used to carry persons or property for a charge;

         **(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

         **(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

         **(e)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY.

   **2.  Exclusions**

     This insurance does not apply to:

     **Unmanned Aircraft**

     "Personal injury" or "advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".  Use includes operation and "loading or unloading".

     This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal injury"

or "advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to **SECTION V - DEFINITIONS**.

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture

to be controlled directly by a person from within or on the aircraft.

All other policy terms and conditions apply.

**COMMERCIAL GENERAL LIABILITY**
**CG 24 16 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANOES OR ROWBOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Exclusion **g.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply to "bodily injury" or "property damage" arising out of any canoe or rowboat owned or used by or rented to the insured.

2. **Section II - Who Is An Insured** is amended to include as an insured any person or organization legally responsible for the use of any such canoe or rowboat you own, provided the actual use is with your permission.

CG 24 16 12 07                    © ISO Properties, Inc., 2006                    **Page 1 of 1**

54833 (7-08)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A. Applicability Of This Endorsement**

1.  **The provisions of this endorsement will apply if and when one of the following situations occurs:**

    a.  **The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act), terminates; or**

    b.  **The Program is renewed, extended or otherwise continued in effect:**

        (1) **With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and**

        (2) **We are not required by the Program to make terrorism coverage available to you and elect not to do so.**

2.  **When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b., above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".**

3.  **If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect.  However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide the revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.**

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1.  That involve the following or preparation for the following:

    a.  Use or threat of force or violence; or

    b.  Commission or threat of a dangerous act; or

    c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

**2.** When one or both of the following applies:

    **a.** The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

    **b.** It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.** The following exclusion is added:

**Exclusion Of "Terrorism"**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

**D.** **Exception To Exclusion Of "Terrorism" For Certain Fire Losses**

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage caused by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms or to the Legal Liability Coverage Form.

59351 (1-15)

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM
## and
## IMPORTANT INFORMATION REGARDING TERRORISM RISK INSURANCE COVERAGE

It is agreed:

**1.** The following definition applies:

**Certified act of terrorism** means any act certified by the Secretary of the Treasury, in consultation with:

**a**.  the Secretary of Homeland Security; and
**b**.  the Attorney General of the United States

to be an act of terrorism as defined and in accordance with the federal Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act).

Under the federal Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act) a terrorist act may be certified:

**a.**  if the aggregate covered commercial property and casualty insurance losses resulting from the terrorist act exceed $5 million; and

**b.**  **(1)**  if the act of terrorism is:

    **a)**  a violent act; or

    **b)**  an act that is dangerous to human life, property or infrastructure; and

  **(2)**  if the act is committed:

    **a)**  by an individual or individuals as part of an effort to coerce the civilian population of the United States; or

    **b)**  to influence the policy or affect the conduct of the United States government by coercion.

**2.**  The following exclusion is added:

We shall not pay:

**a.**  for any loss caused directly or indirectly by a **certified act of terrorism**, whether or not any other cause or event contributed concurrently or in any sequence to the loss.

**b.**  sums any insured becomes legally obligated to pay because of or arising out of bodily injury, property damage, personal injury or advertising injury, if covered by this insurance, caused by a **certified act of terrorism**.

All other policy terms and conditions apply.

# IMPORTANT INFORMATION REGARDING TERRORISM RISK INSURANCE COVERAGE

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002.  The Act (including ensuing Congressional actions pursuant to the Act) defines an act of terrorism, to mean any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be (i) an act of terrorism; (ii) to be a violent act or an act that is dangerous to human life, property or infrastructure; (iii) to have resulted in damage within the United States or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

At your request, this policy does not provide insurance coverage for certified acts of terrorism as defined in the Act.  "Excluded" is shown on the Declarations page under this coverage.  In the event of a certified act of terrorism, future policies also may include a government assessed terrorism loss risk-spreading premium in accordance with the provisions of the Act.

59351 (1-15)

59352 (1-15)

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM
# EXCEPTION FOR CERTAIN FIRE LOSSES
## and
## IMPORTANT INFORMATION REGARDING TERRORISM RISK
## INSURANCE COVERAGE

It is agreed:

1.  The following definition applies:

    **Certified act of terrorism** means any act certified by the Secretary of the Treasury, in consultation with:

    **a.**  the Secretary of Homeland Security; and
    **b.**  the Attorney General of the United States

    to be an act of terrorism as defined and in accordance with the federal Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act).

    Under the federal Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act) a terrorist act may be certified:

    **a.**  if the aggregate covered commercial property and casualty insurance losses resulting from the terrorist act exceed $5 million; and

    **b.**  **(1)**  if the act of terrorism is:

        **a)**  a violent act; or

        **b)**  an act that is dangerous to human life, property or infrastructure; and

    **(2)**  if the act is committed:

        **a)**  by an individual or individuals as part of an effort to coerce the civilian population of the United States; or

        **b)**  to influence the policy or affect the conduct of the United States government by coercion.

2.  The following exclusion is added:

    We shall not pay:

    **a.**  for loss caused directly or indirectly by a **certified act of terrorism**, whether or not any other cause or event contributed concurrently or in any sequence to the loss.  This exclusion shall not apply to direct physical damage caused by fire.
    **b.**  any sums any insured becomes legally obligated to pay because of or arising out of bodily injury, property damage, personal injury or advertising injury, if covered by this insurance, caused by a **certified act of terrorism.**

3.  With respect to any one or more **certified acts of terrorism**, we will not pay any amounts for which we are not responsible because of the application of any provision which results in a cap on our liability for payments for terrorism losses in accordance with the terms of the federal Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act).

All other policy terms and conditions apply.

# IMPORTANT INFORMATION REGARDING TERRORISM RISK
# INSURANCE COVERAGE

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002.  The Act (including ensuing Congressional actions pursuant to the Act) defines an act of terrorism, to mean any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be (i) an act of terrorism; (ii) to be a violent act or an act that is dangerous to human life, property or infrastructure; (iii) to have resulted in damage within the United States or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

At your request, this policy does not provide insurance coverage for certified acts of terrorism as defined in the Act, except as shown below.  "Excluded" is shown on the Declarations page under this coverage.  In the event of a certified act of terrorism, future policies also may include a government assessed terrorism loss risk-spreading premium in accordance with the provisions of the Act.

Subject to the terms and conditions of the policy and of this endorsement:

1.  if coverage is provided for building(s) and contents located in Arizona, Georgia, Illinois, Iowa, North Carolina or North Dakota, you will have fire coverage for such property following a certified act of terrorism.

2.  if coverage is provided for building(s), contents or property covered by an inland marine policy located in Missouri or Wisconsin, you will have fire coverage for such property following a certified act of terrorism.

At this time, we are not imposing an additional premium charge for fire coverage to such property following a certified act of terrorism.

59352 (1-15)                                                                                                          Page 2 of 2

IL 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

      BOILER AND MACHINERY COVERAGE PART
      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL AUTOMOBILE COVERAGE PART
      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
      FARM COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      PROFESSIONAL LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued.  On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 00 03 07 02

IL 00 17 11 85

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATIONS OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

 Copyright, Insurance Services Office, 1982, 1983

**F.  TRANSFER OF YOUR RIGHTS AND DUTIES
UNDER THIS POLICY**

Your rights and duties under this policy may not be
transferred without our written consent except in the
case of death of an individual named insured.

If you die, your rights and duties will be transferred
to your legal representative but only while acting
within the scope of duties as your legal representa-
tive. Until your legal representative is appointed,
anyone having proper temporary custody of your
property will have your rights and duties but only
with respect to that property.

    Copyright, Insurance Services Office, 1982, 1983

Case 1:21-cv-00707-JPB    Document 1-1    Filed 02/18/21    Page 185 of 239

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE  COVERAGE PART
COMMERCIAL GENERAL  LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located

within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 00 21 07 02                    Copyright, Insurance Services Office, Inc., 1983, 1984                    Page 2 of 2

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation, stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.
Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:
If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us.  Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

a. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

b. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

c. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.**:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

a. Nonpayment of premium, whether payable to us or to our agent;

b. Upon discovery of fraud, concealment of a material fact, or material misrepresentative made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

d. Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b.**, **c.** or **d.** above.

E. With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

1. We will make two documented efforts to send you and your agent notification of potential cancellation.  After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

2. If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

 © Insurance Services Office, Inc., 2014

# SUPERIOR COURT OF HENRY COUNTY
# STATE OF GEORGIA

⚜ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

**SUCV2021000137**
PP
**JAN 15, 2021 01:48 PM**

Sabriya Hill, Clerk
Henry County, Georgia

CIVIL ACTION NUMBER  <u>SUCV2021000137</u>

KISNA ENTERPRISES LLC , DBA DBA LA
QUINTA INN & SUITES

---

**PLAINTIFF**

VS.

AUTO-OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE
COMPANY

---

**DEFENDANTS**

## SUMMONS

TO: AUTO-OWNERS INSURANCE COMPANY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **William Merlin, Jr.**
> **Merlin Law Group, PA**
> **777 S. Harbour Island Boulevard**
> **Suite 950**
> **Tampa, Florida 33602**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If this action pertains to a Protective Order, the Answer is to be filed and served on or before the scheduled hearing date attached. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 15th day of January, 2021.**

Clerk of Superior Court

---

Sabriya Hill, Clerk
Henry County, Georgia

Page 1 of 1

# SUPERIOR COURT OF HENRY COUNTY
# STATE OF GEORGIA

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

**SUCV2021000137**
PP
**JAN 15, 2021 01:48 PM**

Sabriya Hill, Clerk
Henry County, Georgia

CIVIL ACTION NUMBER  <u>SUCV2021000137</u>

KISNA ENTERPRISES LLC , DBA DBA LA
QUINTA INN & SUITES

_____

**PLAINTIFF**

**VS.**

AUTO-OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE
COMPANY

_____

**DEFENDANTS**

**SUMMONS**

TO: PROPERTY-OWNERS INSURANCE COMPANY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **William Merlin, Jr.**
> **Merlin Law Group, PA**
> **777 S. Harbour Island Boulevard**
> **Suite 950**
> **Tampa, Florida 33602**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If this action pertains to a Protective Order, the Answer is to be filed and served on or before the scheduled hearing date attached. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 15th day of January, 2021.**

Clerk of Superior Court

_____
Sabriya Hill, Clerk
Henry County, Georgia

Page 1 of 1

## AFFIDAVIT OF SERVICE

✦ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

**SUCV2021000137**
PP
**FEB 09, 2021 12:00 PM**

*Sabriya Hill, Clerk
Henry County, Georgia*

State of Georgia                                     County of HENRY

Case Number: SUCV2021000137

Plaintiff:
**KISNA ENTERPRISES, LLC DBA LA QUINTA INN & SUITES,**

vs.

Defendant:
**AUTO-OWNERS INSURANCE COMPANY AND PROPERTY-OWNERS INSURANCE COMPANY,**

For:
WILLIAM MERLIN, JR.
MERLIN LAW GROUP, PA

Received by Discrete Professional Services L. L. C. on the 19th day of January, 2021 at 11:26 am to be served on **AUTO-OWNERS INSURANCE COMPANY c/o REGISTERED AGENT: CT CORPORATION SYSTEM, 289 S CULVER ST, LAWRENCEVILLE, GA 30046**.

I, MUHSIN S. HASSAN, being duly sworn, depose and say that on the **19th day of January, 2021** at **1:10 pm, I:**

served a **REGISTERED AGENT** by delivering a true copy of the **SUMMONS and COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH DAMAGES WITH DEMAND FOR JURY TRIAL and EXHIBITS** to: **LINDA BANKS** for **The REGISTERED AGENT,** at the address of: **289 S CULVER ST, LAWRENCEVILLE, GA 30046** on behalf of **AUTO-OWNERS INSURANCE COMPANY**, and informed said person of the contents therein, in compliance with state statutes.

The recipient description below is approximate to the best of the Process Server's knowledge and abilities.

I am over the age of 18, of sound mind and neither a party to nor interested in the above suit.  I have personal knowledge of the facts stated above.  I have never been convicted of a felony or misdemeanor involving moral turpitude in any state or federal jurisdiction.

Subscribed and Sworn to before me on this
____20____ day of ___JANUARY___ , 20_21___ , by the
affiant who is personally known to me or has show
acceptable identification.

_Ernestine Bell_
NOTARY PUBLIC

**MUHSIN S. HASSAN**

**Discrete Professional Services L. L. C.**
P.O. Box 451081
Atlanta, GA 31145
**(470) 454-3107**

Our Job Serial Number: DIS-2021000057
Ref: KISNA ENTERPRISES v. AUTO OWNERS, et.al.

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1u

## AFFIDAVIT OF SERVICE

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

**SUCV2021000137**
PP

FEB 09, 2021 01:00 PM

Sabriya Hill, Clerk
Henry County, Georgia

State of Georgia                                        County of HENRY

Case Number: SUCV2021000137

Plaintiff:
**KISNA ENTERPRISES, LLC DBA LA QUINTA INN & SUITES,**

vs.

Defendant:
**AUTO-OWNERS INSURANCE COMPANY AND PROPERTY-OWNERS INSURANCE COMPANY,**

For:
WILLIAM MERLIN, JR.
MERLIN LAW GROUP, PA

Received by Discrete Professional Services L. L. C. on the 19th day of January, 2021 at 11:26 am to be served on **PROPERTY-OWNERS INSURANCE COMPANY c/o REGISTERED AGENT: CT CORPORATION SYSTEM, 289 S CULVER ST, LAWRENCEVILLE, GA 30046**.

I, MUHSIN S. HASSAN, being duly sworn, depose and say that on the **19th day of January, 2021** at **1:10 pm, I:**

served a **REGISTERED AGENT** by delivering a true copy of the **SUMMONS and COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH DAMAGES WITH DEMAND FOR JURY TRIAL and EXHIBITS** to: **LINDA BANKS** for **The REGISTERED AGENT,** at the address of: **289 S CULVER ST, LAWRENCEVILLE, GA 30046** on behalf of **PROPERTY-OWNERS INSURANCE COMPANY**, and informed said person of the contents therein, in compliance with state statutes.

The recipient description below is approximate to the best of the Process Server's knowledge and abilities.

I am over the age of 18, of sound mind and neither a party to nor interested in the above suit. I have personal knowledge of the facts stated above. I have never been convicted of a felony or misdemeanor involving moral turpitude in any state or federal jurisdiction.

Subscribed and Sworn to before me on this
_____ 20____ day of _JANUARY_ , 20_21_ , by the
affiant who is personally known to me or has show
acceptable identification.

_Ernestine Bell_
NOTARY PUBLIC

**MUHSIN S. HASSAN**

**Discrete Professional Services L. L. C.**
P.O. Box 451081
Atlanta, GA 31145
**(470) 454-3107**

Our Job Serial Number: DIS-2021000056
Ref: KISNA ENTERPRISES v. AUTO OWNERS, et.al.

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.1u

**IN THE SUPERIOR COURT OF HENRY COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| KISNA ENTERPRISES, LLC, DBA LA QUINTA INN & SUITES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: |
| AUTO-OWNERS INSURANCE COMPANY COMPANY and PROPERTY-OWNERS INSURANCE COMPANY, | ) ) ) ) | SUCV2021000137 |
| Defendants. | ) | |

**DEFENDANTS AUTO-OWNERS INSURANCE COMPANY
AND PROPERTY-OWNERS INSURANCE COMPANY'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

COMES NOW, Auto-Owners Insurance Company and Property-Owners Insurance Company (collectively, "Defendants") by and through the undersigned attorneys and hereby files this, their Answer and Affirmative Defenses to Plaintiff's Complaint, and state as follows:

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Complaint fails to state a claim against Defendants upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff is unable to recover from Defendant Auto-Owners Insurance Company because it is not the real party in interest to any contract of insurance

issued by Auto-Owners.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendant Auto-Owners Insurance Company are barred by lack of privity. More specifically, the policy of insurance at issue in this litigation was issued by Defendant Property-Owners Insurance Company, not Auto-Owners, which is a separate and distinct company.

## FOURTH AFFIRMATIVE DEFENSE

Defendant Auto-Owners Insurance Company is not liable to Plaintiff because no contract of insurance existed between Plaintiff and Auto-Owners.

## FIFTH AFFIRMATIVE DEFENSE

Defendant Auto-Owners Insurance Company is not a proper party to this lawsuit as it had no contractual relationship with Plaintiff and had no duty, contractual or otherwise, to Plaintiff related to the Claim.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has no standing to bring any action against Defendant Auto-Owners Insurance Company.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover the damages set forth in its Complaint because, upon information and belief, this amount does not represent the reasonable cost to repair or replace the damaged property with equivalent construction for equivalent use and to return Plaintiff to its pre-loss condition.

-2-

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to impose duties upon Defendants aside from those set forth in the insurance contract, Plaintiff fails in both fact and law. Georgia law does not impose extra-contractual duties on insurers when adjusting claims asserted by insureds. Moreover, at all times relevant hereto, Defendants acted in good faith and in accordance with the terms and conditions of the policy.

## NINTH AFFIRMATIVE DEFENSE

Defendant Property-Owners has not breached any duty owed under its insurance contract with Plaintiff, and, therefore, Plaintiff may not recover from Property-Owners in any sum or manner whatsoever.

## TENTH  AFFIRMATIVE DEFENSE

Plaintiff's prayer for bad faith penalties is insufficient in both fact and law. Defendants have, at all times, acted in good faith and with reasonable and probable cause with respect to the actions it has taken. Plaintiff fails to state a claim for bad faith which would entitle Plaintiff to recovery attorneys' fees and expenses.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendants are entitled to a set off against any award to Plaintiff in the amount of those amounts already paid to or on behalf of Plaintiff arising out of the claim which is the subject of this litigation.

## TWELFTH  AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the affirmative defenses of accord and

satisfaction and payment.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert a claim for attorney's fees or extra-contractual damages against Defendants pursuant to any other statute or law aside from O.C.G.A. § 33-4-6, Plaintiff may not recover because O.C.G.A. § 33-4-6 is the exclusive remedy for extra-contractual damages, including bad faith penalties or attorneys' fees, recoverable by an insured against its insurer based on a failure to pay policy benefits.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is estopped from bringing this action against Defendants and from seeking additional damages against Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendants under the subject insurance policy because Plaintiff breached the terms and conditions of the policy.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover from Defendants because Plaintiff failed to satisfy its duties under the policy. Specifically, the policy provides as follows:

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**E.    LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

. . .

**3.    Duties In The Event Of Loss Or Damage**

a.    You must see that the following are done in the event of loss or damage to Covered Property:

(1)    Notify the police if a law may have been broken.

(2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

(3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)    Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5)    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6)    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for

-5-

                inspection, testing and analysis, and permit us to make copies from your books and records.

(7)      Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)      Cooperate with us in the investigation or settlement of the claim.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover additional benefits for loss of business income because Defendant Property-Owners has satisfied the coverage limits for coverage under this Policy. Specifically, the Policy provides:

**BUSINESS INCOME (AND EXTRA EXPENSE)**
**ACTUAL LOSS SUSTAINED**
**COVERAGE FORM**

. . .

**A.    COVERAGE**

    **1.    Business Income**

    . . .

        b.    We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which ACTUAL LOSS SUSTAINED is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the

site at which the described premises are located.

. . .

    c.    We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover replacement cost benefits for business personal property items because Plaintiff has not complied with the policy provisions regarding recovery of such benefits. Specifically, the policy provides as follows:

**BUILDING AND PERSON PROPERTY
COVERAGE FORM**

. . .

**G.    OPTIONAL COVERAGES**

. . .

    **3.    Replacement Cost**

        . . .

        d.    We will not pay on a replacement cost basis for any loss or damage:

            (1)    Until the lost or damaged property is actually repaired or replaced; and

            (2)    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

            . . .

     e.      We will not pay more for loss or damage on a replacement cost basis than the least of (**1**), (**2**), or (**3**), subject to **f.** below:

        (1)     The Limit of Insurance applicable to the lost or damaged property;

        (2)     The cost to replace the lost or damaged property with other property:

            (a)     Of comparable material and quality; and

            (b)     Used for the same purpose; or

        (3)     The amount actually spent that is necessary to repair or replace the lost or damaged property.

        If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to additional coverage under the policy because Plaintiff violated its duty to read the policy in accordance with Georgia law. Therefore, Plaintiff is estopped by its own conduct and negligence from recovering additional amounts on the policy.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against Defendants pursuant to O.C.G.A. § 33-4-6, Plaintiff is barred from asserting any such bad faith demand because it failed to satisfy the procedural requirements of O.C.G.A. § 33-4-6, including, but not limited to, asserting any proper and timely bad faith demand and waiting the statutory period of 60 days prior to filing suit.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against Defendants pursuant to O.C.G.A. § 33-4-6, Plaintiff may not recover because its claim is legally and factually insufficient. Defendants have at all times, acted in good faith and with fair dealing with respect to Plaintiff's claim.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendant on the basis of laches.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery in this matter because it failed to cooperate with Defendant Property-Owners investigation and adjustment of this claim.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to impose duties upon Defendants aside from those set forth in the Insurance contract issued by Defendant Property-Owners Insurance Company, Plaintiff fails in both fact and law. Georgia law does not impose extra-contractual duties on insurers when adjusting claims asserted by insureds. Moreover, at all times relevant hereto, both Defendants acted in good faith and in accordance with the terms and conditions of the Policy.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff has waived any right to bring this action against Defendants.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff cannot recover from Defendants because Plaintiff has failed to satisfy

a condition precedent to bringing this action against Defendants. The Policy provides:

**D.     LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1.     There has been full compliance with all of the terms of this Coverage Part; and
2.     The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

<u>**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**</u>

Plaintiff may not recover from Defendants for certain damages sought in this matter because these damages are the result of losses not insured under the policy. Specifically, the policy provides:

**CAUSES OF LOSS – SPECIAL FORM**

. . .

2.     We will not pay for loss or damage caused by or resulting from any of the following:

. . .

i.     Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

. . .

m.     Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

. . .

3.     We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. However, if an excluded

cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss

. . .

    c.    Faulty, inadequate or defective:

        (1)    Planning, zoning, development, surveying, siting;
        (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3)    Materials used in repair, construction, renovation or remodeling; or
        (4)    Maintenance

    of part or all of any property on or off the described premises.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks payment under any of the coverages afforded by the Policy, Plaintiff is circumscribed by the applicable Policy limits for those coverages. (See Policy, BUILIDNG AND PERSONAL PROPERTY COVERAGE FORM, C – LIMITS OF INSURANCE, (1)).

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover because the Plaintiff's claim was not payable in accordance with the terms and provisions of the Policy. The Policy provides:

**4.**    **Loss Payment**

    . . .

    g.    We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

  (1) We have reached agreement with you on the amount of loss; or

  (2) An appraisal award has been made

## THIRTIETH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks benefits for repairs to the structure of the property and/or the replacement of items of business personal property, Plaintiff is limited to the amount actually incurred to effectuate these repairs and/or replacements.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks benefits for additional damages to the structure , business personal property and/or loss of business income, Plaintiff is barred from recovering benefits for which it did not provide supporting evidence or information during the claim adjustment process.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff may not recover from Defendants because Plaintiff failed to mitigate its damages.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Defendants respond to the specific allegations of Plaintiff's complaint as follows:

## FACTUAL ALLEGATIONS[1]

## PARTIES

1.      Upon information and belief, Defendants admit the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.      Defendants admit the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.      Defendants admit the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      Defendants admit the allegations contained in Paragraph 4 of Plaintiff's Complaint.

5.      Defendants admit the allegations contained in Paragraph 5 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

6.      In response to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Defendants admit that this Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 6 are denied, including any implication that this Court is the only court to have subject matter jurisdiction

---

[1] Defendants contend that Defendant Auto-Owners Insurance Company is an improper party to this action. Defendants raised the appropriate affirmative defenses to pursue this defense. However, Defendants respond to these factual allegations subject to this defense.

over this action and/or personal jurisdiction over Defendants and/or that Defendants' registered agents are located in Henry County, Georgia.

7.     In response to the allegations contained in Paragraph 7 of Plaintiff's Complaint, Defendants admit that venue is proper in this Court but deny all remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.

## GENERAL ALLEGATIONS

8.     Upon information and belief, Defendants admit the allegations contained in Paragraph 8 of Plaintiff's Complaint. Defendants deny that Defendant Auto-Owners is a proper party to this action.

9.     In response to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Defendant Property-Owners admits only that it issued policy number 114618-80881833-18 (the "Policy") to Plaintiff and that the Policy was in effect at the time of the loss. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 9 of Plaintiff's Complaint are denied, including but not limited to any allegations that the Policy offered unfettered and unrestricted insurance coverage for the Property and any allegations that Defendant Auto-Owners issued any insurance policy to Plaintiff.

10.     In response to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Defendants admit only that the Policy provided insurance coverage to property located at 3581 Cameron Parkway, Henry County, Stockbridge, Georgia 302811 (the "Property"), subject to its terms and conditions, and that the terms and

provisions of the Policy speak for themselves. Defendants deny all remaining allegations contained in Paragraph 10 of Plaintiff's Complaint, including but not limited to, any and all allegations in direct contradiction to the express terms and provisions of the Policy. Defendants deny that the Policy provided unfettered and/or unrestricted insurance coverage for the Property.   .

11.     Defendants admit the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.     In response to the allegations contained in Paragraph 12 of Plaintiff's Complaint, Defendants admit only that the Property sustained a fire loss on January 15, 2019. Defendants admit that portions of the Property were damaged by water and that Plaintiff submitted a claim for loss of business income. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 12 are denied, including, but not limited to, any allegations regarding the severity of the damages claimed.

13.     In response to the allegations contained in Paragraph 13 of Plaintiff's Complaint, Defendants admit only that the Policy was in full force and effect at the time of the loss, subject to the terms and conditions contained therein and applicable Georgia law. By way of further response, Defendants state that the Policy speaks for itself and any attempt to characterize or interpret its provisions in direct contradiction to their plain and express meaning is expressly denied. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 13 are denied.

14.     In response to the allegations contained in Paragraph 14 of Plaintiff's Complaint, Defendants admit only that Plaintiff initiated claim number 300-0018468-2019 (the "Claim") on or about January 16, 2019, relative to a fire loss that occurred on January 15, 2019. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 14 are denied, including, but not limited to, any allegation that there was coverage under the Policy for all damages asserted by Plaintiff and that Plaintiff immediately and properly mitigated its damages and losses.

15.     In response to the allegations contained in Paragraph 15 of Plaintiff's Complaint, Defendants admits only that Defendant Property-Owners assigned Claim number 300-18468-2019 to the Claim. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 15 of Plaintiff's Complaint are denied.

16.     Defendants deny the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.     In response to the allegations contained in Paragraph 17 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 17 of Plaintiff's Complaint in direct contradiction thereto. Defendants deny any allegations contained in Paragraph 17 that Defendants failed to conduct a proper claim investigation or capriciously denied Plaintiff's claim in whole or in part.

-16-

18.     Defendants deny the allegations contained in Paragraph 18 of Plaintiff's Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.     In response to the allegations contained in Paragraph 20 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 20 of Plaintiff's Complaint in direct contradiction thereto.   Defendants deny that they violated any term or provision of the Policy or any applicable Georgia law.

21.     In response to the allegations contained in Paragraph 21 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 21 of Plaintiff's Complaint in direct contradiction thereto. Defendants deny all allegations contained in Paragraph 21 that Defendants have devalued the Claim or have otherwise based any claim decision on any standards known to be impermissible or on an interpretation contrary to established law.  Defendants deny that they violated any term or provision of the Policy or any applicable Georgia law.

22.     Defendants deny the allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.     Defendants deny the allegations contained in Paragraph 23 of Plaintiff's Complaint.

## COUNT I
## (BREACH OF CONTRACT)

24.     To the extent a response is required to the allegations contained in Paragraph 24 of Plaintiff's Complaint, Defendants incorporate herein by reference their responses to Plaintiff's enumerated Paragraphs 1 through 23.

25.     In response to the allegations contained in Paragraph 25 of Plaintiff's Complaint, Defendants admit that this action is, in part, a breach of contract action and that the Policy was in full force and effect at the time of the loss, subject to the terms and conditions contained therein and applicable Georgia law. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 25 are denied including any allegations that Defendants violated any term of the Policy or otherwise acted in bad faith.

26.     In response to the allegations contained in Paragraph 26 of Plaintiff's Complaint, Defendants admit only that the Property sustained a fire loss on January 15, 2019 and that portions of the Property were damaged. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 26 are denied, including, but not limited to, any allegations regarding the extent of the damages claimed or that there was coverage under the Policy for all of the damages asserted by Plaintiff.

27.     In response to the allegations contained in Paragraph 27 of Plaintiff's Complaint, Defendants admit only that Plaintiff initiated the Claim on or about January 16, 2019, relative to a fire loss that occurred on January 15, 2019. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 27 are denied.

28.     In response to the allegations contained in Paragraph 28 of Plaintiff's Complaint, Defendants admit only that the mitigation contractor submitted an invoice to Defendants for mitigation services performed at the Property, which invoice totaled $356,410.29. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 28 are denied, including, but not limited to, any allegations that Plaintiff "incurred" costs related to mitigation or that Plaintiff immediately and properly mitigated its damages and losses.

29.     In response to the allegations contained in Paragraph 29 of Plaintiff's Complaint, Defendants admit only that Plaintiff permitted Defendant Property-Owners to inspect the Property and provided some of the documents and information requested by Defendants. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 29 are denied.

30.     In response to the allegations contained in Paragraph 30 of Plaintiff's Complaint, Defendants admit that claim representative Matt Marden was initially assigned as the principal claim handler for the Claim. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 30 are denied.

31.     In response to the allegations contained in Paragraph 31 of Plaintiff's Complaint, Defendants admit only that Defendant Property-Owners retained third-party, independent salvage company Shamrock Salvage to inspect the business personal property items in the Property following the loss. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 31 of Plaintiff's Complaint are denied.

32.     In response to the allegations contained in Paragraph 32 of Plaintiff's Complaint, Defendants admit only that Defendant Property-Owners inspected the Property following the loss. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 32 of Plaintiff's Complaint are denied.

33.     In response to the allegations contained in Paragraph 33 of Plaintiff's Complaint, Defendants admit that Defendant Property-Owners issued payment for elevator repairs in the amount of $18,122.22 and mitigation repairs in the amount of $356,410.29. Defendants deny that such payments were issued on February 12, 2019. By way of further response, Defendants state that payment was issued for mitigation repairs on February 8, 2019, and for elevator repairs on April 8, 2019. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 33 are denied.

34.     In response to the allegations contained in Paragraph 34 of Plaintiff's Complaint, Defendants admit that, on or about March 8, 2019, Mr. Marden prepared an initial estimate for structural repairs, which estimate was based on information

-20-

available to Mr. Marden at the time the estimate was prepared. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 34 are denied.

35.     In response to the allegations contained in Paragraph 35 of Plaintiff's Complaint, Defendants admit that on or about April 11, 2019, payment was issued to Plaintiff for structural repairs, which payment totaled $634,729.79.   Except as otherwise herein admitted, all remaining allegations contained in Paragraph 35 are denied, including, but not limited to, any allegation that the payment was inadequate or improper pursuant to the information available to Defendants at the time said payment was issued. Defendants deny any allegations contained in Paragraph 35 that they have failed to pay any benefits owed to Plaintiff.

36.     In response to the allegations contained in Paragraph 36 of Plaintiff's Complaint, Defendants admit only that Plaintiff notified Defendant Property-Owners that it disputed Defendants Property-Owners' valuation of the damages.  Defendants admit further that that Plaintiff, through its public adjuster, provided Defendant Property-Owners with certain documents. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 36 are denied, including, but not limited to, any allegation that Plaintiff promptly submitted such information and documents, that Plaintiff submitted all of the documents requested by Defendant Property-Owners and/or that Defendants have failed to pay any benefits owed to Plaintiff.

37.     Defendants deny the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.     In response to the allegations contained in Paragraph 38 of Plaintiff's Complaint, Defendants admit only that Plaintiff claimed that certain items of Plaintiff's damaged business personal property have been discarded and seeks payment for those items from Defendants.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 38 are denied, including, but not limited to, any allegation that Defendants, and/or anyone retained by Defendants, discarded Plaintiff's damaged business personal property items.

39.     In response to the allegations contained in Paragraph 39 of Plaintiff's Complaint, Defendants admit that Defendant Property-Owners, or its representatives, have communicated in a timely manner with Plaintiff and/or its representatives regarding the Claim. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 39 are denied, including, but not limited to, any mischaracterization of correspondence between Defendants and Plaintiff, which correspondence speaks for itself and/or any allegations that Defendant acted untimely.

40.     In response to the allegations contained in Paragraph 40, Defendants admit that Plaintiff transmitted a purported appraisal demand to Defendant Property-Owners on September 25, 2019. By way of further response, Defendants specifically deny that Plaintiff's purported appraisal demand was proper and/or that the disputes

in this matter are subject to appraisal. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 40 are denied, including, but not limited to, any allegation that Defendants violated any duty set forth by the Policy.

41.     In response to the allegations contained in Paragraph 41 of Plaintiff's Complaint, Defendants admit that, on October 8, 2019, Defendant Property-Owners acknowledged receipt of Plaintiff's purported appraisal demand and indicated that a reply was forthcoming. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 41 are denied, including, but not limited to, any allegations that the Plaintiff's purported appraisal demand was proper, timely, or that the issues in dispute in this matter are subject to appraisal.

42.     In response to the allegations contained in Paragraph 42 of Plaintiff's Complaint, Defendants admit only that there was a difference in scope of work for the structural repairs to the Property between Plaintiff and Defendant Property-Owners. Defendants further admit that Defendant Property-Owners and representatives of Plaintiff exchanged communications during the claim, but state that these communications speak for themselves and deny all allegations contained in Paragraph 42 in direct contravention thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 42 of Plaintiff's Complaint are denied.

43.     In response to the allegations contained in Paragraph 43 of Plaintiff's Complaint, Defendants state that the written documents exchanged in this Claim speak for themselves and denies all allegations in direct contravention to the plain,

express language of the documents.

44.    In response to the allegations contained in Paragraph 44 of Plaintiff's Complaint, Defendants admit only that Plaintiff and Defendants disagree as to the scope of repairs to the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 44 are denied, including, but not limited to, any allegations that appraisal is an appropriate avenue to resolve issues as to scope of repairs.

45.    Defendants admit the allegations contained in Paragraph 45 of Plaintiff's Complaint.

46.    In response to the allegations contained in Paragraph 46 of Plaintiff's Complaint, Defendants admit only that Defendant Property-Owners rejected Plaintiff's purported appraisal demand as premature, untimely, unsupported, and legally improper. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 46 are denied, including, but not limited to, any allegation that Defendants violated any duty set forth by the Policy.

47.    In response to the allegations contained in Paragraph 47 of Plaintiff's Complaint, Defendants state that the written documents exchanged in this Claim speak for themselves and denies all allegations in direct contravention to the plain, express language of the documents.

48.    Defendants deny all allegations contained in Paragraph 48 of Plaintiffs' Complaint.

49.    Defendants deny all allegations contained in Paragraph 49 of Plaintiffs' Complaint.

50.    All allegations contained in Paragraph 50 of Plaintiff's Complaint are denied, including, but not limited to, any allegations that Defendants failed to conduct a proper claim investigation or that they have failed to issue payment for covered damages to the Property pursuant to the terms and conditions of the Policy and applicable Georgia law.

51.    In response to the allegations contained in Paragraph 51 of Plaintiff's Complaint, Defendants admit only that Plaintiff sent a letter to Defendants dated November 14, 2020, and that the letter speaks for itself. Defendants specifically deny that the letter constituted a proper demand under O.C.G.A. § 33-4-6. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 51 are denied.

52.    In response to the allegations contained in Paragraph 52 of Plaintiff's Complaint, Defendants admit only that Defendant Property-Owners issued payment of $88,854.39 as payment for part of the undisputed damages in this matter. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 52 of Plaintiff's Complaint are denied.

53.    In response to the allegations contained in Paragraph 53 of Plaintiff's Complaint, Defendants admit only that Plaintiff is claiming a replacement cost value of $630,336.58 for allegedly damaged business personal property.   Except as

otherwise herein admitted, all remaining allegations contained in Paragraph 53 of Plaintiff's Complaint are denied.

54.    Defendants deny the allegations contained in Paragraph 54 of Plaintiff's Complaint as stated. By way of further response, Defendants state that payment was issued in the amount of $42,616.22 for recoverable depreciation and costs to repair damage to the roof area. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 54 are denied.

55.    In response to the allegations contained in Paragraph 55 of Plaintiff's Complaint, Defendant admits only that Plaintiff requests that Defendants pay for a complete roof replacement for the Property.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 55 of Plaintiff's Complaint are denied, including but not limited to any allegation that the entire roof of the hotel requires replacement.

56.    Defendants deny the allegations contained in Paragraph 56 of Plaintiff's Complaint. By way of further response, Defendants state that the January 8, 2021 letter speaks for itself and specifically deny any attempts by Plaintiff to mischaracterize the letter.

57.    Defendants deny the allegations contained in Paragraph 57 of Plaintiff's Complaint.

58.    Defendants deny the allegations contained in Paragraph 58 of Plaintiff's Complaint.

59.    In response to the allegations contained in Paragraph 59 of Plaintiff's Complaint, Defendants admit only that the Property sustained a fire loss and that portions of the Property were damaged. Defendants lack sufficient information to either admit or deny any allegation as to whether Plaintiff "continues to suffer the loss," and, thus, Defendants deny that allegation. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 59 are denied.

60.    Defendants deny the allegations contained in Paragraph 60 of Plaintiff's Complaint.

61.    Defendants deny the allegations contained in Paragraph 61 of Plaintiff's Complaint.

62.    Defendants deny the allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.    Defendants deny the allegations contained in Paragraph 63 of Plaintiff's Complaint.

64.    Defendants deny the allegations contained in Paragraph 64 of Plaintiff's Complaint.

65.    In response to the allegations contained in Paragraph 65 of Plaintiff's Complaint, Defendants admit only that Plaintiff has provided some of the documents requested by Defendant Property-Owners. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 65 are denied, including, but not limited to, any allegations that Defendants have not paid Plaintiff all owed insurance

benefits and all allegations that Plaintiff complied with all of the terms and provisions of the Policy.

66.    In response to the allegations contained in Paragraph 66 of Plaintiff's Complaint, Defendants admit only that Plaintiff permitted Defendant Property-Owners to inspect the Property and provided some of the documents requested by Defendant Property-Owners. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 66 are denied including, but not limited to, any allegations that Defendants have not paid Plaintiff all owed insurance benefits and all allegations that Plaintiff complied with all of the terms and provisions of the Policy.

67.    Defendants deny the allegations contained in Paragraph 67 of Plaintiff's Complaint

68.    Defendants deny the allegations contained in Paragraph 68 of Plaintiff's Complaint.

69.    Defendants deny the allegations contained in Paragraph 69 of Plaintiff's Complaint.

70.    In response to the allegations contained in Paragraph 70 of Plaintiff's Complaint, Defendants admit only that Plaintiff has provided some of the documents requested by Defendant Property-Owners and that the terms and provisions of the Policy and applicable Georgia law speak for themselves. Thus, Defendants deny all allegations contained in Paragraph 70 in direct contradiction thereto. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 70 are

denied.

71.   In response to the allegations contained in Paragraph 71 of Plaintiff's Complaint, Defendants admit only that Plaintiff has provided some of the documents and information requested by Defendant. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 71 are denied.

72.   Defendants deny all allegations contained in Paragraph 72 of Plaintiff's Complaint.

73.   Defendants deny the allegations contained in Paragraph 73 of the Complaint. Defendants deny that they breached the Policy and/or otherwise violated any duty set forth by the Policy.

74.   In response to the allegations contained in Paragraph 74 of the Complaint, Defendants admit only that Georgia law speaks for itself and deny all allegations contained in Paragraph 74 in direct contradiction thereto. Defendants deny that they breached the Policy and/or otherwise violated any duty set forth by the Policy.

75.   Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.   Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.   In response to the allegations contained in Paragraph 77 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and

applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 77 in direct contradiction thereto. Defendants deny any allegations contained in Paragraph 77 that they have failed to issue payment for covered damages to the Property pursuant to the terms and conditions of the Policy and applicable Georgia law.  Defendants deny all remaining allegations contained in Paragraph 77 of Plaintiff's Complaint.

78.    In response to the allegations contained in Paragraph 78 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 78 in direct contradiction thereto. Defendants deny any allegations contained in Paragraph 78 that they failed to conduct a proper claim investigation and that Defendants ignored evidence that would support Plaintiff's claim. Defendants deny all remaining allegations contained in Paragraph 78 of Plaintiff's Complaint.

79.    In response to the allegations contained in Paragraph 79 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and applicable Georgia law speak for themselves and deny all allegations contained in Paragraph 79 in direct contradiction thereto. Defendants deny all remaining allegations contained in Paragraph 79 of Plaintiff's Complaint.

80.    Defendants deny all allegations in Paragraph 80 of Plaintiff's Complaint.

81.     Defendants deny all allegations contained in Paragraph 81 of Plaintiff's Complaint.

82.     Defendants deny the allegations contained in Paragraph 82 of Plaintiff's Complaint.

83.     Defendants deny the allegations contained in Paragraph 83 of Plaintiff's Complaint.

84.     Defendants deny the allegations contained in Paragraph 84 of Plaintiff's Complaint.

85.     Defendants state that no response is required to the jury demand set forth in Paragraph 85 of Plaintiff's Complaint. Defendants deny, however, that Plaintiff is entitled to recover any additional proceeds from Defendants related to the claims set forth herein and deny all allegations set forth in Plaintiff's Prayer for Relief for Plaintiff's Breach of Contract Claim and Bad-Faith Claim.

## COUNT II
### (BAD FAITH DAMAGES AGAINST INSURER
### PURSUANT TO O.C.G.A. §§ 13-6-11 AND 33-4-6)

86.     To the extent a response is required to Paragraph 86 of Plaintiff's Complaint, Defendants incorporate herein by reference their responses to Plaintiff's enumerated Paragraph 1 through 85.

87.     Defendants deny the allegations contained in Paragraph 87 of Plaintiff's Complaint.

88.     Defendants deny the allegations contained in Paragraph 88 of Plaintiff's Complaint.

89.     Defendants deny the allegations contained in Paragraph 89 of Plaintiff's Complaint. Defendant's only legal duties are set forth in the Policy.

90.     Defendants deny the allegations contained in Paragraph 90 of Plaintiff's Complaint.

91.     Defendants deny the allegations contained in Paragraph 91 of Plaintiff's Complaint.

92.     In response to the allegations contained in Paragraph 92 of Plaintiff's Complaint, Defendants admit only that the terms and provisions of the Policy and applicable Georgia law speaks for themselves and denies all allegations contained therein in direct contravention to the terms and provisions of the Policy and applicable Georgia law.   Defendants deny all remaining allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.     Defendants deny the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.     Defendants deny the allegations contained in Paragraph 94 of Plaintiff's Complaint.

95.     Defendants deny the allegations contained in Paragraph 95 of Plaintiff's Complaint.

96.    Defendants deny the allegations contained in Paragraph 96 of Plaintiff's Complaint.

97.    Defendants deny the allegations contained in Paragraph 97 of Plaintiff's Complaint.

98.    In response to the allegations contained in Paragraph 98 of Plaintiff's Complaint, Defendants admit only that Defendant Property-Owners  inspected the Property on several occasions. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 98 are denied.

99.    Defendants deny the allegations contained in Paragraph 99 of Plaintiff's Complaint.

100.   Defendants deny the allegations contained in Paragraph 100 of Plaintiff's Complaint.

101.   Defendants deny the allegations contained in Paragraph 101 of Plaintiff's Complaint. The duties and obligations of Plaintiff and Defendant Property-Owners Insurance Company are set forth in the insurance policy.

102.   Defendants deny the allegations contained in Paragraph 102 of Plaintiff's Complaint.

103.   Defendants deny the allegations contained in Paragraph 103 of Plaintiff's Complaint.

104.   Defendants deny the allegations contained in Paragraph 104 of Plaintiff's Complaint.

105.   In response to Paragraph 105 of Plaintiff's Complaint, Defendants admit that Plaintiff has retained an attorney. All remaining allegations contained in Paragraph 105 are denied.

106.   Defendants deny all allegations contained in the Prayer for Relief of Plaintiff's Complaint for Plaintiff's Breach of Contract Claim.

107.   Defendants deny all allegations contained in the Prayer for Relief of Plaintiff's Complaint for Plaintiff's Bad Faith Claim.

108.   Except as otherwise herein admitted, Defendants deny all remaining allegations contained in Plaintiff's Complaint.

WHEREFORE, having fully answered, Defendants respectfully request that this Court:

(a)   Deny Plaintiff's prayer for damages;

(b)   Dismiss this action with prejudice and cast all costs upon Plaintiff; and

(c)   Award Defendants any other relief that this Court deems just and equitable.

This 18th day of February, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722

Jessica M. Phillips
Georgia State Bar No. 922902
Heather E. Obelgoner
Georgia Bar No. 278063
*Attorneys for Defendants*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Jessica.Phillips@swiftcurrie.com
Heather.Obelgoner@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I have this day electronically filed *DEFENDANTS AUTO-OWNERS INSURANCE COMPANY AND PROPERTY-OWNERS INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT* with the Clerk of Court using the PeachCourt e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

William F. Merlin, Jr., Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard, Suite 950
Tampa, Florida 33602
cmerlin@merlinlawgroup.com
*Counsel for Plaintiff*

This 18th day of February, 2021.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ **Mark T. Dietrichs***
Mark T. Dietrichs
Georgia Bar No. 221722
Jessica M. Phillips
Georgia State Bar No. 922902
Heather E. Obelgoner
Georgia Bar No. 278063
*Attorneys for Defendants*

1355 Peachtree Street, NE, Ste. 300
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Jessica.Phillips@swiftcurrie.com
Heather.Obelgoner@swiftcurrie.com

4820-6806-5243, v. 1

## IN THE SUPERIOR COURT OF HENRY COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| KISNA ENTERPRISES, LLC, DBA LA QUINTA INN & SUITES, ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE NO.: |
| ) | |
| AUTO-OWNERS INSURANCE COMPANY ) COMPANY and PROPERTY-OWNERS INSURANCE COMPANY, ) ) ) | SUCV2021000137 |
| ) | |
| Defendants. ) | |

## <u>NOTICE OF FILING REMOVAL</u>

TO:   William F. Merlin, Jr., Esq.
      Merlin Law Group, P.A.
      777 S. Harbour Island Boulevard, Suite 950
      Tampa, Florida  33602
      cmerlin@merlinlawgroup.com

PLEASE TAKE NOTICE that Defendants Auto-Owners Insurance Company and Property-Owners Insurance Company have, on this date, filed their Notice of Removal in the Office of the Clerk of the United States District Court for the Northern District of Georgia, Atlanta Division.  A copy of the Notice of Removal is attached hereto as Exhibit A.

This 18th day of February, 2021.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722
Jessica M. Phillips

Georgia State Bar No. 922902
Heather E. Obelgoner
Georgia Bar No. 278063
*Attorneys for Defendants*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Jessica.Phillips@swiftcurrie.com
Heather.Obelgoner@swiftcurrie.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have electronically filed and served *Defendants'*

*Notice of Removal* with the Clerk of Court using the PeachCourt e-filing system, which

will automatically send e-mail notification and service of  such filing to counsel of record

follows:

William F. Merlin, Jr., Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard, Suite 950
Tampa, Florida  33602
cmerlin@merlinlawgroup.com
*Counsel for Plaintiff*

This 18th day of February, 2021.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722
Jessica M. Phillips
Georgia State Bar No. 922902
Heather E. Obelgoner
Georgia Bar No. 278063
*Attorneys for Defendants*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Jessica.Phillips@swiftcurrie.com
Heather.Obelgoner@swiftcurrie.com

4827-1433-0844, v. 1

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

KISNA ENTERPRISES, LLC, DBA LA
QUINTA INN & SUITES,

          Plaintiff,

v.

AUTO-OWNERS INSURANCE
COMPANY and PROPERTY-OWNERS
INSURANCE COMPANY,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION
FILE NO.:

[On removal from the Superior
Court of Henry County,
Georgia;

Civil Action
File No.: SUCV2021000137

## NOTICE OF REMOVAL

COME NOW, AUTO-OWNERS INSURANCE COMPANY and

PROPERTY-OWNERS INSURANCE COMPANY (collectively, "Defendants"),

Defendants in the above-styled action, and within the time prescribed by law, file

this Notice of Removal, respectfully showing the Court the following facts:

1.     On January 15, 2021, Plaintiff KISNA ENTERPRISES, LLC, DBA

LA QUINTA INN & SUITES ("Plaintiff"), by and through counsel, filed a

Complaint against Defendants in the Superior Court of Henry County, Georgia,

styled as *KISNA ENTERPRISES, LLC DBA LA QUINTA INN & SUITES v. AUTO-*

*OWNERS INSURANCE COMPANY AND PROPERTY-OWNERS INSURANCE*

COMPANY, assigned Case No. SUCV2021000137 (the "State Court Action"). True and correct copies of all process, pleadings, and other orders served upon Defendants to date in the State Court Action are collectively attached hereto as **Exhibit A**.

2.      The Complaint and Summons in this action were served upon Defendants on January 19, 2021, the date on which Defendants first received the Complaint and notice of this lawsuit. Thus, removal is timely under 28 U.S.C. § 1446(b).

3.      The United States District Court for the Northern District of Georgia, Atlanta Division, embraces Henry County, Georgia. Removal to this Court is therefore proper under 28 U.S.C. § 1441(a).

4.      Pursuant to 28 U.S.C. § 1446, promptly after filing of this Notice of Removal, Defendants will give written notice to Plaintiff by notifying its attorney of record, William F. Merlin, Jr., Esq., of Merlin Law Group, P.A., and will file a copy of this Notice of Removal with the Clerk of Superior Court of Henry County, which shall effect the removal.

## DIVERSITY JURISDICTION

5.      The United States District Court for the Northern District of Georgia, Atlanta Division possesses diversity jurisdiction over this matter pursuant to 28

U.S.C. § 1332.

6.      Upon information and belief, Plaintiff is a corporation organized under the laws of the State of Georgia, with its principal place of business in the State of Georgia. Thus, Plaintiff is a citizen of the State of Georgia. (Complaint, ¶ 1).

7.      Defendant Auto-Owners Insurance Company is a corporation organized under the laws of the State of Michigan, with its principal place of business in the State of Michigan. Thus, Defendant Auto-Owners Insurance Company is a citizen of the State of Michigan. Auto-Owners is not a citizen of Georgia.

8.      Defendant Property-Owners Insurance Company is a corporation organized under the laws of the State of Indiana, with its principal place of business in the State of Michigan. Thus, Defendant Property-Owners Insurance Company is a citizen of the State of Michigan and/or Indiana. Property-Owners is not a citizen of Georgia.

9.      Because Plaintiff and Defendants are citizens of different states, complete diversity exists between Plaintiff and Defendants in accordance with 28 U.S.C. § 1332(a)(1).

10.     Plaintiff's Complaint seeks recovery of insurance proceeds allegedly owed under a policy of insurance for damage to the Property.

11.     Based on the allegations in the Complaint, Plaintiff seeks to recover in excess of $75,000.00.  (*See* Complaint, ¶¶ 53, 54, 55, 56).

12.     Furthermore, based on statements made by Plaintiff throughout the course of the claim, Plaintiff seeks to recover in excess of $75,000.00 from this litigation.  For example, in correspondence dated November 14, 2020, Plaintiff sought benefits totaling $3,487,291.99, including replacement cost benefits and loss of business income benefits.  Plaintiff made a demand for these amounts under Property-Owners policy of insurance, policy no. 114618-80881833-18. (*See* **Exhibit B**, Declaration of Houston Mabray, ¶¶ 5-6, Exhibit 1 to Exhibit B).

13.     During the course of the Claim, Plaintiff submitted two purported signed, sworn proofs of loss which sought damages for the structural repairs and allegedly damaged business personal property items which totaled, collectively, $1,907,291.33.  (*See* **Exhibit B**, Declaration of Houston Mabray, ¶8, Exhibit 2 to Exhibit B).

14.     In connection with the claim, Property-Owners issued payments, less the insured's deductible, including $1,075,028.12 for the building and $209,443.15 for the business personal property.  Property-Owners also issued payment for loss

of business income for a 12-month period following the date of loss. It is Property-Owners' position that it has paid all amounts owed under the Policy and that Plaintiff is not entitled to recover any additional payments. (*See* **Exhibit B**, Declaration of Houston Mabray, ¶8).

15.     Based on the allegations in the Complaint, the November 14, 2020 demand letter, and the signed, sworn proofs of loss submitted by Plaintiff, Plaintiff is seeking an amount in excess of $75,000 from this litigation. As such, the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is satisfied.

16.     Venue is proper in this Court for purposes of removal under 28 U.S.C. § 1441(a), but not necessarily for purposes of 28 U.S.C. § 1391 or any other applicable venue provision. By filing this Notice of Removal, Defendants do not waive any of their jurisdictional objections or affirmative defenses

WHEREFORE, Defendants pray that this action proceed in this Court as an action properly removed pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1446, and that no further proceedings be had in said case in the Superior Court of Henry County, Georgia.

This 18th day of February, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722
Jessica M. Phillips
Georgia State Bar No. 922902
Heather E. Obelgoner
Georgia Bar No. 278063
*Attorneys for Defendants*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Jessica.Phillips@swiftcurrie.com
Heather.Obelgoner@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I have this day electronically filed *Defendants' Notice of Removal* with the Clerk of Court using the CM/ECF e-filing system, which will automatically send e-mail notification and service of such filing to counsel of record follows:

William F. Merlin, Jr., Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard, Suite 950
Tampa, Florida  33602
cmerlin@merlinlawgroup.com
*Counsel for Plaintiff*

This 18th day of February, 2021.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Mark T. Dietrichs*
Mark T. Dietrichs,
Georgia Bar No. 221722
Jessica M. Phillips
Georgia State Bar No. 922902
Heather E. Obelgoner
Georgia Bar No. 278063
*Attorneys for Defendants*

1355 Peachtree Street, NE, Ste. 300
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Mark.Dietrichs@swiftcurrie.com
Jessica.Phillips@swiftcurrie.com
Heather.Obelgoner@swiftcurrie.com

4822-2995-4268, v. 1